**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| URTHTECH LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:22-cv-06727-PKC |
| v. | ) | |
| | ) | |
| GOJO INDUSTRIES, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT**

UrthTech LLC ("UrthTech"), for its First Amended Complaint against Gojo Industries, Inc. ("Gojo"), allege as follows:

**THE PARTIES**

1.      UrthTech is a limited liability company existing under the laws of the State of Michigan, with its principal place of business at 915 East Maple Road, Birmingham, Michigan 48009. All of the members of UrthTech are citizens of the State of Michigan. UrthTech is the leading developer of environmentally responsible antimicrobial products and specialty edible oils. UrthTech's research into novel antimicrobial solutions resulted in numerous inventions offering highly efficacious, safety antimicrobial solutions found in consumer and commercial cleaning products.

2.      On information and belief, Gojo is a corporation organized and existing under the laws of the State of Ohio, having a principal place of business at 1 GOJO Plaza, Suite 500, Akron, Ohio 44311. Gojo is engaged in the manufacture and sale of consumer and commercial cleaning products sold under the brand Purell®.

**NATURE OF THE ACTION**

3.      Beginning in 2009, UrthTech and Gojo worked together to jointly develop new antimicrobial technologies that Gojo would market under its Purell® brand. During UrthTech's relationship with Gojo, Dr. Aziz Awad, one of UrthTech's founders, provided Gojo with UrthTech confidential information under the terms of a nondisclosure agreement. UrthTech and Gojo entered into a License Agreement on March 5, 2015, in which UrthTech granted Gojo an exclusive license to UrthTech's patents. This is an action for breach of contract stemming from Gojo's breach of the License Agreement, which occurred when Gojo filed two patent applications that omitted Dr. Awad from the list of inventors, but incorporated Dr. Awad's contributions, and claimed inventions that were conceived in part by Dr. Awad. This is also an action for trade secret misappropriation stemming from Gojo's improper use and disclosure of confidential information provided by UrthTech to Gojo, subject to the parties' nondisclosure agreement.

**JURISDICTION AND VENUE**

4.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1338(a). This Court has jurisdiction under 28 U.S.C. § 1332 because the matter is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      The parties consented to personal jurisdiction of this Court in their License Agreement, which states: "Any legal suit, action or proceeding arising out of or related to this Agreement or the licenses granted hereunder shall be instituted exclusively in the federal courts of the United States or the courts of the State of New York in each case located in the city and County of New York, New York, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding." Exhibit A (License Agreement) § 13.13(b).

## FACTUAL ALLEGATIONS

### A.    UrthTech's Antimicrobial Formulation Inventions

6.    UrthTech was founded in 2002 by Michael J. George and Dr. Aziz Awad to develop new antimicrobial and antifungal formulations. Dr. Awad designed both acidic and basic antimicrobial formulations, including an acidic formulation he identified as "FA" and a basic formulation he identified as "FB." The FA formulation contains ethanol, lauric acid, water, and citric acid, and has a pH of about 3, while the FB formulation contains ethanol, lauric acid, water, and potassium hydroxide, and has a pH of about 14.

7.    In April 2004, UrthTech engaged Michigan State University researcher James Pestka to perform mold disinfection efficacy trials on formulations FA and FB. Dr. Pestka's results were reported in a Final Report dated September 16, 2004 (hereinafter "the 2004 Memo"). Exhibit B (2004 Memo). The 2004 Memo reported that both FA and FB formulations were efficacious and lacked the pungent smell associated with Clorox and other household cleaning products. Exhibit B at 4. In early 2006, UrthTech engaged Michigan State University researcher Martha Mulks to perform additional experiments to assess the efficacy of a number of acidic and basic formulations developed by Dr. Aziz, including but not limited to the FA and FB formulations. These experiments evaluated the formulations' efficacy as anti-spore agents.

8.    Dr. Awad's extensive research and development efforts led to the filing, on July 14, 2006, of U.S. Patent Appl. No. 11/486,736, titled "Methods and composition for treating a material," which issued as U.S. Patent No. 8,110,604 B2 ("the '604 patent") on February 2, 2012. Exhibit C is a true and correct copy of the '604 patent. UrthTech focused its patenting efforts on the basic formulations and retained the FA formulation and other acidic formulations as trade secrets.

9.    On February 23, 2009, UrthTech filed another patent application directed to Dr.

Awad's inventions, filed as U.S. Patent Appl. No. 12/380,077, titled "Methods and composition for treating a material," which issued as U.S. Patent No. 7,754,766 B2 ("the '766 patent") on July 13, 2010. Exhibit D is a true and correct copy of the '766 patent. On April 28, 2009, UrthTech filed another application directed to Dr. Awad's inventions, filed as U.S. Patent Appl. No. 12/387,120, titled "Methods and composition for treating a material," which issued as U.S. Patent No. 8,143,309 B2 ("the '309 patent") on March 27, 2012.[1] Exhibit E is a true and correct copy of the '309 patent.

10.     Claim 9 of the '766 patent is directed to a composition having a mixture of an alcohol such as ethanol, a fatty acid salt soluble in an alcohol, an alkalinating agent, and water. Claim 9 is reproduced below:

> 9. A composition which comprises in a mixture:
>
> (a) a lower alkanol containing 1 to 6 carbon atoms, wherein the lower alkanol is present in an amount between about 18% and 95%
>
> by weight of the composition;
>
> (b) a fatty acid salt soluble in the alkanol, wherein the fatty acid salt is present in an amount between about 0.1% and 25% by weight of the composition;
>
> (c) an alkalinating agent; and
>
> (d) water, wherein the water is present in an amount between about 15% and 60% by weight of the composition.

Exhibit D (the '766 patent) at 22:33–49.

11.     Claim 32 of the '309 patent is directed to a composition containing an alcohol such as ethanol, an alkalinating agent, and a fatty acid derivative that can be a fatty acid salt, a fatty acid ester or combinations thereof. Claim 32 of the '309 patent is reproduced below:

---

[1] The '604 patent, the '766 patent, and the '309 patent are collectively referred to herein as "the UrthTech Patents."

32. A composition comprising an aqueous composition, the aqueous composition comprising in a mixture:

(a) lower alkanol containing 1 to 6 carbon atoms;

(b) an alkalinating agent, and

(c) a fatty acid derivative comprising a fatty acid salt, a fatty acid ester, or a combination thereof; wherein the lower alkanol, the alkalinating agent, and the fatty acid derivative are present in an effective amount to sanitize a material to which the composition is applied.

Exhibit E (the '309 patent) at 34:15–23.

12.    As set forth in the '309 patent, the formulations invented by Dr. Awad provide "a method for improving the germicidal and sporicidal spectra and activities of lower alkanols (C1-C6) for disinfecting living tissues (skin, hands, etc.) and inanimate objects (instruments, papers and printed materials, medical equipment, hard surfaces, military and civilian facilities, etc.) with unprecedented speed, economy, safety, gentleness, and residual antimicrobial effects." Exhibit E (the '309 patent) at 5:55–61.

**B.    UrthTech and Gojo's Collaboration**

**2.    Gojo and UrthTech Enter into a Confidential Nondisclosure Agreement**

13.    On January 20, 2009, UrthTech and Gojo entered into a Confidential Nondisclosure Agreement ("NDA") to permit the parties to "engage in discussions and activities with each other about formulations and materials." Exhibit F (NDA) at 1.

14.    According to the NDA, the parties agreed to share in confidence Confidential Information, defined in Paragraph 1 of the NDA to include UrthTech scientific or technical data, including "trade secrets." Exhibit F ¶ 1.

15.    According to the NDA, the parties agreed that the party receiving Confidential Information under the NDA "will, at all times, keep Confidential Information in strict confidence

and under conditions of secrecy and will not, at any time, disclose to others or use for its own benefit any Confidential Information without prior written approval by the disclosing party." Exhibit F ¶ 2.

16.     With the protections of the NDA in place, in a series of telephone conferences and email exchanges conducted pursuant to the NDA between 2009 and 2015, Dr. Awad disclosed confidential UrthTech information to Gojo concerning his development of basic and acidic antimicrobial formulations, and testing of such formulations, to assist Gojo in its development of commercial antimicrobial products.

17.     During these confidential communications conducted between 2009 and 2015, Dr. Awad served as a consultant to Gojo to further the development of products that might lead to a Gojo product that would embody at least claim 9 of the '766 patent and claim 32 of the '309 patent (reproduced above). However, the confidential information disclosed by Dr. Awad pursuant to the NDA included confidential UrthTech information that was not disclosed in any of the publicly available patents and patent applications filed by UrthTech, including information relating to both acidic and basic formulations.

18.     In addition to the confidential information disclosed during telephone conferences and email exchanges, Dr. Awad also disclosed confidential information to Gojo by providing hard-copy documents concerning his development of antimicrobial formations and efficacy testing of those formulations, including the 2004 Memo (Exh. B), which was provided to Gojo during a November 21, 2013, meeting conducted at Gojo's offices in Ohio.

19.     UrthTech took reasonable measures to protect the secrecy of the confidential information disclosed by Dr. Awad to Gojo under the NDA by, among other things, requiring that the NDA be agreed to by Gojo before Dr. Awad disclosed any confidential information to

Gojo.

20.    The confidential information disclosed by Dr. Awad to Gojo was commercially valuable and could not have been independently developed by Gojo, without investing significant time and resources to develop such information.

21.    On December 12, 2013, the parties amended the NDA to extend the term from five to ten years, through January 19, 2019. Exhibit G (NDA Amendment) at 1.

### 3.    Gojo Licenses Dr. Awad's Inventions and Engages Dr. Awad as a Technical Consultant

22.    On March 5, 2015, UrthTech and Gojo entered into a License Agreement and Technical Assistance Agreement, true and correct copies of which are attached as Exhibits A and H, respectively. Pursuant to the License Agreement, UrthTech granted Gojo an exclusive license to a group of UrthTech patents including the UrthTech '604 patent, '766 patent, and '309 patent patents. Exhibit A (License Agreement) at 6 (§ 2.1(a)), 24 (Schedule 1). The license grant was limited to "make, have made, use, offer to sell, sell and import Licensed Products" in certain markets. *Id*. at 4, 6 (§ 2.1(a)), 25 (Schedule 2). Schedule 2 to the License Agreement lists the Licensed Products as pertaining to the "Surface Care" category, and including spray and wipe products, and assigned different royalties for different product types. *Id*. at 25 (Schedule 2). The License Agreement, including the referenced Schedules and Technical Assistance Agreement constituted the entire agreement between the parties. *Id*. at 21 (§ 13.9).

23.    Pursuant to the License Agreement, and relying on the assistance of Dr. Awad provided under the Technical Assistance Agreement, Gojo developed a "multi surface disinfectant" spray product marketed as a Purell®-brand product as shown below:



This product won an award for the Product of the Year 2018 awarded by the Product of the Year USA, and was the top product sold on Amazon in the commercial cleaner category. Exhibit I (Gojo Press Release) at 1. These multi surface disinfectant products are a Licensed Product subject to the exclusive grant in the License Agreement.

24.    The License Agreement contemplated that the parties may develop improvements to the licensed technology, defined as follows: "'Improvement' means any modifications of, derivative works based on, and enhancements and improvements to any Licensed Know-How, Licensed Patents, Licensed Technology or Licensed Product created, conceived, developed or reduced to practice by or on behalf of either Party or both Parties or any of their Affiliates after the Effective Date and during the term of this Agreement, including all Intellectual Property Rights therein." Exhibit A (License Agreement) at 2–3. Thus, an Improvement comes into being as soon as it is conceived by either of, or both of, the parties, and certainly by the time any "Intellectual Property Right" exists. The License Agreement segregated Improvements into three types: those created solely by UrthTech, those created solely by Gojo, and those jointly created by UrthTech and Gojo. *Id.* at 8–9 (§ 3).

25.     For those Improvements created solely by Gojo, Gojo was obligated to "provide written notice to Licensor [UrthTech] within thirty days after the creation or development of any such Improvements." Exhibit A (License Agreement) at 8 (§ 3.2). As noted in Paragraph 24, Improvements include "any modification of" the "Licensed Technology," which means "antimicrobial and otherwise decontaminating compounds owned by Licensor as of the Effective Date and during the Term, including the compositions and methods of making and using such compounds, and all Intellectual Property Rights in any of the foregoing." *Id*. at 4. Thus, the License Agreement obligated Gojo to inform UrthTech within thirty days of any update to the compositions and methods licensed to Gojo, and certainly by the time any patent applications were filed related to those updated compositions and methods.

26.     Improvements created jointly by UrthTech and Gojo, are defined in the License Agreement as Improvements of which "at least one employee from each of" UrthTech and Gojo "is considered an 'inventor' as defined by US Patent Law." Exhibit A (License Agreement) at 8 (§ 3.3). For any patent application related to a jointly created Improvement, "the parties agree that all patent filings relating to Joint Improvements shall be made jointly." *Id*. Moreover, "[a]ny filing of patent applications covering Joint Improvements or Joint Patent Rights by one party hereunder shall be fully disclosed to the other party no later than thirty (30) days prior to filing." *Id*. at 9 (§ 3.3) (emphasis added).

27.     The parties agreed "that a breach by the other party of this [License] Agreement may cause the non-breaching party irreparable harm, for which an award of damages would not be adequate compensation and agrees that, in the event of such a breach or threatened breach, the non-breaching party will be entitled to seek equitable relief, including in the form of a restraining order, orders for preliminary or permanent injunction, specific performance and any other relief

that may be available from any court." Exhibit A (License Agreement) at 22 (§ 13.14).

28.    In May 2015, Dr. Awad provided a confidential memorandum titled "Improvement to Existing Technology" to report an improvement to Gojo, in which Dr. Awad described the use of certain non-fatty acid based surfactants in antimicrobial formulations, including alkyl polyglucosides. In addition, Dr. Awad engaged in multiple discussions with scientists at Gojo in an effort to assist Gojo in furthering the development of its existing product lines. For example, on January 28, 2016, Dr. Awad attended a conference with Amanda Copeland and Dewain Garner to discuss Gojo's questions on the development of its "Purell 30" project. Exhibit J (Meeting Invitation) at 1.

### 4.    Gojo's Acidic Wipe Product and Patent Application

29.    On September 15, 2017, Gojo filed U.S. Provisional Patent Application No. 62/559,221, titled "Antimicrobial Composition" ("the '221 Provisional Application"), directed to acidic antimicrobial compositions (i.e., compositions having a pH less than 7) that comprise, among other options, citric acid and an alkyl polyglucoside, and listing Rachel Leslie, Dewain Garner, and James Bingham as inventors. Exhibit K (Acid Wipes Prov. Appl.) at 1, 23 (Example 3). On September 17, 2018, Gojo filed a non-provisional application, U.S. Appl. No. 16/132,696 ("the '696 Application"), claiming priority to this provisional application, which published on March 21, 2019, as U.S. Patent Pub. 2019/0082684 ("the '684 Publication") that lists Rachel Leslie, Dewain Garner, James Bingham, and Travis Neal as inventors. Exhibit L (the '684 Pub) at 1. Claim 33, as published in the '684 Publication, is directed to an acidic antimicrobial containing an alkyl polyglucoside:

33. An antimicrobial composition comprising:

less than about 35.0 wt. % of one or more C1-8 alcohols, based on the total weight of the antimicrobial composition;

from about 0.50 to about 3.0 wt. % of two or more of alkyl polyglucoside, a buffer, and an enhancer, wherein the pH of the antimicrobial composition is less than or equal to about 5.0.

*Id*. at 13.

30.     The subject matter disclosed and claimed in the '221 Provisional Application and in the '696 application (and published in the '684 Publication) was based on information provided to Gojo by Dr. Awad on behalf of UrthTech, as discussed in Paragraphs 16–20 above. On information and belief, at least some of this information provided to Gojo by Dr. Awad was communicated to at least one of the inventors listed on the provisional and non-provisional applications referenced in Paragraph 29 above.

31.     Gojo's filing of the '221 Provisional Application and the '696 Application, and allowing publication of the '684 Publication, without UrthTech's knowledge or consent, were contrary to Gojo's obligations under the parties' NDA.

32.     Gojo's filing of the '221 Provisional Application and the '696 Application, and allowing publication of the'684 Publication, without UrthTech's knowledge or consent, were improper use and disclosure of UrthTech's confidential trade secret information.

33.     On information and belief, in 2018 Gojo began marketing Purell® Foodservice Surface Sanitizing Wipes, which embodies at least the invention claimed in claim 33 of the '696 Application. See Exhibit M (Acid Wipes Safety Data Sheet) at 4.

**5.     Gojo's Improved Spray Product and Patent Application**

34.     On February 21, 2019, Gojo filed U.S. Provisional Patent Application No. 62/808,484, titled "Alkaline Disinfecting Compositions" ("the '484 Provisional Application"), directed to basic antimicrobial compositions (i.e., compositions having a pH greater than 7) that comprise an alkyl polyglucoside surfactant instead of a fatty acid-based surfactant, and listing Dewain Garner, Marisa Macnaughtan, and James Bingham as inventors. Exhibit N (Spray Prov.

Appl.) at 1, 25–29 (Examples 1–6). As filed, claim 13 of the provisional application (reproduced

below) recited a composition comprising one or more C1-C6 alcohols such as ethanol, and "one

or more surfactants comprising one or more of alcohol ethoxylates, alcohol propoxylates, and

alkyl polyglucosides":

> 13. A composition comprising:
>
> from 5 to 95 wt. % of one or more C1-C6 alcohols, based upon the total
> weight of the composition;
>
> one or more alkaline pH adjusting agents; and one or more surfactants
> comprising one or more of alcohol ethoxylates, alcohol propoxylates, and
> alkyl polyglucosides,
>
> wherein the composition has a pH of greater than 12.

*Id*. at 31.

35.    On February 21, 2020, Gojo filed a non-provisional application based on this

provisional application, U.S. Application No. 16/796,990 ("the '990 Application"), which

published on August 27, 2020, as U.S. Patent Pub. 2020/0267973 ("the '793 Publication") that

lists Dewain Garner, Marisa Macnaughtan, and James Bingham as inventors. Exhibit O (the '793

Publication) at 1.

36.    The subject matter disclosed and claimed in the '484 Provisional Application and

in the '990 Application (and published in the '793 Publication) was based on information

provided to Gojo by Dr. Awad on behalf of UrthTech, as discussed in Paragraphs 16–20 above,

and included improvements to information disclosed and claimed in the UrthTech Patents. On

information and belief, at least some of the confidential information provided by Dr. Awad to

Gojo was communicated to at least one of the inventors listed on the '484 Provisional

Application and the '990 Application. Despite Dr. Awad's contribution to the conception of the

inventions recited in the claims of spray patent applications referenced above, Gojo failed to list

Dr. Awad as an inventor on the patent applications.

37.     On information and belief, in 2020 Gojo began marketing a Purell® multi surface spray product that embodies at least claim 13 of the '484 Provisional Application as quoted above.

**C.     Gojo's Belated Improper Notice to UrthTech**

38.     On March 16, 2020, more than a year after filing U.S. Provisional Patent Application No. 62/808,484, Gojo sent a letter to Mr. Robert George, UrthTech's President, to provide "notice required under Section 3.2 of the March 5, 2015, License Agreement." Exhibit P (Gojo Letter) at 1. The letter refers to "a formula, which may be considered an Improvement under the terms of the Agreement." However, the letter fails to acknowledge that the Improvements were jointly created by Dr. Awad and Gojo, or that UrthTech should be permitted to jointly participate with Gojo in the prosecution of related patent applications. In a separate communication with Gojo, UrthTech was informed of the specific formula, which is an embodiment of the inventions recited in the claims of U.S. Provisional Patent Application No. 62/808,484 and the '793 Publication. See Exhibit Q (Gojo Spray Product) at 1 (showing the new formulation contains Undiceth-3, an alcohol ethoxylate surfactant and an improved surfactant Dr. Awad disclosed to Gojo).

39.     Gojo failed to notify UrthTech at the appropriate time, "within thirty days after the creation or development of any such Improvements," and if Jointly Created, Gojo failed to disclose the filing of the application within "thirty (30) days prior to filing." Exhibit A (License Agreement) at 9 (§ 3.3). Gojo gave no notice to UrthTech regarding the Improvement related to the acid-based wipe application and product.

**D.    Gojo's Amendments at the U.S. Patent & Trademark Office to Exclude Dr. Awad's Contributions**

40.    On April 30, 2020, within 45 days of Gojo's belated notice to UrthTech as described above, Gojo filed an amendment to the claims pending in the '990 Application (which published as the '793 Publication). Exhibit R (Prelim. Amend.). Gojo made those amendments without notifying or consulting with UrthTech. Moreover, after the parties began discussions regarding this dispute, on August 3, 2021, Gojo again amended the claims of the '990 Application. Exhibit S (Second Prelim. Amend.). Gojo made the second set of amendments to the claims without notifying or consulting with UrthTech.  In its communications to this Court, Gojo alleges that no "*existing pending claim*" (*i.e.,* as amended by Gojo) contains subject matter to which Dr. Awad contributed. Dkt. 21 at 3 (emphasis in original). As a result of Gojo filing the '990 Application without naming Dr. Awad as an inventor, UrthTech is unable to prevent Gojo from amending or even abandoning the claims pending in the '990 Application.

## COUNT I
## BREACH OF CONTRACT (License Agreement)

41.    UrthTech incorporates by reference the foregoing paragraphs 1–40 as if fully set forth herein.

42.    The License Agreement is a valid, enforceable agreement.

43.    UrthTech has complied with all material terms in the License Agreement.

44.    Gojo breached the terms of the License Agreement by, among other things: (1) failing to notify UrthTech about the Improvement within thirty days of the development of the improved spray formulations, and at least by March 21, 2019, thirty days from the filing of U.S. Provisional Patent Application No. 62/808,484 directed to the improved spray formulations; (2) failing to notify UrthTech about the Improvement within thirty days of the development of the improved acidic wipe formulations, and at least by September 15, 2017, the date on which Gojo

filed U.S. Provisional Patent Application No. 62/559,221, directed to the improved acidic wipe formulations; (3) failing to list Dr. Awad as an inventor on U.S. Provisional Patent Application No. 62/808,484, despite Dr. Awad's contribution to the conception of at least one claim in that application and subsequent related applications; (4) filing U.S. Provisional Patent Application No. 62/808,484 without involving UrthTech, thereby breaching the terms pertaining to the jointly created improvement provisions of the License Agreement, including by failing to jointly file all patent filings; (5) failing to list Dr. Awad as an inventor on U.S. Provisional Patent Application No. 62/559,221 despite Dr. Awad's contribution to the conception of at least one claim on that application and subsequent related applications; and (6) filing U.S. Provisional Patent Application No. 62/559,221 without involving UrthTech, thereby breaching the terms pertaining to the jointly created improvement provisions of the License Agreement, including by failing to jointly file all patent filings.

45.    Gojo agreed that if it breached the provisions pertaining to jointly created improvements, including by not jointly filing all patent applications and related papers, UrthTech would be irreparably harmed including by Gojo obtaining an issued patent that improperly omits naming Dr. Awad as an inventor, and/or amending the pending patent claims to remove subject matter contributed by Dr. Awad to the detriment of UrthTech.

46.    As a result of Gojo's breaches of the License Agreement, UrthTech has incurred damages in an amount to be determined at trial, but, upon information and belief, which are no less than $75,000.

47.    UrthTech will be harmed if Gojo fails to amend its pending patent applications to add Dr. Awad as an inventor. In these circumstances, UrthTech is entitled an injunction to prevent such irreparable injury.

## COUNT II
## BREACH OF CONTRACT (NDA)

48.     UrthTech incorporates by reference the foregoing paragraphs 1–47 as if fully set forth herein.

49.     The NDA is a valid, enforceable agreement.

50.     UrthTech has complied with all material terms in the NDA.

51.     Gojo breached the terms of the NDA by, among other things: (1) failing to "keep Confidential Information in strict confidence and under conditions of secrecy"; (2) disclosing to others or use for its own benefit any Confidential Information provided by UrthTech, without obtaining prior written approval from UrthTech; (3) filing the '484 Provisional Application and the '990 Application; (4) allowing publication of the '793 Publication; and (4) marketing Purell® Foodservice Surface Sanitizing Wipes.

52.     As a result of Gojo's breaches of the NDA, UrthTech has incurred damages in an amount to be determined at trial, but, upon information and belief, which are no less than $75,000.

## COUNT III
## TRADE SECRET MISAPPROPRIATION (DTSA)

53.     UrthTech incorporates by reference the foregoing paragraphs 1–52 as if fully set forth herein.

54.     UrthTech provided to Gojo confidential, trade secret information concerning basic and acidic antimicrobial agent formulations, including the FA formulation.

55.     The information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation, is protectable trade secret information under the Defend Trade Secrets Act ("DTSA").

56.     The information UrthTech provided to Gojo concerning basic and acidic

antimicrobial agent formulations, including the FA formulation has independent economic value from not being generally known nor readily ascertainable through proper means.

57.    UrthTech took reasonable steps and precautions to safeguard the information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation, by not disclosing this information outside of UrthTech, and sharing this information with Gojo only subject to the confidentiality obligations of the parties' NDA. UrthTech reasonably relied on Gojo's duty to maintain the secrecy of the information concerning basic and acidic antimicrobial agent formulations, including the FA formulation.

58.    The information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation was intended for use in a product to be sold in interstate and foreign commerce.

59.    Gojo knew it had a duty to maintain the secrecy of the information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation, due to the NDA.

60.    Gojo misappropriated UrthTech's trade secret information concerning basic and acidic antimicrobial agent formulations, including the FA formulation, through its use of the formulations, filing of the '221 Provisional Application and the '696 Application, and allowing publication of the'684 Publication, without UrthTech's knowledge or consent.

61.    As a result of Gojo's misappropriation through unauthorized use and disclosure of UrthTech's trade secrets, Gojo has violated the DTSA.

62.    UrthTech is entitled to damages for Gojo's misappropriations of UrthTech's trade secrets, including for UrthTech's actual loss and Gojo's unjust enrichment, to a reasonable royalty, to attorney's fees, and to all other relief provided under the DTSA, in an amount to be

determined at trial, but, upon information and belief, which is no less than $75,000.

## COUNT IV
## TRADE SECRET MISAPPROPRIATION (OUTSA)

63.    UrthTech incorporates by reference the foregoing paragraphs 1–62 as if fully set forth herein.

64.    UrthTech provided to Gojo confidential, trade secret information concerning basic and acidic antimicrobial agent formulations, including the FA formulation.

65.    The information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation, is protectable trade secret information under the Ohio Uniform Trade Secrets Act ("OUTSA").

66.    The information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation has independent economic value from not being generally known nor readily ascertainable through proper means.

67.    UrthTech took reasonable steps and precautions to safeguard the information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation, by not disclosing this information outside of UrthTech, and sharing this information with Gojo only subject to the confidentiality obligations of the parties' NDA. UrthTech reasonably relied on Gojo's duty to maintain the secrecy of the information concerning basic and acidic antimicrobial agent formulations, including the FA formulation.

68.    Gojo knew it had a duty to maintain the secrecy of the information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation, due to the NDA.

69.    Gojo misappropriated UrthTech's trade secret information concerning basic and acidic antimicrobial agent formulations, including the FA formulation, through its use of the

formulations, filing of the '221 Provisional Application and the '696 Application, and allowing publication of the'684 Publication, without UrthTech's knowledge or consent.

70.    As a result of Gojo's misappropriation through unauthorized use and disclosure of UrthTech's trade secrets, which occurred primarily in Ohio, Gojo has violated the OUTSA.

71.    UrthTech is entitled to damages for Gojo's misappropriations of UrthTech's trade secrets, including for UrthTech's actual loss and Gojo's unjust enrichment, to a reasonable royalty, to attorney's fees, and to all other relief provided under the OUTSA, in an amount to be determined at trial, but, upon information and belief, which is no less than $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff UrthTech respectfully requests that this Court enter judgment in their favor against Gojo and grant the following relief:

A.    A preliminary and permanent injunction ordering Gojo to add Dr. Awad as an inventor on any application claiming priority to U.S. Provisional Patent Application No. 62/559,221 or U.S. Application No. 16/132,696;

B.    A preliminary and permanent injunction ordering Gojo to add Dr. Awad as an inventor on any application claiming priority to U.S. Provisional Patent Application No. 62/808,484 or U.S. Application No. 16/796,990;

C.    A preliminary and permanent injunction ordering Gojo to grant UrthTech an ownership interest in any application claiming priority to U.S. Provisional Patent Application No. 62/559,221;

D.    A preliminary and permanent injunction ordering Gojo to grant UrthTech an ownership interest in any application claiming priority to U.S. Provisional Patent Application No. 62/808,484;

E.    Awarding UrthTech actual damages, or a reasonable royalty;

F.   Awarding attorneys' fees and costs incurred as a result of this action;

G.   Awarding monetary damages in an amount of at least $75,000 and sufficient to compensate UrthTech for the harm caused by Gojo's breach of contract;

H.   Awarding monetary damages in an amount of at least $75,000 and sufficient to compensate UrthTech for the harm caused by Gojo's misappropriation of UrthTech's trade secrets; and

I.   Awarding UrthTech such further relief as the Court deems just and proper.


Date:  November 10, 2022                    Respectfully submitted,

By: /s/ Mark H. Izraelewicz
    Mark H. Izraelewicz (*pro hac vice*)
    Michael R. Weiner (*pro hac vice*)
    Kelley S. Gordon  (*pro hac vice*)
    MARSHALL, GERSTEIN & BORUN LLP
    233 S. Wacker Drive, 6300 Willis Tower
    Chicago, Illinois  60606
    T:  312.474.6300
    E:  mizraelewicz@marshallip.com
    E:  mweiner@marshallip.com
    E:  kgordon@marshallip.com

    Marc J. Rachman
    DAVIS & GILBERT LLP
    1675 Broadway
    New York, NY 10019
    T: 212.468.4800
    E: mrachman@dglaw.com

    *Counsel for Plaintiff UrthTech LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I, Mark H. Izraelewicz, hereby certify that on November 10, 2022, I caused a copy of the

foregoing FIRST AMENDED COMPLAINT to be electronically filed using the CM/ECF

system, which sent notification of such filing to all counsel of record.

/s/ Mark H. Izraelewicz
Mark H. Izraelewicz