**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| URTHTECH LLC, | |
| Plaintiffs, | CASE NO.: 1:22-cv-06727-PKC |
| v. | Judge P. Kevin Castel |
| GOJO INDUSTRIES, INC. | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

**Table of Contents**

I.    INTRODUCTION .................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................. 2

   A.    The GOJO-UrthTech Licensing Agreement ..................................................... 2

   B.    The alleged information UrthTech shared with GOJO ...................................... 3

   C.    The GOJO patent applications at issue ............................................................. 4

III.  LEGAL STANDARD ............................................................................................. 5

IV.   ARGUMENT .......................................................................................................... 6

   A.    UrthTech's request to amend and determine correct inventorship on GOJO's Patent
      Applications should be dismissed, no matter how UrthTech couches it ................ 6

   B.    UrthTech's breach of contract allegations fail to state a plausible claim ........... 7

      1.    Legal Standard ......................................................................................... 8

      2.    UrthTech did not plead how any alleged breach related to GOJO's Spray Patent
        Application caused it damages ................................................................. 8

      3.    The FAC is devoid of any fact that would demonstrate GOJO's Acid Wipe Patent
        Application is an "Improvement" under the agreement ........................... 11

   C.    UrthTech's DTSA claims are time-barred ...................................................... 13

   D.    UrthTech's trade secret allegations fail to state a plausible claim ................... 14

      1.    Legal Standard ....................................................................................... 14

      2.    UrthTech failed to adequately plead the existence of a trade secret ........... 15

      3.    UrthTech failed to adequately plead misappropriation ............................ 19

   E.    UrthTech's breach of the NDA fails to state a plausible claim ........................ 22

   F.    UrthTech fails to allege proper personal jurisdiction and venue for its trade secret and
      NDA claims ................................................................................................... 23

V.    CONCLUSION .................................................................................................... 25

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 5, 13

*Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381 (S.D.N.Y. 2010) ............................... 25

*Bravo v. MERSCORP, Inc.*, No. 12-CV-884, 2013 WL 1652325) (E.D.N.Y. Apr. 16, 2013)....... 9

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) ................................... 24

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018)................................ 24

*Consolidated World Housewares, Inc. v. Finkle* , 831 F.2d 261 (Fed. Cir. 1987) ....................... 7

*Corporate Lodging Consultants, Inc. v. Szafarski*, No. 1:21-cv-1611, 2021 WL 3709914 (N.D. Ohio Aug. 20, 2021)................................................................................. 14

*Elsevier Inc. v. Doctor Evidence, LLC*, 17:cv-5540, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ................................................................................................. passim

*Garvey v. Face of Beauty LLC*, 21-CV-10729, 2022 WL 5246665 ...................................... 17, 18

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2d Cir. 2005)............................................ 25

*HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd.*, 600 F.3d 1347 (Fed. Cir. 2010)............. 6, 7

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003)................................ 24

*Intrepid Financial Partners, LLC v. Fernandez*, No. 20 CV 9779, 2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) ............................................................................... 19

*Investment Science, LLC v. Oath Holdings Inc.*, 20 Civ. 8159, 2021 WL 3541152 (S.D.N.Y. Aug. 11, 2021)....................................................................................... 18

*Jinno Intern. Co. v. Premier Fabrics, Inc.*, No. 12 Civ. 07820, 2013 WL 4780049 (S.D.N.Y. May 24, 2013) ................................................................................ 8, 9

*Kairam v. West Side GI, LLC*, 1:18-cv-01005, 2018 WL 6717280 (S.D.N.Y. Nov. 9, 2018) 15, 17

*Lawrence v. NYC Medical Practice, P.C.*,  1:18-cv-8649, 2019 WL 4194576 (S.D.N.Y. Sep. 3, 2019)....................................................................................... 16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ................... 24

*LS Parry, Inc. v. Tepeyac, LLC*, No. 18-CV-11808 (NSR), 2020 WL 5026589 (S.D.N.Y. Aug. 25, 2020)....................................................................................... 25

*Miller v. HSBC Bank U.S.A., N.A.*, 2015 WL 585589 (S.D.N.Y. Feb. 11, 2015) ..................... 8, 9

*Partner Reinsurance Co. Ltd. V. RPM Mortgage, Inc.*, 2019 WL 3802235 (S.D.N.Y. Aug. 13, 2019)....................................................................................... 10

*Penguin Grp. (USA) Inc. v. America Buddha*, 609 F.3d, 35 (2d Cir. 2010) ................................ 24

*PPS Service Group, LLC v. Eckert*, No. 1:18-cv-727, 2019 WL 3927232 (S.D. Ohio Aug. 20, 2019)....................................................................................... 20

*Simonton Bldg. Products, Inc. v. Johnson*, 553 F. Supp. 2d 642 (N.D. W. Va. 2008) ................... 7

*Telebrands Corp. v. Del Laboratories, Inc.*, 719 F. Supp. 2d 283 (S.D.N.Y. 2010) ................... 17

*Universal Processing LLC v. Weile Zhuang*, 2018 WL 4684115 (S.D.N.Y. Sep. 23, 2018) .. 5, 15, 17, 18

*Zirvi v. Flatley*, 433 F. Supp.3d 448 (S.D.N.Y. 2020 (*aff'd*, 838 Fed. Appx. 582 (2d Cir. 2020) ............................................................................................................................... 13, 14

*Zurich American Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396 (S.D.N.Y. 2021) ......................... 20

**Statutes**

18 U.S.C. § 1836(b)(1) ........................................................................................................... 14

18 U.S.C. § 1836(d) ............................................................................................................... 13

18 U.S.C. § 1839(3)(A)–(B) ................................................................................................. 15

35 U.S.C. § 135(a)(2) ............................................................................................................ 10

35 U.S.C. § 135(b) ................................................................................................................ 10

## I.   INTRODUCTION

Plaintiff UrthTech LLC's First Amended Complaint ("FAC") (ECF No. 37) is all smoke and mirrors. The Court should dismiss each count for failing to plausibly state a claim. UrthTech rests its entire case (alleging breach of contract and trade secret misappropriation) on two abandoned claims in two pending GOJO patent applications directed to novel antimicrobial formulations. Relying only on these two patent claims that no longer exist, UrthTech is trying to usurp ownership and prosecution of these pending applications by alleging that GOJO based its inventions on UrthTech's proprietary technology and trade secrets. But UrthTech's allegations are so far-fetched and unsupported that UrthTech can point to *nothing* in the entire written specification or pending claims of either GOJO application that is purportedly "based on" UrthTech's proprietary information. That is because UrthTech made no contributions to either invention.

This case is really just an attempt by UrthTech to extract more money from GOJO after the patents UrthTech licensed to GOJO became obsolete in light of GOJO's new formulations. Indeed, as soon as GOJO told UrthTech that it developed a new antimicrobial formulation for its spray product, which was not based on UrthTech's intellectual property, UrthTech immediately started angling for additional payments. First it argued that GOJO's new product was covered by UrthTech's patents and thus still covered under the parties' Licensing Agreement. When that failed, UrthTech and its founder, Dr. Awad, filed the first complaint in this case, making a new argument: that Dr. Awad invented GOJO's new formulations, so he should be a named inventor on and UrthTech should own an interest in GOJO's patent applications. After GOJO filed a pre-motion letter poking holes in that argument, UrthTech filed the FAC to add brand-new trade secret allegations and drop Dr. Awad as a plaintiff, while maintaining the essentially identical,

1

faulty contract claims from its first attempt. UrthTech's newly concocted trade secret claims are so new and out of left field that the FAC is the first time GOJO has ever heard them, despite over two years of discussing this issue with UrthTech. This is telling, and these newfound claims do not save UrthTech's lawsuit. UrthTech's FAC throws a lot of quasi-law and half-truths at the wall, but nothing sticks. It is a maze of allegations with only dead ends. For these reasons and all those set forth in detail below, UrthTech's FAC should be dismissed.

## II.    FACTUAL BACKGROUND

### A. *The GOJO-UrthTech Licensing Agreement.*

In 2009, GOJO and UrthTech began considering working together. (*See* FAC, ¶ 3.) Not until 2015 did GOJO agree to license some patents from UrthTech (the "License Agreement"). (FAC, ¶ 22.) The License Agreement granted GOJO exclusive rights to three U.S. patents covering *basic* (a basic solution, as opposed to an acidic solution, has a pH greater than 7), alcohol-based, antimicrobial formulations that use a fatty acid derivative. (FAC, ¶ 22, Ex. A, Schedule 1, Exs. C (independent claims 1, 15, 26, 28, 37), D (independent claims 1, 9, 18, 20, 27), E (independent claims 1, 32, 40, 42).) For several years, GOJO sold a basic antimicrobial spray product that was covered under the License Agreement as a Licensed Product. The License Agreement defines a "Licensed Product" as a cleaning product that would "but for this Agreement, infringe a Valid Claim" of the Licensed Patents—a "Valid Claim" being an issued claim of a Licensed Patent. (FAC, ¶ 23; Ex. A, definitions of "Licensed Product" and "Valid Claim".) GOJO paid UrthTech royalties under the Licensing Agreement on sales of its basic spray product. (FAC, Ex. A, ¶ 4.)

The License Agreement also addressed how the Parties would handle "Improvements" to the licensed technology. (*Id.* at Ex. A, ¶ 3.) An "Improvement" under the License Agreement

was "any modifications of, derivative works based on, and enhancements and improvements to

any Licensed Know-How, Licensed Patents, Licensed Technology or Licensed Product created,

conceived, developed or reduced to practice by or on behalf of either Party or both Parties[.]"

(*Id.* (definition of "Improvement").) Improvements created by GOJO would "remain the sole and

exclusive property of [GOJO]." (*Id.* at Ex. A, ¶ 3.2.) The License Agreement also contemplated

"Jointly Created Improvements," which were Improvements developed from "joint efforts"

wherein "at least one employee from each of [UrthTech] and [GOJO] . . . is considered an

'inventor' as defined by US Patent Law." (*Id.* at ¶ 3.3.) The License Agreement required the

Parties to jointly file any patent applications directed to Jointly Created Improvements, but it also

set forth a remedy if there was a disagreement: "if either party refuses or fails within a

reasonable period of time to execute all necessary documents to perfect such [joint] filing [] the

other party may file to seek rights in the Joint Improvements[.]" (*Id.* at Ex. A, ¶ 3.3.) In other

words, if one party refused to jointly file a patent application, the other party could file its own

patent application seeking rights in the alleged Joint Improvements.

**B.  *The alleged information UrthTech shared with GOJO.***

In 2009, before entering into the Licensing Agreement, GOJO and UrthTech also entered

into an NDA in case the Parties needed to share confidential information with each other.

According to the FAC, from 2009 to 2015, UrthTech allegedly shared information with GOJO

that fell under the NDA. (*See, e.g.*, FAC, ¶ 16.) UrthTech's FAC, however, identifies the first

communication containing any purported confidential information as occurring in 2013. (FAC, ¶

18.) UrthTech allegedly shared general, unspecified information "concerning [its] development

of basic and acidic antimicrobial formulations, and testing of such formulations" "during

telephone conferences and email exchanges." (*See, e.g.*, FAC, ¶ 16–19.) Although, no emails

3

were attached to the FAC. UrthTech also allegedly shared information related to two antimicrobial formulations: the "FA" and "FB" formulations. This included a "2004 Memo" that UrthTech allegedly shared with GOJO "during a November 21, 2013[] meeting conducted at Gojo's offices in Ohio" (attached to the FAC as Exhibit B) describing test results for "FA" an "FB." (FAC, ¶ 18, Ex. B.) Notably, this 2004 Memo did not identify the ingredients for either formulation. (*Id.*) In May 2015, UrthTech also allegedly provided GOJO "a confidential memorandum titled 'Improvement to Existing Technology'" that allegedly described the use of alkyl polyglucoside ("APG") in an antimicrobial formulation. (FAC, ¶ 28.) APG, however, had been a well-known surfactant used in antimicrobial formulations for decades that GOJO itself had used for many years. (*See*, *e.g.*, Ex. A, GOJO patents, *see* US 6,267,976 issued on July 31, 2001.) Notably, UrthTech's FAC never alleges that it provided GOJO a specific antimicrobial formulation or method that GOJO then purportedly copied for developing its new products or disclosed in a patent application—a critical missing piece in UrthTech's logic.

###  C.  *The GOJO patent applications at issue.*

The crux of UrthTech's claims in its FAC stems from GOJO filing two patent applications: the Acid Wipe Patent Application[1] (*see* FAC, ¶¶ 29–33) and the Spray Patent Application[2] (*see* FAC ¶¶ 34–37) (collectively, the "GOJO Patent Applications"). GOJO filed the Spray Patent Application after it independently developed a new antimicrobial spray formulation that corrected several flaws that existed for the previously licensed UrthTech formulation, including visible residue and a foul odor. (FAC, Ex. P.) A couple years before filing

---

[1] Acid Wipe Patent Application collectively refers to US Provisional Patent Application No. 62/559,221; US Non-Provisional Application No. 16/132,696; and US Patent Publication No. 2019/0082684, referred to in FAC ¶¶ 29–33.

[2] The Spray Patent Application collectively refers to US Provisional Patent Application No. 62/808,484; US Non-Provisional Application No. 16/796,990; and US Patent Publication No. 2020/0267973, referred to in FAC ¶¶ 34–37.

the Spray Patent Application, GOJO filed the Acid Wipe Patent Application to protect an entirely new antimicrobial *acidic f*ormulation wholly unrelated to the UrthTech licensed *basic* technology.

UrthTech alleges that GOJO breached the License Agreement and NDA and misappropriated UrthTech's trade secrets all purportedly based on abandoned claim 13 of the provisional patent application for the Spray Patent Application (*see* FAC, ¶ 34) and cancelled claim 33 of the Acid Wipe Patent Application (*see* FAC, ¶ 29). Neither claim is pending in either application, nor were they when UrthTech filed its first complaint.[3] Other than these two now abandoned claims, UrthTech has not identified anything else about the GOJO Patent Applications that it believes could support its FAC.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *Universal Processing LLC v. Weile Zhuang*, 2018 WL 4684115, at *2 (S.D.N.Y. Sep. 23, 2018) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be facially plausible, the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Elsevier Inc. v. Doctor Evidence, LLC*, 17:cv-5540, 2018 WL 557906, at *2 (S.D.N.Y. Jan. 23, 2018) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). UrthTech's FAC falls well short of this standard.

---

[3] Despite UrthTech's suggestion (FAC, ¶ 40), GOJO did not drop these patent claims to "exclude Dr. Awad's contributions." Although not necessary for granting GOJO's Motion to Dismiss, GOJO denies that these claims were based on or disclosed any purported Dr. Awad proprietary "contribution." GOJO declined to include claim 13 of the provisional application in the Spray Patent Application and cancelled claim 33 of the Acid Wipe Application for reasons related to patentability of the patent claims.

## IV.    ARGUMENT

### A. *UrthTech's request to amend and determine correct inventorship on GOJO's Patent Applications should be dismissed, no matter how UrthTech couches it.*

Although couched as a "breach of contract" and "trade secret" case, in its "Prayer for Relief," UrthTech asks this Court for an "injunction ordering Gojo to add Dr. Awad as an inventor" on two of GOJO's pending patent applications.[4] (FAC, Prayer for Relief at A and B.) UrthTech also grounds its breach of contract claim (Count I), in part, on the allegation that GOJO did not include Dr. Awad as an inventor on these applications. (FAC, ¶ 44.) This requested relief and grounds for breach of contract thus equate to a request to correct inventorship. But no matter how UrthTech packages it, no private cause of action exists upon which the Court may change inventorship on a *pending patent application*. *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co., Ltd.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010).

The Federal Circuit addressed this issue squarely in *HIF Bio, Inc. v. Yung Shin Pharmaceuticals Indus. Co., Ltd.* In *HIF*, the Federal Circuit held that, although the plaintiff's declaratory judgment action seeking to correct inventorship was properly within the district court's jurisdiction, "it should have dismissed the claim under Rule 12(b)(6) because no private right of action exists." *Id.* The court reasoned that there is no "private right of action to challenge inventorship of a pending patent application." *Id.* The Federal Circuit's reasoning was based on 35 USC § 116, which provides that the USPTO has the ***exclusive*** jurisdiction to determine inventorship on pending patent applications. *Id.*

It does not matter that UrthTech tries to couch this relief in terms of a breach of contract claim. *See Simonton Bldg. Products, Inc. v. Johnson*, 553 F. Supp. 2d 642, 650 (N.D. W. Va.

---

[4] UrthTech kept this request for relief despite telling this Court that it would amend its initial complaint "to avoid a dispute over whether the Court may properly order GOJO to correct inventorship in its pending applications." (UrthTech's 10-14 Letter (ECF No. 33).)

2008) (dismissing request for declaration of inventorship on pending patent application because no cause of action exists, despite plaintiff's "attempt[] to artfully narrow the issues . . . by framing them as questions of contract construction rather than patent law"). Under controlling legal authority, only the USPTO has the authority to "correct" inventorship of a ***pending patent application***. For this reason, the Court should dismiss UrthTech's requested injunctive relief seeking correction of inventorship and its breach of contract grounds related to inventorship (Count I).[5]

**B.   *UrthTech's breach of contract allegations fail to state a plausible claim.***

Even if this Court could change the inventorship of a pending patent application (which it cannot), UrthTech's breach of contract claims (Count I) still fail under Rule 12(b)(6). The FAC is devoid of factual support to make the claims plausible. For example, UrthTech alleges that GOJO breached the License Agreement when it allegedly did not give UrthTech notice before it filed the GOJO Patent Applications. (FAC, ¶ 44.) But UrthTech does not explain how this alleged breach, as it relates to the Spray Patent Application, could have caused any damages. And UrthTech fails to explain how GOJO's Acid Wipe Patent Application was purportedly an "Improvement" under the License Agreement that would require notice and joint filing in the

---

[5] The case UrthTech previously cited to the Court also supports dismissal of the FAC. In its December 6, 2022 letter, UrthTech incorrectly cites *Consolidated World Housewares, Inc. v. Finkle*, a Federal Circuit case, for the proposition that "the Court may order a party to seek correction of inventorship of a pending application." (ECF No. 40.) This is wrong—if anything, UrthTech's case supports dismissal. The Federal Circuit reviewed a district court decision *dismissing* the plaintiff's request to determine inventorship because "it did not have original jurisdiction to conduct an interference under § 1338(a) [i.e., a dispute between two parties to determine inventorship] or under any other statute because the United States Patent and Trademark Office was granted that function exclusively in 35 U.S.C. § 135(a)[.]" 831 F.2d 261, 265 (Fed. Cir. 1987). Nowhere in this decision, does the Federal Circuit hold that a court "may order a party to seek correction of inventorship of a pending patent application," as UrthTech claims in its letter. (ECF No. 40.) The law is clear. Because there is no cause of action that would permit the relief UrthTech seeks (an order requiring GOJO to change inventorship on a pending patent application), UrthTech's request should be dismissed. *HIF*, 600 F.3d at 1354.

first place. Barring specific factual allegations, UrthTech's conclusory statement deserves no consideration and its breach of contract claims should be dismissed.

1.   <u>Legal Standard.</u>

To state a claim for breach of contract, UrthTech must plausibly allege (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach. *Miller v. HSBC Bank U.S.A., N.A.*, 2015 WL 585589, at *3 (S.D.N.Y. Feb. 11, 2015); *see also Jinno Intern. Co. v. Premier Fabrics, Inc.*, No. 12 Civ. 07820, 2013 WL 4780049, at *2 (S.D.N.Y. May 24, 2013). UrthTech's allegations fail to allege damages with respect to the Spray Patent Application claims and fail to allege non-performance with respect to the Acid Wipe Patent Application.

2.   <u>UrthTech did not plead how any alleged breach related to GOJO's Spray Patent Application caused it damages.</u>

UrthTech fails to explain how GOJO's alleged late notice of the Spray Patent Application caused UrthTech any damages. GOJO *independently* invented its novel spray formulation to address several problems with UrthTech's formulation related to visible residue and a foul odor. (*See* FAC, Ex. P.) On February 21, 2019, GOJO filed a provisional patent application directed to this novel formulation, then on February 21, 2020, GOJO filed a non-provisional patent application for examination. (FAC, ¶ 34.) GOJO accurately named the inventors that contributed to the novel spray formulation, which did not include Dr. Awad. (*Id.* at ¶ 35.) As UrthTech admits, GOJO *did* give UrthTech notice of this new formulation on March 16, 2020—less than a month after filing the non-provisional application. (*Id.* at ¶ 38.) UrthTech, however, alleges that GOJO's notice was late and it should have included Dr. Awad as an inventor, purportedly amounting to a breach and justifying naming Dr. Awad as an inventor. (*See* FAC, ¶¶ 35, 38–40.) GOJO strongly disagrees that UrthTech contributed anything to its spray formulation. But even

8

accepting UrthTech's allegations as true, UrthTech's FAC fails to explain how GOJO's alleged breach caused any damages. Thus, UrthTech's claims should be dismissed.

To adequately plead a breach of contract, UrthTech must allege, with factual support, how UrthTech suffered damages because of GOJO's alleged breach—here, GOJO providing notice shortly *after* it filed its non-provisional application rather than 30 days *before* filing. *Miller*, 2015 WL 585589, at *4 ("[Plaintiff's] unsupported claim that she 'suffered damages,' without any further factual enhancement, is not enough to properly plead the damages element of a breach of contract claim" (*citing Bravo v. MERSCORP, Inc.*, No. 12-CV-884, 2013 WL 1652325, at *6 (E.D.N.Y. Apr. 16, 2013) ("A claim for breach of contract must rest on more than a conclusory allegation that the defendant's breach caused damages, even where the exact amount of damages is alleged.")).

In its FAC, UrthTech simply claims that "it has incurred damages in an amount to be determined at trial, but, upon information and belief, which are no less than $75,000" and that "UrthTech will be harmed if Gojo fails to amend its pending patent applications to add Dr. Awad as an inventor." (FAC, ¶¶ 46, 47.) These claims are wholly conclusory, and courts in this District have dismissed similar threadbare allegations. *Miller,* 2015 WL 585589, at *3; *see also Jinno*, 2013 WL 4780049, at *2 ("Without asserting any facts about how it was damages . . . [the] pleading fails to support an inference that it has actually suffered damages as a result of [the] breach[.]"). Absent a specific allegation regarding how UrthTech has been damaged, the breach of contract claim must be dismissed.

UrthTech also suggests that the breach of notice and not including Dr. Awad as an inventor for the Spray Patent Application resulted in UrthTech being "unable to prevent Gojo from amending or even abandoning the claims pending in the [Spray Patent Application]."

(FAC, ¶ 40.) But these are not cognizable damages under contract law. *See Partner Reinsurance Co. Ltd. V. RPM Mortgage, Inc.*, 2019 WL 3802235 (S.D.N.Y. Aug. 13, 2019).) A remedy wherein GOJO is *forced* to include UrthTech in its patent prosecution decisions against its will (and in violation of the law requiring that only true inventors be named on a patent) was never contemplated under the License Agreement, contrary to UrthTech's allegations otherwise. (*See* FAC, ¶ 45.) Rather, the License Agreement clearly sets forth the contemplated remedy if a party does not cooperate in jointly filing a patent on a Joint Improvement:

> The parties agree that all patent filings relating to Joint Improvements shall be made jointly, **but that if either party refuses or fails within a reasonable period of time to execute all necessary documents to perfect such filing that the other party may file to seek rights in the Joint Improvements**.

(FAC, Ex. A, ¶ 3.3 (emphasis added).) In other words, once UrthTech knew about GOJO's patent application and to the extent GOJO refused to add Dr. Awad as an inventor and allow UrthTech to participate in prosecution, UrthTech could have filed its own patent application seeking rights in the purported Joint Improvement. If UrthTech had filed its own application, the USPTO has a procedure called a "derivation action" where UrthTech could seek correction of inventorship on either pending patent application. *See* 35 U.S.C. § 135(b). This relief was available to UrthTech[6] until one year after the GOJO Spray Patent Application published. *Id.* at § 135(a)(2). By UrthTech's own admission, it had notice of the Spray Patent Application at the latest by March 16, 2020—five months before it published and 17 months before the deadline for filing a derivation action. (FAC, ¶ 38.) Any harm UrthTech now claims related to not being named as an inventor or not participating in prosecution is *not* a result of any breach by GOJO, it is a result of its failure to bring the dispute to the USPTO. UrthTech cannot now sneak in the

---

[6] This would have been an acceptable way for UrthTech to address its complaint regarding inventorship of a pending patent applications, since, as described *supra*, the USPTO is the entity that can correct it.

back door after failing to abide by the agreed-upon protocol for handling such a dispute. Moreover, the GOJO Patent Applications are still pending and no rights have yet been awarded, so any damages claim is premature at best.

Accordingly, UrthTech has failed to explain how *GOJO's alleged breach* with regard to the Spray Patent Application caused UrthTech any damages. Thus, even if the Court believes it can determine inventorship, UrthTech's breach of contract claims should be dismissed because UrthTech has failed to appropriately plead damages.

>    3.   The FAC is devoid of any fact that would demonstrate GOJO's Acid Wipe Patent Application is an "Improvement" under the Agreement.

UrthTech's breach of contract claims regarding the Acid Wipe Patent Application should also be dismissed because they are not plausible. Like the Spray Patent Application allegations, UrthTech also alleges that GOJO breached the License Agreement by not giving UrthTech notice of the filing and by not naming Dr. Awad as an inventor on the Acid Wipe Application. (FAC, ¶ 44.) But UrthTech's assertions can only amount to a breach if GOJO's Acid Wipe Application is for an "Improvement" under the License Agreement. It is not, and UrthTech failed to adequately plead that it is. Accordingly, UrthTech's corresponding breach of contract claims should be dismissed for this independent reason as well.

The License Agreement defines an "Improvement" as "any modifications of, derivative works based on, and enhancements and improvements to any Licensed Know-How, Licensed Patents, Licensed Technology or Licensed Product created, conceived, developed or reduced to practice by or on behalf of either Party or both Parties or any of their Affiliates after the Effective Date and during the term of this Agreement, including all Intellectual Property Rights therein." (FAC, Ex. A, definition of "Improvement".) In short, to constitute an Improvement, GOJO's Acid Wipe Patent Application must be an enhancement to the subject matter of the technology

UrthTech *owned* and *licensed* to GOJO. But GOJO's Acid Wipe Patent Application seeks to protect technology wholly unrelated to UrthTech's licensed *basic* technology, and UrthTech fails to plead otherwise.

The License Agreement licensed GOJO rights to three UrthTech-owned US patents that cover certain *basic* (*i.e.*, having a pH greater than 7) antimicrobial formulations that use a fatty acid derivative. (FAC, ¶ 8.) UrthTech provides an example of its patented technology, embodied by its "FB formulation," which "contains ethanol, lauric acid, water, and potassium hydroxide, *and has a pH of about 14*." (FAC, ¶ 6 (emphasis added).) GOJO's a*cidic* antimicrobial formulations are not—and UrthTech does not allege otherwise—Improvements that are based on the *basic* technology of the Licensed Patents. (*See* FAC, Exs. C–E.)

Moreover, UrthTech fails to plausibly allege that the GOJO Acid Wipe Patent Application is an improvement on any other technology UrthTech purportedly owns. UrthTech alleges, with no factual support, that "[t]he subject matter disclosed and claimed in the [GOJO Acid Wipe Patent Application] was based on information provided to GOJO by Dr. Awad on behalf of UrthTech" (FAC, ¶ 30), but fails to provide any factual support that such "information" was proprietary in any way that would qualify it as Licensed Technology under the License Agreement. UrthTech only alleges that it provided GOJO with "confidential UrthTech information . . . concerning [Dr. Awad's] development of basic and acidic antimicrobial formulations." (FAC, ¶ 16.) UrthTech fails to allege *what* information GOJO relied on, how it was used in the Acid Wipe Patent Application, or that such information would qualify as "Licensed Technology" under the License Agreement. Moreover, UrthTech fails to identify any part of the Acid Wipe Patent Application that allegedly uses UrthTech's proprietary information. Such threadbare and conclusory allegations cannot support a claim to relief. *Iqbal*, 556 U.S. at

678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, UrthTech's breach of contract claims regarding the Acid Wipe Patent Application should be dismissed.

### C. *UrthTech's DTSA claims are time-barred.*

UrthTech's claims under the Defend Trade Secrets Act ("DTSA") are confusing, conflicting, and time-barred. (FAC, Count III.) Despite GOJO's Acid Wipe Patent Application publishing on March 21, 2019, UrthTech waited until ***November 10, 2022***, when it filed this FAC to first raise any trade secret issues. DTSA claims are subject to a three-year statute of limitations: "A civil action . . . may not be commenced later than 3 years after the date on which the misappropriation . . . is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). A court in this District has dismissed a DTSA claim for being time-barred because the claim was filed more than three years after the misappropriation should have been discovered via a patent publication. *Zirvi v. Flatley*, 433 F. Supp.3d 448, 459 (S.D.N.Y. 2020 (*aff'd*, 838 Fed. Appx. 582, 586 (2d Cir. 2020)). In *Zirvi v. Flatley*, the plaintiff's alleged trade secrets were disclosed in a chain of patent applications identifying the defendant on their face that published over three years before the plaintiff sued. The court held that this publication started the limitations period, reasoning that "[t]he existence of a patent application or a public patent puts parties on notice of their existence and therefore starts the clock on the limitations period." *Id.*

This reasoning applies with full force here. UrthTech's FAC alleges that GOJO misappropriated UrthTech's trade secrets by filing and allowing to publish GOJO's Acid Wipe Patent Application, which published on March 21, 2019. (FAC, ¶¶ 60, 69, Ex. L.) UrthTech waited over three years to raise this issue in its FAC. Accordingly, UrthTech's DTSA claims are

time-barred (which is clear from the face of the FAC alone) and should be dismissed.[7] *Zirvi*, 433 F. Supp. at 460.

### D. *UrthTech's trade secret allegations fail to state a plausible claim.*

Even if UrthTech's DTSA claims survive the statute of limitations argument at this stage, they and UrthTech's claims under the Ohio Uniform Trade Secrets Act (OUTSA) (Counts III and IV) both fail to state a claim under Rule 12(b)(6). In the several years the parties have discussed the present dispute, UrthTech never said a word about trade secret misappropriation until this FAC. This is clearly because (1) UrthTech does not consider or keep its formulations as trade secrets; (2) UrthTech knows GOJO did not disclose any UrthTech trade secrets in its patent application; or both. It is not surprising that UrthTech fails to identify any real trade secrets in its FAC and fails to explain how GOJO allegedly misappropriated any trade secrets. There is no plausible set of facts that exists to support such a claim. UrthTech's trade secret claims should be dismissed under Rule 12(b)(6) for failure to state a plausible claim.

### 1. Legal Standard.

To state a claim for trade secret misappropriation under the DTSA and OUTSA, a plaintiff must plausibly allege that (1) it owns a trade secret, and (2) the defendant misappropriated it. 18 U.S.C. § 1836(b)(1); *Corporate Lodging Consultants, Inc. v. Szafarski*, No. 1:21-cv-1611, 2021 WL 3709914, *5 (N.D. Ohio Aug. 20, 2021) ("The definition of a trade secret and requirements for establishing misappropriation of trade secrets are substantially the same under the DTSA and OUTSA.").

---

[7] The Federal Circuit case UrthTech cites in its December 6, 2022 letter does not hold otherwise. In *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, the district court opinion reasoned, and the appellee argued, that the plaintiff should have been on notice of potential claims based on *communications* between the parties dating back to multiple years *before* the patent at issue published. The appellate court's decision does not address whether a patent publication constitutes constructive notice of trade secret misappropriation. Accordingly, the decision from a court in this District applying the same facts and arguments at issue here is more applicable than the non-binding, distinguishable *CODA* decision. UrthTech's DTSA claims should thus be dismissed as time barred.

The DTSA defines a "trade secret" as any business information that (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) derives independent economic value from not being generally known or readily ascertainable to others who can obtain economic value from its disclosure or use. 18 U.S.C. § 1839(3)(A)–(B); *Universal Processing LLC v. Weile Zhuang*, 2018 WL 4684115, at *2 (S.D.N.Y. Sep. 23, 2018); *see also Kairam v. West Side GI, LLC*, 1:18-cv-01005, 2018 WL 6717280, at *8 (S.D.N.Y. Nov. 9, 2018) (reversed in part on other grounds).

Misappropriation includes the disclosure or use of a trade secret without consent of the owner by a person who used improper means to acquire knowledge of the trade secret or, at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret. 18 U.S.C. § 1839(5); *Kairam*, 2018 WL 6717280, at *9. For its claim to survive a 12(b)(6) challenge, UrthTech must adequately plead both the existence of a trade secret and misappropriation. It has not adequately pled either.

      2.   <u>UrthTech failed to adequately plead the existence of a trade secret.</u>

UrthTech has not come close to alleging sufficient facts plausibly showing that it owns a "trade secret." UrthTech's allegations fall short in several respects, including lack of specificity, lack of security measures, and lack of value derived from secrecy. To adequately state a claim, UrthTech must plead sufficient facts to show its information "is truly [a] trade secret"—"a standard far greater than the standard for confidentiality of business information." *Elsevier*, 2018 WL 557906, at *5. To meet this high standard, UrthTech must "delineate sufficient information about the ***nature***, ***value***[,] and ***measures*** taken to safeguard the [information] to support an inference that such [information] qualifies as a trade secret." *Kairam*, 2018 WL 6717280, at *9

(emphasis added). In its FAC, UrthTech mixes together allegations about antimicrobial formulations, broadly speaking, with allegations about two particular formulations, FA and FB, and other one-off ingredients. (FAC, ¶¶ 6 16–18, 28) UrthTech lumps all these together, suggesting that all this information constitutes trade secrets. But UrthTech's FAC cannot establish that any of it meets that high standard.

*First*, UrthTech's categorical allegation that its "information concerning basic and acidic antimicrobial agent formulations" are trade secrets (FAC, ¶ 54, *see also* ¶¶ 55–60) is too broad. This broad category does not inform GOJO of what it allegedly misappropriated, and it would encompass information that is admittedly *not* a trade secret. This generalization thus fails to establish a plausible claim. *See Lawrence v. NYC Medical Practice, P.C.*, 1:18-cv-8649, 2019 WL 4194576, at *4–5 (S.D.N.Y. Sep. 3, 2019) ("Listing general categories of information, as Defendants have done here, does not adequately plead the existence of a trade secret."); *Elsevier*, 2018 WL 557906, at *4 (explaining that a plaintiff "must do more than simply list general categories of information" to plead a misappropriation claim under the DTSA).

More specifically, UrthTech's general category of "information concerning basic and acidic antimicrobial agent formulations" tells GOJO *nothing* about what it allegedly misappropriated. There is abundant information in the public domain about antimicrobial formulations. Indeed, UrthTech owns published patents on its basic formulations, including the FB formulation. (FAC, ¶ 8.) These patents (along with many others in this space) disclose copious information about antimicrobial formulations, including the contents, pH, methods of preparation, etc. UrthTech even discloses *the contents and the pH* of both its FA and FB formulations in its publicly filed FAC: "The FA formulation contains ethanol, lauric acid, water, and citric acid, and has a pH of about 3, while the FB formulation contains ethanol, lauric acid,

water, and potassium hydroxide, and has a pH of about 14." (FAC, ¶ 8.) None of this can be a trade secret. UrthTech's "trade secrets" must be something much narrower than whether its formulation is "antimicrobial," its pH is "basic" or "acidic," and the general ingredients. Accordingly, as in *Lawrence* and *Elsevier*, this Court should dismiss any trade secret allegations based on this broad category of "information concerning basic and acidic antimicrobial agent formulations." Simply put, this broad generalization cannot give GOJO proper notice of any trade secrets.

To the extent UrthTech would claim that using APG in an antimicrobial formulation (FAC, ¶ 28) or that its FA formulation (FAC, ¶ 6) adequately describe the nature of its trade secrets,[8] these allegations fail. The use of APGs in antimicrobial formulations has been known in the art for decades. GOJO, in fact, disclosed using APGs in antimicrobial formulations in patent publications[9] going back to 2000. (Ex. A, US 6,267,976; US 2007/0148101; US 8,580,860; US 8,822,547.) Moreover, the ingredients of the purported "FA formulation" cannot be a trade secret without more (e.g., the amounts of each therein) because at minimum, they were publicly disclosed in the FAC (FAC, ¶ 6), but also for all the following reasons.

**Second**, UrthTech fails to identify a single adequate security measure it uses to keep its information secret. This failure is fatal to UrthTech's trade secret claims. *See Elsevier*, 2018 WL 557906, at *6; *Kairam*, 2018 WL 6717280, at *9; *Universal*, 2018 WL 4684115, at *3; *Garvey v. Face of Beauty LLC*, 21-CV-10729, 2022 WL 5246665, at *9 ("Most fatal to Defendants' trade secret claim is the lack of any facts suggesting steps taken to keep the information secret.").

---

[8] GOJO is reduced to guessing what could possibly be claimed as a trade secret by UrthTech, another sign that the FAC does not factually support its trade secret claims.
[9] This Court may take judicial notice of records of the USPTO. *Telebrands Corp. v. Del Laboratories, Inc.*, 719 F. Supp. 2d 283, 287 (S.D.N.Y. 2010).

UrthTech's only allegations relating to how it kept its information secret are (1) that it did not "disclos[e] this information outside of UrthTech" and [(2)] it "shar[ed] this information with Gojo only subject to the confidentiality obligations of the parties' NDA." (FAC, ¶ 57.) The first claim is not true. UrthTech admits in its FAC that it shared the actual FA and FB formulations with outside researchers on two occasions and fails to explain how it maintained any secrecy in those disclosures. (FAC, ¶ 7.) And as mentioned above, UrthTech secured published patents on its basic formulations, including the "FB formulation." (*Id.* at ¶¶ 8–12.) Moreover, "[t]aking steps to protect information through a confidentiality agreement does not, on its own, suggest the existence of a bona fide trade secret[]." *Elsevier*, 2018 WL 557906, at *6; *see also Universal*, 2018 WL 4684115, at *3 (same). This "conflates the concept of a 'trade secret' with 'confidential information.'" *Id.* Protecting trade secrets requires more. For example, courts in this District have dismissed trade secret claims where there was no evidence of cyber security to protect the information when it is shared. *See Universal*, 2018 WL 4684115, at *3 (dismissing trade secret claims where email communications were not encrypted); *see also Investment Science, LLC v. Oath Holdings Inc.*, 20 Civ. 8159, 2021 WL 3541152, at *4 (S.D.N.Y. Aug. 11, 2021) (finding security measures insufficient where they fell short of examples like a "strictly controlled server, a password-protected document, or a password-protected folder") (internal quotations omitted). Here, UrthTech does not allege any of that; rather, it admits that it has shared the information with various third parties without it. According to the case law in this District, UrthTech's failure to allege its security measures is also enough to dismiss UrthTech's claims.

**Third**, UrthTech's failure to plead facts showing that it derived value from the formulations' secrecy also undermines its trade secret claims. *Garvey*, 2022 WL 5246665, at *9

("Without pleading efforts to maintain the secrecy of the information at issue, nor facts demonstrating the value derived from keeping such information secret, Defendants have not plausibly pled the existence of a trade secret[.]") UrthTech's allegations with respect to value are scant and wholly conclusory. UrthTech claims that "[t]he information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation has independent economic value from not being generally known nor readily ascertainable through proper means." (FAC, ¶ 56.) But this declaration is conclusory and cannot sustain UrthTech's trade secret claim. *See Intrepid Financial Partners, LLC v. Fernandez*, No. 20 CV 9779, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) (dismissing trade secret claim because plaintiff's allegations regarding economic value were conclusory). The same applies to UrthTech's allegation that "[t]he confidential information disclosed by Dr. Awad to Gojo was commercially valuable and could not have been independently developed by Gojo, without investing significant time and resources to develop such information." (FAC, ¶ 20.) These two conclusory allegations fall short of making UrthTech's trade secret claims plausible and warrant dismissing its claims. *See, e.g.*, *Intrepid*, 2020 WL 7774478, at *4.

Put simply, The FAC demonstrates that UrthTech never intended to keep its formulations as a trade secret. UrthTech never claimed that anything it provided to GOJO was a "trade secret," including over the multiple years after GOJO informed UrthTech about its new formulation and patent applications. (FAC, ¶ 22.) This FAC was the first time UrthTech ever raised any trade secret issue. Accordingly, UrthTech's trade secret cause of action should be dismissed.

### 3.  UrthTech failed to adequately plead misappropriation.

Even accepting, for the sake of argument, that UrthTech sufficiently identified trade secrets (it has not), the FAC fails to provide facts relating to how GOJO allegedly

misappropriated them. To adequately plead a claim under both the DTSA and OUTSA, UrthTech must plausibly allege that GOJO "misappropriated" its trade secrets, which entails "(1) acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent." *Zurich American Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 404 (S.D.N.Y. 2021) (cleaned up); *PPS Service Group, LLC v. Eckert*, No. 1:18-cv-727, 2019 WL 3927232, at *5 (S.D. Ohio Aug. 20, 2019) ("to prevail on an OUTSA claim, a plaintiff must show . . . "the unauthorized use of a trade secret"). UrthTech has not plausibly alleged either method of misappropriation.

"Improper means" can be quickly disposed of. UrthTech admits that it willfully gave GOJO any purported trade secret information.[10] (*See, e.g.*, FAC, ¶¶ 55, 66.) Next, UrthTech's allegation that GOJO "misappropriated . . . through its use of the formulations, filing of the '221 Provisional Application and the '696 Application, and allowing publication of the '684 Publication" (FAC, ¶¶ 60, 69), is missing critical information: *What* did GOJO put in the GOJO Acid Wipe Patent Application that disclosed or relied on an UrthTech trade secret? And *where* is it disclosed? These critical pieces of information are missing in UrthTech's FAC, and without them, UrthTech's claims are wholly unsupported and must be dismissed.

Indeed, UrthTech does not link any purported trade secret to anything specific in GOJO's Acid Wipe Patent Application. That is because there is nothing that could be considered an UrthTech trade secret in the application. Rather, UrthTech describes a mishmash of information

---

[10] One notable exception is that UrthTech *does not include* any details about how it provided GOJO the "FA formulation," including *when* it allegedly provided it or *who* it was provided to. The only time UrthTech seemingly alleges that it even provided this information is in paragraphs 54 and 64, which merely state, "UrthTech provided to Gojo confidential, trade secret information concerning basic and acidic antimicrobial agent formulations, including the FA formulation." Providing "information concerning" the FA formulation (e.g., testing results) is not the same as providing the actual FA formulation. To the extent UrthTech is relying on the FA formulation as a basis for its misappropriation claim, this is reason alone to dismiss, as UrthTech does not affirmatively allege that it provided the actual FA formulation or that it provided it *before* GOJO filed its Acid Wipe Patent Application.

that it purportedly gave GOJO (none appearing to be trade secrets), then vaguely claims GOJO's Acid Wipe Patent Application was "based on" that information. At best, UrthTech's FAC appears to allude to ways in which GOJO's Acid Wipe Patent Application may have misappropriated information, but those are merely breadcrumbs that, even if the Court were to follow, would lead to dead ends. This is why Rule 12(b)(6) exists with the *Iqbal/Twombly* standard—to make sure that the defendant knows and understands the claims against it, and to avoid wasting the Court's and the parties' time on cases that cannot result in recovery. Without the requisite specificity, the FAC must be dismissed.

For example, UrthTech *suggests* that GOJO's misappropriation may be that it included the "FA formulation" in the Acid Wipe Patent Application. (FAC, ¶ 60; *see also* 12-6-22 letter (ECF No. 40).)[11] But this notion is quickly dispelled, as "lauric acid" is not mentioned *once* in the application. (*See* FAC, Exs. K and L.) And GOJO has disclosed citric acid as both a pH adjuster since at least 1995 (Ex. A, US 5,635,462) and as an efficacy enhancer since at least 2006 (Ex. A, US 8,119,115). Likewise, UrthTech *suggests* that GOJO's misappropriation may be that it included "APG" in its Acid Wipe Patent Application. (FAC, ¶¶ 28–30, 32.) But as explained above, this cannot be, as GOJO has also been disclosing this in patent publications for over two decades—well before UrthTech purportedly "described" it to GOJO. Such vague allegations do not make a plausible trade secret misappropriation claim. Accordingly, UrthTech has not plausibly alleged misappropriation.

---

[11] Once again, GOJO is forced to speculate what UrthTech might be arguing could constitute misappropriation since the FAC is devoid of specific factual support.

**E.  *UrthTech's breach of the NDA fails to state a plausible claim.***

As with UrthTech's other claims, UrthTech's breach of NDA allegations are vague and conclusory and should be dismissed. UrthTech's FAC fails to identify *what* confidential information GOJO allegedly improperly used or disclosed.

Under the NDA, the Parties agreed to "keep Confidential Information in strict confidence and under conditions of secrecy and [to] not, at any time, disclose to others or use for its own benefit any Confidential Information without prior written approval by the disclosing party." (FAC, Ex. F, ¶ 2.) Confidential Information, however, "does not include information which: (a) at the time of receipt by the receiving party, is in the public domain [or] . . . was lawfully acquired and in the receiving party's lawful possession before its receipt from the disclosing party[.]" (*Id.* at ¶ 1.)

As with UrthTech's other causes of action, UrthTech's FAC uses smoke and mirrors to give the impression that UrthTech provided GOJO proprietary, confidential information, and that GOJO used and disclosed that information in filing its patent applications. But upon scrutiny, UrthTech's allegations are empty. In its December 6, 2022 letter to this Court, UrthTech points to various paragraphs of its FAC as purportedly alleging GOJO breached the NDA. (ECF No. 40.) But the allegations fall well short.

***First***, UrthTech points to paragraphs ¶¶ 16–18 as alleging communication of confidential information (ECF No. 40), but there is nothing specific enough to give GOJO notice of what was allegedly improperly disclosed. The allegations in these paragraphs are conclusory, simply alleging, for example, that UrthTech "disclosed confidential UrthTech information to Gojo concerning his development of basic and acidic antimicrobial formulations, and testing of such formulations[.]" (FAC, ¶ 16.) But this statement is too vague to allege a plausible claim, especially considering GOJO's entire business concerns developing antimicrobial products.

22

***Second***, UrthTech points to paragraphs ¶¶ 29–37 as allegations showing "GOJO's improper use and disclosure of the confidential information." (ECF No. 40.) These allegations all relate to GOJO filing its Spray and Acid Wipe Patent Applications, but they fail to describe what "confidential information" GOJO allegedly disclosed or used. (FAC, ¶¶ 29–37.) At best, UrthTech claims in paragraph 29 that GOJO's Acid Wipe Patent Application is "directed to acidic antimicrobial compositions (i.e., compositions having a pH less than 7) that comprise, among other options, ***citric acid*** and an ***alkyl polyglucosides***[.]" (*Id.*, ¶ 29 (emphasis added).) And in paragraph 34, UrthTech alleges that GOJO's Spray Patent Application is "directed to a basic antimicrobial composition (i.e., compositions having a pH greater than 7) that comprise an ***alkyl polyglucoside*** surfactant[.]" (*Id.*, ¶ 34 (emphasis added).) But as explained above (pp. 4, 17, 21), APG and citric acid were known ingredients in antimicrobial formulations well before 2009. Neither of these ingredients qualify as "Confidential Information" under the NDA and cannot be the basis of a plausible claim that GOJO breached the NDA. UrthTech's failure to identify any confidential information it provided to GOJO and that GOJO improperly used or disclosed warrants dismissing UrthTech's claim.

### F.  ***UrthTech fails to allege proper personal jurisdiction and venue for its trade secret and NDA claims.***

Finally, UrthTech's FAC fails to make a prima facie showing of jurisdiction or venue over GOJO for its trade secret and NDA claims. UrthTech's sole basis for jurisdiction and venue is through the License Agreement's forum selection clause for suits "arising out of or related to" the License Agreement. (FAC, ¶ 4-5.) UrthTech made no allegations that venue or jurisdiction are otherwise proper. Accordingly, this Court should dismiss the trade secret and NDA claims for lack of jurisdiction and venue, as they do not arise out of or relate to the License Agreement.

To survive a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, UrthTech bears the burden of "mak[ing] a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). This requires "making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Penguin Grp. (USA) Inc. v. America Buddha*, 609 F.3d, 35 (2d Cir. 2010) (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003)). Moreover, UrthTech must "establish the court's jurisdiction with respect to each claim asserted." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018).

UrthTech failed to make allegations that would support a finding of personal jurisdiction over GOJO related to the trade secret and NDA claims. UrthTech provides one paragraph (¶ 5) that rests its personal jurisdiction allegation entirely on the forum selection clause from the License Agreement. UrthTech did not allege any facts that would show GOJO otherwise has sufficient contacts with New York to establish general or specific jurisdiction for UrthTech's trade secret or NDA claims. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (explaining that plaintiff must establish either specific ("case-linked") or general ("all-purpose") personal jurisdiction). This is sufficient to dismiss the trade secret and NDA claims.

Venue is also improper for the trade secret and NDA claims. Under 28 U.S.C. § 1391(b), venue is appropriate in: (1) a judicial district in which any defendant resides; (2) a judicial district in which a substantial part of the events or property giving rise to the claim occurred, or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. Courts must "construe the venue statute strictly" and "take seriously the adjective 'substantial.'"

24

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). As with personal jurisdiction, UrthTech must establish proper venue with respect to each cause of action asserted. *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 386 (S.D.N.Y. 2010).

The parties agree that GOJO is an Ohio company. (FAC, ¶2). Thus, the first venue category is inapplicable. *LS Parry, Inc. v. Tepeyac, LLC*, No. 18-CV-11808, 2020 WL 5026589, at *3 (S.D.N.Y. Aug. 25, 2020). Additionally, UrthTech's Amended Complaint alleges that the actions related to the trade secret and NDA claims "***occurred primarily in Ohio***." (FAC, ¶ 70). UrthTech thus failed to make a prima facie showing of proper venue for the trade secret and NDA claims, and dismissal is warranted. *See LS Parry*, 2020 WL 5026589, at *5.[12]

## V.    CONCLUSION

UrthTech's FAC should be dismissed Under Rule 12(b)(6). No valid private cause of action exists for UrthTech's requested relief to change inventorship of GOJO's pending patent applications. UrthTech's breach of contract claims also fail to allege damages related to GOJO's Spray Patent Application, that GOJO's Acid Wipe Patent Application required notice and joint filing, and that GOJO improperly disclosed any UrthTech confidential information. UrthTech's trade secret claim was simply added out of desperation, knowing that it cannot recover under the breach of contract allegations. UrthTech's trade secret allegations fail to identify a true trade secret or how GOJO purportedly misappropriated anything. Finally, UrthTech has not established personal jurisdiction or venue for its trade secret or NDA claims. For all these reasons, UrthTech's FAC should be dismissed.

---

[12] GOJO is also considering moving to transfer the case to a more convenient forum based on the outcome of the motion to dismiss and what claims, if any, remain.

January 10, 2023                                      _/s/ Andrew Alexander_____
                                                      John Cipolla
                                                      (jcipolla@calfee.com)
                                                      Andrew Alexander
                                                      (aalexander@calfee.com)
                                                      CALFEE, HALTER & GRISWOLD LLP
                                                      The Calfee Building
                                                      1405 East Sixth Street
                                                      Cleveland, Ohio 44114-1607
                                                      Tel: 216-622-8200

                                                      Noam J. Kritzer
                                                      (nkritzer@kmpatentlaw.com)
                                                      KRITZER MCPHEE LLP
                                                      23 Vreeland Road, Suite 104
                                                      Florham Park, New Jersey 07932
                                                      Tel: 973-679-7272

                                                      Ryan S. McPhee
                                                      (rmcphee@kmpatentlaw.com)
                                                      KRITZER MCPHEE LLP
                                                      501 W. Broadway, Suite 800
                                                      San Diego, California 92101
                                                      Tel: 619-758-3600

                                                      *Attorneys for the Defendant:*
                                                      *GOJO Industries, Inc.*

26

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on January 10, 2023.

*/s/ Andrew W. Alexander*
Andrew W. Alexander