UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
URTHTECH LLC,

                    Plaintiff,                    22-cv-6727 (PKC)

      -against-                                   OPINION AND
                                                  ORDER

GOJO INDUSTRIES, INC.,

                    Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

            Plaintiff UrthTech LLC ("UrthTech") brings claims against GOJO Industries, Inc.

("GOJO") for breach of a license agreement, breach of a non-disclosure agreement ("NDA"),

and trade secret misappropriation.  (ECF 38.)  GOJO moves to dismiss UrthTech's First

Amended Complaint, arguing that each of UrthTech's claims fail to state a plausible claim, Rule

12(b)(6), Fed. R. Civ. P., that UrthTech's federal trade secret claim is time barred, and that

UrthTech fails to allege personal jurisdiction and venue with respect to its trade secret and NDA

claims.  (ECF 44; ECF 45.)  For the reasons that will be explained, GOJO's motion will be

granted and each of UrthTech's claims will be dismissed.


BACKGROUND

            The Court accepts the well-pleaded allegations in the First Amended Complaint

as true and draws all reasonable inferences in favor of the non-movant plaintiffs.  See Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009); In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir.

2007).

UrthTech is alleged to be "the leading developer of environmentally responsible antimicrobial products and specialty edible oils." (ECF 38 ¶ 1.) It was founded in 2002 by Michael J. George and Dr. Aziz Awad ("Dr. Awad"). (Id. ¶ 6.) Dr. Awad designed acidic and basic antimicrobial formulations, including an acidic formulation identified as "FA" and a basic formulation identified as "FB." (Id.) As a result of Dr. Awad's research and development efforts, UrthTech obtained several patents (the "UrthTech Patents"). (Id. ¶¶ 8-9.) UrthTech alleges that it "focused its patenting efforts on the basic formulations and retained the FA formulation and other acidic formulations as trade secrets." (Id. ¶ 8.)

GOJO manufactures and sells consumer and commercial cleaning products. (Id. ¶ 2.) UrthTech and GOJO began working together in 2009 to develop new antimicrobial technologies for GOJO to market under the Purell brand. (Id. ¶ 3.)

On January 20, 2009, UrthTech and GOJO entered into an NDA pursuant to which they agreed to share certain information with each other under conditions of confidentiality. Between 2009 and 2015, pursuant to the NDA, Dr. Awad disclosed to GOJO information concerning his development and testing of basic and acidic antimicrobial formulations. (ECF 38 ¶ 16.) The information he shared included "confidential UrthTech information that was not disclosed in any of the publicly available patents and applications filed by UrthTech." (Id.) Dr. Awad also disclosed confidential hard-copy documents concerning his development of antimicrobial formulations, including a memorandum reporting the results of "mold disinfection efficacy trials" on the FA and FB formulations (the "2004 Memo"). (Id. ¶¶ 7, 18; ECF 38-2.)

On March 5, 2015, UrthTech and GOJO entered into a license agreement (the "License Agreement") that granted GOJO an exclusive license to a group of patents, including

the UrthTech Patents, to "make, have made, use, offer to sell, sell and import Licensed Products" in certain markets.  (ECF 38 ¶ 22; ECF 38-1 at 4, 25, § 2.1(a).)  The parties also entered into a "Technical Assistant Agreement" the same day, pursuant to which Dr. Awad assisted GOJO in developing a Purell-brand "multi surface disinfectant" product, which was a Licensed Product under the License Agreement.  (ECF 38 ¶¶ 22-23; ECF 38-8.)

Acid Wipe Patent Application:  GOJO filed a provisional patent application on September 15, 2017, directed to acidic antimicrobial compositions that comprise, among other options, citric acid and an alkyl polyglucoside (the "'221 Provisional Application").  (ECF 38 ¶ 29; ECF 38-11.)  It then filed a non-provisional application (the "'696 Application") that claimed priority to the '221 Provisional Application and published on March 21, 2009 (the "'684 Publication," and collectively with the '221 Provisional Application and '696 Application, the "Acid Wipe Patent Application").  (ECF 38 ¶ 29, ECF 38-12.)  Claim 33, as published in the '684 Publication, is directed to an acidic antimicrobial containing an alkyl polyglucoside.  (ECF 38 ¶ 29.)  UrthTech alleges on information and belief that in 2018 GOJO "began marketing Purell® Foodservice Surface Sanitizing Wipes, which embodies at least the invention claimed in claim 33 of the '696 Application."  (Id. ¶ 33; ECF 38-13.)

Spray Patent Application:  GOJO filed another provisional patent application on February 21, 2019, directed to basic antimicrobial compositions "that comprise an alkyl polyglucoside surfactant instead of a fatty acid-based surfactant" (the "'484 Provisional Application").  (ECF 38 ¶ 34; ECF 38-14.)  UrthTech alleges that "[a]s filed," claim 13 of the '484 Provisional Application "recited a composition comprising one or more C1-C6 alcohols such as ethanol, and 'one or more surfactants comprising one or more of alcohol ethoxylates, alcohol propoxylates, and alkyl polyglucosides.'"  (ECF 38 ¶ 34.)  GOJO filed a non-provisional

application (the "'990 Application") that was based on the '484 Provisional Application and published on August 27, 2020 (the "'793 Publication," and collectively with the '484 Provisional Application and '990 Application, the "Spray Patent Application"). (Id. ¶ 35; ECF 38-15.) GOJO later filed two amendments to the claims pending in the Spray Patent Application, on April 30, 2020, and August 3, 2021. (ECF 38 ¶ 40; ECF 38-18; ECF 38-19.)

UrthTech and Dr. Awad initiated this action on August 8, 2022. (ECF 1.) The initial complaint asserted a single claim against GOJO for breach of the License Agreement based on GOJO's Spray and Acid Wipe Patent Applications. (Id.) GOJO filed a letter setting forth the grounds for a motion to dismiss the complaint. (ECF 21.) After hearing the parties at a conference, the Court granted UrthTech leave to amend its complaint. (Minute Entry for Nov. 3, 2022.) UrthTech filed its First Amended Complaint in November 2022 and removed Dr. Awad as a party. (ECF 38.)

In brief, UrthTech claims that GOJO's Spray and Acid Wipe Patent Applications are based on improvements to technology that UrthTech licensed to GOJO under the License Agreement and on confidential information that UrthTech provided to GOJO pursuant to the NDA. Allegedly in breach of the License Agreement, GOJO failed to timely notify UrthTech of such improvements, failed to list Dr. Awad as an inventor on the patent applications despite his contributions to the underlying technology, and failed to involve UrthTech in the patent application process. UrthTech further claims that GOJO's use of UrthTech's confidential information without UrthTech's knowledge or consent constitutes a breach of the NDA and misappropriation of trade secrets.

The First Amended Complaint asserts four causes of action against GOJO: (1) breach of the License Agreement, (2) breach of the NDA, (3) trade secret misappropriation under

the federal Defend Trade Secrets Act ("DTSA"), and (4) trade secret misappropriation under the Ohio Uniform Trade Secrets Act ("OUTSA").

GOJO moves to dismiss the First Amended Complaint for failure to state a claim, failure to allege personal jurisdiction and venue with respect to the trade secret and NDA claims, and on the grounds that the DTSA claim is time barred. GOJO also asserts that UrthTech's allegations rest on two patent claims that GOJO abandoned by the time UrthTech filed its original complaint and denies that its patent applications are based on contributions by Dr. Awad. (ECF 45 at 5, 9 & n.3.)

DISCUSSION

I.    Jurisdiction and Venue.

      A.   Subject Matter Jurisdiction.

      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties. UrthTech is a limited liability company existing under the laws of Michigan, and all of its members are citizens of Michigan. (ECF 38 ¶ 1.) GOJO is a corporation organized and existing under the laws of Ohio with its principal place of business in Ohio. (Id. ¶ 2.)

      B.   Personal Jurisdiction and Venue.

      GOJO asserts that UrthTech's claims for breach of the NDA (Count II) and trade secret misappropriation (Counts III and IV) should be dismissed for lack of personal jurisdiction and improper venue.

      To survive a motion to dismiss for lack of personal jurisdiction or improper venue, a plaintiff must make a prima facie showing of jurisdiction or venue. Licci ex rel. Licci v.

Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013) (quoting Thomas v. Ashcroft,

470 F.3d 491, 495 (2d Cir. 2006)); Gulf Insurance Co. v. Glasbrenner, 417 F.3d 353, 355 (2d

Cir. 2005).  Personal jurisdiction and proper venue must be established with respect to each

claim asserted.  See Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004)

(personal jurisdiction); Basile v. Walt Disney Co., 717 F. Supp. 2d 381, 386 (S.D.N.Y. 2010)

(Holwell, J.) (venue).

      The First Amended Complaint alleges that "[t]he parties consented to personal

jurisdiction of this Court in their License Agreement."  (ECF 38 ¶ 5.)  Section 13.13(b) of the

License Agreement states:

> Any legal suit, action or proceeding arising out of or related to this
> [License] Agreement or the licenses granted hereunder shall be
> instituted exclusively in the federal courts of the United States or the
> courts of the State of New York in each case located in the city and
> County of New York, New York, and each party irrevocably
> submits to the exclusive jurisdiction of such courts in any such suit,
> action or proceeding.

(ECF 38-1 § 13.13(b) (emphasis added).)

      It is well-settled that "[p]arties can consent to personal jurisdiction through

forum-selection clauses in contractual agreements."  D.H. Blair & Co., Inc. v. Gottdiener, 462

F.3d 95, 103 (2d Cir. 2006) (citing National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311,

315-16 (1964)).  "'[F]orum selection clauses are prima facie valid and should be enforced unless

enforcement is shown by the resisting party to be unreasonable under the circumstances,' . . . or

unless the forum selection clause 'was invalid for such reasons as fraud or overreaching.'"  Magi

XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720-21 (2d Cir. 2013) (quoting

TradeComet.com LLC v. Google, Inc., 647 F.3d 472, 475 (2d Cir. 2011) and Bense v. Interstate

Battery System of America, Inc., 683 F.2d 718, 721 (2d Cir. 1982)).  "A party that consents to

personal jurisdiction in a particular forum also consents to venue there." ErGo Media Cap., LLC v. Bluemner, 15-civ-1377, 2015 WL 6442252, at *2 (S.D.N.Y. Oct. 23, 2015) (Schofield, J.) (citing Doctor's Associates, Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996)).

       GOJO does not dispute that section 13.13(b) establishes personal jurisdiction and venue with respect to the claim for breach of the License Agreement.  It argues, however, that the provision does not establish personal jurisdiction and venue with respect to the NDA and trade secret claims, which, it urges, "do not arise out of or relate to the License Agreement." (ECF 45 at 27.)  In addition, GOJO asserts that the First Amended Complaint does "not allege any facts that would show GOJO otherwise has sufficient contacts with New York to establish general or specific jurisdiction."  (Id. at 28.)

       The Court concludes that section 13.13(b) of the License Agreement establishes personal jurisdiction and venue with respect to UrthTech's trade secret and NDA claims because those claims are sufficiently related to the License Agreement and the licenses granted thereunder.  UrthTech's NDA and trade secret claims involve the same set of underlying facts as its claim for breach of the License Agreement.  UrthTech alleges that pursuant to the NDA Dr. Awad disclosed confidential information, including UrthTech's trade secrets, to GOJO to assist in GOJO's development of commercial antimicrobial products. (ECF 38 ¶¶ 16-17.)  It is that confidential information that UrthTech alleges formed the basis of the Acid Wipe and Spray Patent Applications that GOJO allegedly filed in breach of the License Agreement.  (Id. ¶¶ 30, 36.)  GOJO's motion to dismiss the trade secret and NDA claims for lack of personal jurisdiction and improper venue is therefore denied.

II.   <u>UrthTech's Breach of Contract Claims.</u>

    A.   <u>Legal Standard on a Rule 12(b)(6) Motion.</u>

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A sufficient complaint must include non-conclusory factual allegations that move its claims "across the line from conceivable to plausible." <u>Id.</u> at 680.

In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. <u>Id.</u> at 678. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" <u>Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE</u>, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting <u>Conopco, Inc. v. Roll International</u>, 231 F.3d 82, 86 (2d Cir. 2000)).

"A motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint. The test of a claim's 'substantive merits' is 'reserved for the summary judgment procedure, governed by [Rule] 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule.'" <u>Goel v. Bunge, Ltd.</u>, 820

F.3d 554, 558-59 (2d Cir. 2016) (quoting Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)) (citation omitted).

A court reviewing a motion to dismiss "take[s] no account of [the complaint's] basis in evidence" and "may review only a narrow universe of materials." Id. at 559. Such materials include documents incorporated in the complaint, matters of which judicial notice may be taken, and documents that are "integral" to the complaint, even if they are not expressly incorporated. Id. The Court may therefore consider the documents expressly incorporated in UrthTech's First Amended Complaint, including the License Agreement and NDA.

B. UrthTech Has Failed to State Claims for Breach of the License Agreement and Breach of the NDA.

To assert a claim of breach of contract under New York law a "complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996)).[1]

GOJO does not dispute that UrthTech has alleged the existence of the License Agreement and the NDA, or that UrthTech has complied with all material terms of both agreements. (See ECF 38 ¶¶ 13, 22, 42-43, 49-50.) Rather, it contends that UrthTech's claim for breach of the License Agreement fails to allege (1) damages with respect to the Spray Patent

---

[1] The parties' briefs assume that New York law governs UrthTech's breach of contract claims, and such "implied consent . . . is sufficient to establish choice of law." See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) (quoting Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000)).

Application claims, and (2) nonperformance with respect to the Acid Wipe Patent Application.

It further argues that the NDA allegations vague and conclusory.

> 1. UrthTech Plausibly Alleges Facts that Amount
>    to a Breach of the License Agreement by GOJO.

UrthTech's first cause of action alleges that GOJO breached the provisions of the

License Agreement pertaining to "Improvements" on the technology covered by the agreement.

The License Agreement defines an "Improvement" as:

> [A]ny modifications of, derivative works based on, and
> enhancements and improvements to any Licensed Know-How,
> Licensed Patents, Licensed Technology or Licensed Products
> created, conceived, developed or reduced to practice by or on behalf
> of either Party or both Parties or any of their Affiliates after the
> Effective Date and during the term of this Agreement, including all
> Intellectual Property Rights therein.

(ECF 38 ¶ 24; ECF 38-1 at 3-4.)  "Licensed Technology" is defined as "antimicrobial and

otherwise decontaminating compounds owned by [UrthTech] as of the Effective Date and during

the Term, including the compositions and methods of making and using such compounds, and all

Intellectual Property Rights in any of the foregoing."  (ECF 38 ¶ 25; ECF 38-1 at 5.)

An Improvement could be created solely by UrthTech (an "UrthTech

Improvement"), solely by GOJO (a "GOJO Improvement"), or jointly by both UrthTech and

GOJO (a "Joint Improvement").  (ECF 38 ¶ 24; ECF 38-1 § 3.1-3.3.)  Upon the creation or

development of any GOJO Improvement, GOJO was required to "provide written notice to

[UrthTech] within thirty days."  (ECF 38 ¶ 25; ECF 38-1 § 3.2.)

Joint Improvements are those created or otherwise developed by UrthTech and

GOJO "through their joint efforts (such that at least one employee from each of [UrthTech and

GOJO] is considered an 'inventor' as defined by US Patent Law)."  (ECF 38 ¶ 26; ECF 38-1

§ 3.3.)  UrthTech and GOJO "jointly own all right, title and interest in and to such Joint

Improvements." (ECF 38-1 § 3.3.) Furthermore, "[t]he parties agree[d] that all patent filings relating to Joint Improvements shall be made jointly, but that if either party refuses or fails within a reasonable period of time to execute all necessary documents to perfect such filing that the other party may file to seek rights in the Joint Improvements . . . ." (ECF 38 ¶ 26; ECF 38-1 § 3.3.) The License Agreement also required that "[a]ny filing of patent applications covering Joint Improvements or Joint Patent Rights by one party hereunder shall be fully disclosed to the other party no later than thirty (30) days prior to filing." (ECF 38 ¶ 26; ECF 38-1 § 3.3.)

UrthTech alleges that GOJO's patent applications are based on Improvements, though the First Amended Complaint is not clear as to whether the Improvements are alleged to be GOJO Improvements or Joint Improvements. (See ECF 38 ¶¶ 30, 36, 38-39.) UrthTech seeks an injunction ordering GOJO to add Dr. Awad as an inventor on both applications, and the Court thus reads the First Amended Complaint as alleging that both applications are based on Joint Improvements. The Court reads the pleading as also alleging that the applications are based on GOJO Improvements.

Consistent with the claim that the applications are based on Joint Improvements, the First Amended Complaint alleges that the Spray Patent Application is based on confidential UrthTech information provided to GOJO by Dr. Awad and "included improvements to information disclosed and claimed in the UrthTech Patents" (i.e., Licensed Patents under the Licensed Agreement), (see id. ¶ 36), that Dr. Awad contributed to the conception of the inventions recited in the claims, (id.), and that the Improvements underlying the application "were jointly created by Dr. Awad and Gojo," (id. ¶ 38.) With respect to the Acid Wipe Patent Application, UrthTech alleges that the application was based on confidential information, including information about the development and testing of basic and acidic antimicrobial

formulations, that Dr. Awad provided to GOJO on behalf of UrthTech.  (See id. ¶¶ 16-18, 30).  Such information could plausibly be encompassed by the broad definition of "Licensed Technology" under the License Agreement, which includes antimicrobial compounds owned by UrthTech and is not limited to basic formulations.

UrthTech has therefore plausibly alleged that both patent applications are based on Joint Improvements.  UrthTech has also plausibly alleged that GOJO breached the License Agreement provision governing Joint Improvements by filing the provisional applications without involving UrthTech (i.e., not filing jointly), failing to disclose the filing of the applications to UrthTech no later than 30 days prior to filing, and failing to list Dr. Awad as an inventor on the provisional applications.  (Id. ¶¶ 39, 44; ECF 38-1 § 3.3.).

UrthTech also alleges that GOJO failed to notify UrthTech within thirty days of the creation or development of the Improvements – as required by section 3.2 of the License Agreement for any GOJO Improvement.  (ECF 38 ¶¶ 39, 44.)   The License Agreement does not require notice of the creation or development of a Joint Improvement.  (See ECF 38-1 § 3.3.)  To the extent UrthTech alleges the patent applications are based on GOJO Improvements, it plausibly alleges that GOJO breached section 3.2 of the License Agreement.

### 2.  UrthTech Plausibly Alleges Facts that Amount to a Breach of the NDA by GOJO.

The NDA provided that UrthTech and GOJO would share "Confidential Information" with each other under the condition that "[t]he receiving party will, at all times, keep Confidential Information in strict confidence and under conditions of secrecy and will not, at any time, disclose to others or use for its own benefit any Confidential Information without prior written approval by the disclosing party."  (ECF 38 ¶¶ 13-15; ECF 38-6.)  The NDA defined Confidential Information as "all information about GOJO's and Urthtech's products,

12

processes, systems, operations and services disclosed to each other or known by it as a consequence of discussions or activities with each other," including commercial, scientific, or technical data and trade secrets.  (ECF 38-6.)

UrthTech alleges that the Spray and Acid Wipe Patent Applications are based on Confidential Information that Dr. Awad disclosed to GOJO on behalf of UrthTech and pursuant to the NDA.  (ECF 38 ¶¶ 16-18, 30, 31, 36.)  It alleges that GOJO breached the terms of the NDA by failing to keep UrthTech's Confidential Information "in strict confidence and under conditions of secrecy," disclosing UrthTech's Confidential Information to others or using such information for its own benefit without prior written approval, filing the patent applications and allowing publication of the '793 Application and '684 Application, and marketing Purell Foodservice Surface Sanitizing Wipes.  (Id. ¶¶ 31, 51.)  These allegations are sufficient to plausibly allege a breach of the NDA.

> 3.  UrthTech Has Not Plausibly Alleged Any Cognizable Damage as a Result of GOJO's Breach of the License Agreement.

UrthTech's sole allegation with respect to the fact of damage is that "UrthTech has incurred damages in an amount to be determined at trial, but, upon information and belief, which are no less than $75,000."  (ECF 38 ¶ 46.)  This conclusory allegation is insufficient to state a claim for breach of contract.

"A claim for breach of contract must rest on more than a conclusory allegation that the defendant's breach caused damages, even where the exact amount of damages is alleged."  Bravo v. MERSCORP, Inc., 12-Civ-884, 2013 WL 1652325, at *6 (E.D.N.Y. Apr. 16, 2013) (quoting Comfort Inn Oceanside v. Hertz Corp., 11-Civ-1534, 2011 WL 5238658 at *8 (E.D.N.Y.2011)); Miller v. HSBC Bank U.S.A., N.A., 13-Civ-7500, 2015 WL 585589, at *4 (S.D.N.Y. Feb. 11, 2015) (Sweet, J.) ("[The plaintiff's] unsupported claim that she 'suffered

damages,' without any further factual enhancement, is not enough to properly plead the damages element of a breach of contract claim."); Bakal v. U.S. Bank National Association, 747 F. App'x 32, 36 (2d Cir. 2019) (summary order) (affirming district court dismissal of breach of contract claim where plaintiff failed "to allege facts showing the complained-of activity . . . caused them damages" and "alleg[ed] in conclusory fashion that damages will be 'the subject of expert testimony for proof at trial'" (emphasis removed) (citing Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435, 436 (1st Dep't 1988))).  UrthTech has not alleged any facts to support its allegation that it has suffered damages as a result of GOJO's breach of the License Agreement – with regard to either the Spray Patent Application or the Acid Wipe Patent Application.  See, e.g., Jinno International Co. v. Premier Fabrics, Inc., 12-Civ-07820, 2013 WL 4780049, at *3 (S.D.N.Y. May 24, 2013) (Schofield, J.) (dismissing counterclaim for breach of contract that contained only conclusory statements that the party "suffered damages in a sum to be determined at trial" and did not assert "any facts about how it was damaged").

UrthTech's allegations of irreparable harm are similarly conclusory.  UrthTech alleges in connection with its claim for breach of the License Agreement that it "will be harmed if Gojo fails to amend its pending patent applications to add Dr. Awad as an inventor," and it seeks an injunction ordering GOJO to (1) add Dr. Awad as an inventor on any patent application claiming priority to the patent applications, and (2) grant UrthTech an ownership interest on any application claiming priority to provisional applications.  (ECF 38 ¶¶ 45-47, Prayer for Relief at A-D.)

The only support for this allegation is a provision of the License Agreement stating that the parties agreed that:

> [A] breach by the other party of this [License] Agreement may cause
> the non-breaching party irreparable harm, for which an award of

14

> damages would not be adequate compensation and agrees that, in
> the event of such a breach or threatened breach, the non-breaching
> party will be entitled to seek equitable relief . . . .

(Id. ¶ 27.)  But UrthTech has not alleged any facts supporting its claim that it is likely to be

harmed unless GOJO amends its applications or to show that monetary damages would not be

adequate compensation.

UrthTech argues that the First Amended Complaint adequately pleads damages

because it alleges that UrthTech would be irreparably harmed by GOJO obtaining patents that

improperly omit Dr. Awad as an inventor, thus depriving UrthTech of royalties to which it would

otherwise be entitled.  (ECF 46 at 11.)  Even if the allegation that UrthTech will be deprived of

royalties could be found in the First Amended Complaint, it is speculative.  Neither patent has

issued, and they may never issue.

Moreover, the remedy that UrthTech seeks – amending inventorship – arises, if at

all, under the patent laws and only upon issuance of a patent.  This Court does not have the

authority to order an amendment to a patent application or an issued patent as a remedy for a

common law breach of contract claim.  UrthTech contends that the relief it seeks is appropriate

because 35 U.S.C. § 116(c) permits GOJO to correct the inventorship on its pending

applications.  Section 116(c) provides that "[w]henever . . . through error an inventor is not

named in an application, the Director [of the United States Patent and Trademark Office] may

permit the application to be amended accordingly, under such terms as he prescribes."  35 U.S.C.

§ 116(c).  But as the Federal Circuit has expressly held, "§ 116 does not provide a private right

of action to challenge inventorship of a pending patent application."  HIF Bio, Inc. v. Yung Shin

Pharmaceuticals Industries Co., Ltd., 600 F.3d 1347, 1354 (Fed. Cir. 2010), as amended on reh'g

in part (June 14, 2010).  Rather, the authority to determine a "true" inventor and modify the

inventorship on a pending patent application rests exclusively with the Director of the United States Patent and Trademark Office.  Id. at 1353.  Granting UrthTech's requested relief would require this Court to determine that Dr. Awad is a "true" inventor with respect to GOJO's pending applications and would result in an Order directing the modification of inventorship on those pending applications.  This is precisely what HIF Bio forbids.

By contrast, once a patent issues, "35 U.S.C. § 256 provides a private right of action to challenge inventorship, and such a challenge arises under [35 U.S.C.] § 1338(a)."  Id. at 1354; 35 U.S.C. § 256 ("Whenever . . . through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, . . . issue a certificate correcting such error."); 35 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . .").  Such a challenge arises under the patent laws of the United States and is not a permissible remedy on a common law breach of contract claim.

The Court thus concludes that UrthTech has failed to plausibly allege that it has suffered damage, or will suffer irreparable harm, as a result of GOJO's breach of the License Agreement and that the Court does not have the authority to grant the injunctive relief sought.  Accordingly, Count I is dismissed.

4.   UrthTech Has Not Plausibly Alleged Any Cognizable Damage as a
     Result of GOJO's Breach of the NDA.

As to its claim for breach of the NDA, UrthTech repeats its conclusory allegation that "UrthTech has incurred damages in an amount to be determined at trial, but, upon information and belief, which are no less than $75,000."  (ECF 38 ¶ 52.)  Again, UrthTech does not provide any factual support for its allegation that it has suffered damages as result of GOJO's breach.  Count II is therefore dismissed.

III.    UrthTech's DTSA Claim Is Not Time Barred.

Count III asserts a claim for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq.  DTSA claims are subject to a three-year statute of limitations and accrue from "the date on which the misappropriation . . . is discovered or by the exercise of reasonable diligence should have been discovered."  18 U.S.C. § 1836(d); Zirvi v. Flatley, 838 F. App'x 582, 585 (2d Cir. 2020) (summary order).  The lapse of a limitations period is an affirmative defense that a defendant ordinarily must plead and prove; however, "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."  Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 319 (2d Cir. 2021) (quoting Staehr v. Hartford Financial Services Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008)).

UrthTech first asserted its DTSA claim in November 2022, when it filed its First Amended Complaint.[2]  Therefore, the claim is timely so long as UrthTech discovered, or by the exercise of reasonable diligence should have discovered, GOJO's alleged misappropriation no earlier than November 2019.

GOJO argues that UrthTech's DTSA claim is time barred because UrthTech was on constructive notice of the alleged misappropriation in March 2019, when the Acid Wipe Patent Application published.  (ECF 45 at 17.)  UrthTech, however, urges that it did not discover the alleged misappropriation until March 2020 when it received a letter from GOJO providing notice of the '484 Provisional Application related to the spray product.  (ECF 46 at 12; ECF 38 ¶ 38.)

---

[2] UrthTech's August 8, 2022 complaint did not assert trade secret claims.

GOJO relies on <u>Zirvi v. Flatley</u> for its assertion that the publication of the Acid Wipe Patent Application constituted constructive notice of the alleged misappropriation and started the clock on UrthTech's claim.  In <u>Zirvi</u>, the district court dismissed the plaintiffs' DTSA claim because "the date on which the alleged misappropriation 'by the exercise of reasonable diligence should have been discovered' ha[d] long since passed." <u>Zirvi v. Flatley</u>, 433 F. Supp. 3d 448, 459 (S.D.N.Y. 2020) (Koeltl, J.), <u>aff'd</u>, 838 F. App'x 582, 586 (2d Cir. 2020) (summary order).  The district court explained that, among other events that triggered the statute of limitations, "[t]he existence of a patent application or a public patent puts parties on notice of their existence and therefore starts the clock on the limitations period." <u>Id.</u>

The Second Circuit affirmed the dismissal of the DTSA claim as time barred, but it did not adopt the conclusion that a patent application constitutes constructive notice of trade secret misappropriation.  It held only that "the statutes of limitations began to run no later than" the dates of two public proceedings that involved substantially the same claims as the ones at issue, at which point the plaintiffs were on "at least inquiry notice." <u>Zirvi</u>, 838 F. App'x at 585-86.  The Circuit's decision thus neither established nor foreclosed the possibility that a DTSA claim accrues upon the publication of a patent application.

In the absence of binding authority indicating that a patent application starts the clock on a DTSA claim, the Court declines to conclude that it is apparent from the face of the First Amended Complaint that UrthTech should have discovered GOJO's alleged misappropriation prior to the notice letter it received in March 2020.  <u>See, e.g.</u>, <u>Amimon Inc. v. Shenzhen Hollyland Tech Co.</u>, 20-Civ-9170, 2021 WL 5605258, at *13 (S.D.N.Y. Nov. 30, 2021) (Ramos, J.) ("[Plaintiff] has not alleged any facts to suggest that the claim is time-barred. Rather, [the defendant] has raised a new factual question of whether the existence of its patent is

sufficient to begin the tolling of the statute of limitations.  This is not the appropriate stage in the proceeding to determine whether [the defendant's] patent starts the clock for the statute of limitations."); Javo Beverage Co. v. California Extraction Ventures, Inc., 19-Civ-1859, 2019 WL 6467802, at *3 (S.D. Cal. Dec. 2, 2019) ("[T]he Court cannot conclude, as a matter of law, that [plaintiff's] claims accrued at the latest on September 22, 2016 due to the publication of the patent application itself.").

        GOJO's motion to dismiss UrthTech's DTSA claim as time barred is denied.


IV.      UrthTech Has Failed to State a Claim for Trade Secret
          Misappropriation Under the DTSA or OUTSA.

        To state a claim for trade secret misappropriation under the DTSA and OUTSA, a plaintiff must allege that it possessed a trade secret that the defendant misappropriated.  18 U.S.C. § 1836(b)(1); see e.g., Corporate Lodging Consultants, Inc. v. Szafarski, 21-Civ-1611, 2021 WL 3709914, at *5 (N.D. Ohio Aug. 20, 2021) ("The definition of a trade secret and requirements for establishing misappropriation of trade secrets are substantially the same under the DTSA and OUTSA.").  A trade secret is defined as "all forms and types of finance, scientific, technical or engineering information" that (1) "the owner thereof has taken reasonable measures to keep such information secret," and (2) has economic value because it is not "generally known."  18 U.S.C. § 1839(3); Corporate Lodging Consultants, 2021 WL 3709914, at *5-6, *6 n.5.

        "Though the question of whether proprietary information qualifies as a trade secret is ordinarily a question of fact not resolvable on a motion to dismiss, courts dismiss claims involving trade secrets where they are not actually secret or there is no discernible economic value from them not being generally known."  Amimon, 2021 WL 5605258, at *10.

GOJO argues that UrthTech has failed to state a claim for trade secret misappropriation because UrthTech (1) has not described its alleged trade secrets with sufficient specificity to place GOJO on notice of that which it allegedly misappropriated, (2) has not plausibly alleged that it took reasonable measures to safeguard the secrecy of the information, (3) has not plausibly alleged that the information derives value from its secrecy, and (4) has not plausibly alleged misappropriation on the part of GOJO.  The Court concludes that UrthTech has sufficiently described its alleged trade secrets, plausibly alleged that the information derives independent economic value from not being generally known, and plausibly alleged misappropriation by GOJO.  However, UrthTech has not plausibly alleged that it took reasonable measures to keep the information secret, and therefore has failed to state a claim for trade secret appropriation.

    A.  UrthTech Has Not Plausibly Alleged
          <u>Ownership of a Trade Secret.</u>

       1.  <u>UrthTech's Allegations Are Sufficiently Specific.</u>

"Although the Second Circuit has not expressly articulated a specificity requirement, district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." <u>Medidata Solutions, Inc. v. Veeva Systems Inc.</u>, 17-Civ-589, 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018) (Schofield, J.) (citing <u>Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.</u>, 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014), <u>aff'd sub nom. Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.</u>, 610 F. App'x 69 (2d Cir. 2015) (summary order)).

A "complaint may describe trade secrets in broad terms or list categories of information,"[3] but courts in this District have held that general or "nebulous" allegations are insufficient.[4]  See DFO Global Performance Commerce Ltd. (Nevada) v. Nirmel, 20-Civ-6093, 2021 WL 3475596, at *4 (S.D.N.Y. Aug. 6, 2021) (Oetken, J.); see also Lavvan, Inc. v. Amyris, Inc., 20-Civ-7386, 2021 WL 3173054, at *4 (S.D.N.Y. July 26, 2021) (Oetken, J.) (noting that "[c]ourts have divided with regard to the level of specificity required in pleading the existence of a trade secret" and collecting cases), aff'd and remanded, 21-1819, 2022 WL 4241192 (2d Cir. Sept. 15, 2022) (summary order).

UrthTech's allegations, though broad, are sufficiently specific to put GOJO on notice of the information it allegedly appropriated.  The First Amended Complaint alleges that UrthTech provided to GOJO confidential "information concerning basic and acidic antimicrobial agent formulations, including the FA formulation."  (ECF 38 ¶¶ 54, 64.)  GOJO allegedly misappropriated this information by using the formulations and filing the Acid Wipe Patent Application without UrthTech's knowledge or consent.  (Id. ¶¶ 60, 69.)

---

[3] See, e.g., Zabit v. Brandometry, LLC, 540 F. Supp. 3d 412,422 (S.D.N.Y. 2021) (Cronan, J.) (plaintiff's descriptions of trade secrets were "rather broad and verge[d] on overly-vague," but "the Court nonetheless conclude[d] that Plaintiffs provide[d] sufficient notice of the purported secret at issue"); Medtech Products Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) (Karas, J.) (denying motion to dismiss trade secret claim where plaintiff "categorize[d] [its trade secrets] generally as 'manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for its dental protectors'"); Tesla Wall Systems, LLC v. Related Cos., L.P., 17-Civ-5966, 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017) (Rakoff, J.) (denying motion to dismiss DTSA claim over defendant's argument that plaintiff's claim offered only vague and conclusory descriptions of alleged trade secrets, because the complaint "is highly specific" and "plead[ed] numerous specific categories of information, such as 'technical data, internal pricing information, work product, research, [and] engineering designs'").

[4] Lawrence v. NYC Medical Practice, P.C., 18-Civ-8649, 2019 WL 4194576, at *5 (S.D.N.Y. Sep. 3, 2019) (Woods, J.) (dismissing trade secret counterclaim where defendants "describe[d] the alleged trade secrets at the highest level of abstraction," for example "methods for advertising and communicating with prospective patients"); Island Intellectual Property, LLC v. StoneCastle Asset Management, LLC, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020) (dismissing trade secret claim where plaintiff's "nebulous" pleading identified "only at the highest level of generality the subject matter of the secrets and do not even describe the type of information allegedly misappropriated").

In addition to specifically identifying the FA formulation as an alleged trade secret, the First Amended Complaint clarifies that the information pertains to Dr. Awad's "development" and "testing" of basic and acidic antimicrobial formulations.  (Id. ¶ 16.)  These allegations go beyond listing general or abstract categories and are sufficient to put GOJO on notice of the alleged trade secrets.  UrthTech is not obligated to plead the precise information it claims to be confidential.  See SD Protection, Inc. v. Del Rio, 498 F. Supp. 2d 576, 586 (E.D.N.Y. 2007).

Further, contrary to GOJO's assertion that the alleged trade secrets would encompass information publicly disclosed in UrthTech's own patents, (see ECF 45 at 20), the First Amended Complaint specifically alleges that the confidential information Dr. Awad shared with GOJO "was not disclosed in any of the publicly available patents and patent applications filed by UrthTech," (ECF 38 ¶ 17).[5]

2.   UrthTech Plausibly Alleges the Information
Derives Value from Not Being Generally Known.

With respect to the value of the purported trade secrets, UrthTech alleges that "[t]he information UrthTech provided to Gojo concerning basic and acidic antimicrobial agent formulations, including the FA formulation has independent economic value from not being generally known nor readily ascertainable through proper means."  (Id. ¶¶ 56, 66.)  UrthTech also alludes to "Dr. Awad's extensive research and development efforts," (id. ¶ 8), and alleges

---

[5] The First Amended Complaint suggests that the alleged trade secrets also include the information in the 2004 Memo.  (ECF 38 ¶ 18; see also id. ¶ 30.)  UrthTech publicly filed the 2004 Memo as Exhibit B to its First Amended Complaint.  (ECF 38-2.)  It is not clear that any information from the 2004 Memo was disclosed by GOJO.  Absent an allegation that GOJO had already disclosed the contents of the 2004 Memo by the time UrthTech filed the First Amended Complaint, the information contained in the 2004 Memo cannot constitute UrthTech's trade secrets.  See Zabit, 540 F. Supp. 3d at 425 ("Courts regularly deny trade secret protection if the owner voluntarily discloses the alleged secret."); Murray Energy Holdings Co. v. Mergermarket USA, Inc., 15-Civ-2844, 2016 WL 3365422, at *5 (S.D. Ohio June 17, 2016) ("[D]isclosure . . . absent a confidential agreement or understanding, will destroy any protection of that information as a trade secret." (quoting Thermodyn, 593 F. Supp. 2d at 986)).

that the information "was commercially valuable and could not have been independently developed by Gojo, without investing significant time and resources to develop such information," (id. ¶ 20).

These allegations border on conclusory,[6] but they are sufficient, at this stage, to plausibly allege that the information derives independent economic value from its secrecy.  See Iacovacci v. Brevet Holdings, LLC, 437 F. Supp. 3d 367, 381 (S.D.N.Y. 2020) (Pauley III, J.) (party seeking trade secret protection alleged that they "expended considerable resources, both financial and in personnel time, developing this non-public information," which is an "extremely valuable asset[] of the company").

### 3. UrthTech Has Not Alleged It Took Reasonable Measures to Protect the Secrecy of the Information.

UrthTech fails to plausibly allege that it took reasonable measures to protect the secrecy of its alleged trade secrets.  "Reasonable measures" may include "password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality."  See Investment Science, 2021 WL 3541152, at *3. "[C]ourts in this Circuit generally look to whether confidentiality or nondisclosure agreements are in place and whether the information is guarded by physical- or cyber-security protections." Core SWX, LLC v. Vitec Grp. US Holdings, Inc., 21-Civ-1697, 2022 WL 3588081, at *7 (E.D.N.Y. July 14, 2022), report and recommendation adopted, 21-Civ-1697, 2022 WL 3586570

---

[6] See e.g., Rodney v. United Masters, 21-Civ-5872, 2023 WL 2184865, at *6 (E.D.N.Y. Feb. 10, 2023) ("Plaintiff fails to allege how his processes, plans, or conclusions provided a valuable edge over competitors, or why such value was due to the secrecy of the underlying information."); Investment Science, LLC v. Oath Holdings Inc., 20-Civ-8159, 2021 WL 3541152, at *4 (S.D.N.Y. Aug. 11, 2021) (Daniels, J.) ("Investment Science offers only a bare recital that it 'derives independent economic value from [the information contained in the Trading Plan] not being generally known to, or readily ascertainable] by . . . Investment Science's competitors.'  This allegation is nothing more than a formulaic recitation of an element of a DTSA claim.  Indeed, Investment Science does not allege why the Trading Plan gives it 'an economic leg up "over competitors who do not know or use it.""" (citations omitted).)

(E.D.N.Y. Aug. 22, 2022) (quoting Turret Labs USA, Inc. v. CargoSprint, LLC, 19-Civ-6793,

2021 WL 535217, at *4 (E.D.N.Y. Feb. 12, 2021)).

      The First Amended Complaint alleges that UrthTech took reasonable measures to

protect the secrecy of the information "by not disclosing this information outside of UrthTech,

and sharing this information with Gojo only subject to the confidentiality obligations of the

parties' NDA."  (ECF 38 ¶¶ 19, 57, 67.)  But "[t]aking steps to protect information through a

confidentiality agreement does not, on its own, suggest the existence of a bona fide trade

secrets."[7]  Elsevier Inc. v. Doctor Evidence, LLC, 17-Civ-5540, 2018 WL 557906, at *6

(S.D.N.Y. Jan. 23, 2018) (Forrest, J.); Lawrence, 2019 WL 4194576, at *5 (quoting Elsevier,

2018 WL 557906, at *6); Universal Processing LLC v. Weile Zhuang, 17-Civ-10210, 2018 WL

4684115, at *3 (S.D.N.Y. Sept. 28, 2018) (Swain, J.) (same); Murray Energy Holdings, 2016

WL 3365422, at *4.  A plaintiff seeking trade secret protection must meet "a standard far greater

than the standard for confidentiality of business information" – "confidential information is not

the same as a trade secret."  Elsevier, 2018 WL 557906, at *5-6.

---

[7] The Court declines to follow Best Process Solutions, Inc. v. Blue Phoenix Inashco USA, Inc., relied upon by
UrthTech.  In Best Process, the court concluded that the existence of a confidentiality agreement and exclusive
licensing provisions in a purchase agreement were sufficient to plausibly allege that the plaintiff "undertook efforts"
to protect the confidential nature of the information.  569 F. Supp. 3d 702, 714 (N.D. Ohio 2021).  The court so
concluded despite citing Wellington Resource Group LLC v. Beck Energy Corp., which expressly stated that the
relevant non-disclosure agreement in that case did "not itself establish that [the] information was a trade secret" and
only demonstrated that the company "undertook some efforts" to protect the confidential nature of the information.
2:12-CV-104, 2013 WL 5325911, at *6 (S.D. Ohio Sept. 20, 2013).  Nonetheless, the Wellington court allowed the
trade secret claim to survive a motion to dismiss without pointing to any additional security measures.  Id.  This
Court finds more persuasive those Ohio district court cases that, like courts in this District, have found
confidentiality agreements, standing alone, insufficient to warrant trade secret protection.  See, e.g., Murray Energy
Holdings, 2016 WL 3365422, at *4 ("The 'mere existence of a confidentiality agreement' does not, standing alone,
'support a trade secret claim for documents referred to in such an agreement.'" (quoting State ex rel. The Plain
Dealer v. Ohio Department of Insurance, 687 N.E.2d 661, 673 (Ohio 1997), superseded by statute on other grounds
as stated in State ex rel. Besser v. Ohio State University, 732 N.E.2d 373, 378 (Ohio 2000))); Advance Wire
Forming, Inc. v. Stein, 18-Civ-723, 2020 WL 5026523, at *20 (N.D. Ohio Aug. 25, 2020) (granting summary
judgment against plaintiffs where the plaintiffs required the defendant to agree to confidentiality provisions but there
was no evidence that any company employee was ever asked to keep the information confidential and plaintiffs did
not assert that they restricted access to the information or that they used a password-protected computer, locked file
cabinet, or any other restriction on physical or electronic access).

UrthTech has not alleged any security measures that it took beyond entering into the NDA with GOJO.  Though UrthTech claims it did not share the information outside of the company, it does not allege any protective measures taken within the company.  For example, there is no allegation that UrthTech restricted access to the information to certain employees on a need-to-know basis or that it took steps to ensure its employees maintained the secrecy of the information, such as by requiring employees to sign a written policy or confidentiality agreement.  See, e.g., Catalyst Advisors, L.P. v. Catalyst Advisors Investors Global Inc., 602 F. Supp. 3d 663, 675-76 (S.D.N.Y. 2022) (Failla, J.) (plaintiff restricted information to individuals who, in addition to signing an agreement containing a confidentiality provision, had an authorized username and password and "reason to access such information"); Ad Lightning Inc. v. Clean.io, Inc., 19-Civ-7367, 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020) (Oetken, J.) (plaintiff limited access to information "to parties with permission to view such information, and only after they have agreed to contracts that include strict confidentiality provisions"); Espire Ads LLC v. TAPP Influencers Corp., 21-Civ-10623, 2023 WL 1968025, at *10 (S.D.N.Y. Feb. 13, 2023) (Koeltl, J.) (plaintiff stored information in "a secure cloud-based server, utilize[ed] . . . computer and software passwords, and work[ed] in an office that has visitor control systems, locked door access, and overnight security personnel"); loanDepot.com, LLC v. CrossCountry Mortgage, LLC, 22-Civ-5971, 2023 WL 3884032, at *5-6 (S.D.N.Y. June 8, 2023) (Schofield, J.) (plaintiff used "password-protection and restrictive-access and encryption protocols to prevent access to customer contact information by those without a business need" and required all employees to sign confidentiality agreements and review and electronically acknowledge the employee handbook and information security policy); Advance Wire Forming, 2020 WL 5026523, at *20 (plaintiffs failed to plausibly allege reasonable measures because it did "not

allege or provide any evidence that . . . they also asked other [company] employees to sign confidentiality agreements or otherwise instituted measures (such as password protections) to restrict access to [the company's] customers lists and/or pricing information.").

Even if the allegations that UrthTech does not share the information outside the company and required GOJO to sign the NDA could establish reasonable security measures, the First Amended Complaint alleges that UrthTech has shared its FA formulation with outside researchers but does not indicate that such disclosures were themselves subject to confidentiality agreements.  (ECF 38 ¶ 7.)[8]  "Courts regularly deny trade secret protection if the owner voluntarily discloses the alleged secret."  Zabit, 540 F. Supp. 3d at 425 (collecting cases); see also Murray Energy Holdings, 2016 WL 3365422, at *5 ("[D]isclosure . . . absent a confidential agreement or understanding, will destroy any protection of that information as a trade secret." (quoting Thermodyn, 593 F. Supp. 2d at 986)).

Because UrthTech has not plausibly alleged that it took reasonable measures to protect the secrecy of the information at issue, it has failed to allege ownership of a trade secret. Its claims for trade secret misappropriation under the DTSA and OUTSA must therefore be dismissed.

### B.  UrthTech Plausibly Alleged Misappropriation.

Under the DTSA and OUTSA, misappropriation means the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied

---

[8] Paragraph 7 of the First Amended Complaint states: "In April 2004, UrthTech engaged Michigan State University researcher James Pestka to perform mold disinfection efficacy trials on formulations FA and FB. . . .  In early 2006, UrthTech engaged Michigan State University researcher Martha Mulks to perform additional experiments to assess the efficacy of a number of acidic and basic formulations developed by Dr. Aziz, including but not limited to the FA and FB formulations."  (ECF 38 ¶ 7.)

consent" under certain circumstances including by a person who "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret."  18 U.S.C. § 1839(5); Ohio Rev. Code § 1333.61(B).

To succeed on a claim for misappropriation under the OUTSA, "a plaintiff must show '(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; [and] (3) the unauthorized use of a trade secret.'" Oneida Group Inc. v. Steelite International U.S.A. Inc., 17-Civ-0957, 2017 WL 6459464, at *5-8 (E.D.N.Y. Dec. 15, 2017) (alteration in original) (quoting Heartland Home Finance, Inc. v. Allied Home Mortgage Capital Corp., 258 F. App'x 860, 861 (6th Cir. 2008)) (analyzing trade secret claims under federal, New York State, and Ohio State law together); Corporate Lodging Consultants, 2021 WL 3709914, at *5.

UrthTech alleges that it shared its alleged trade secrets with GOJO pursuant to the protections of the NDA and that GOJO "knew it had a duty to maintain the secrecy of the information . . . due to the NDA."  (ECF 38 ¶¶ 16, 59, 68; ECF 38-6 ("The receiving party will, at all times, keep Confidential Information in strict confidence and under conditions of secrecy and will not, at any time, disclose to others or use for its own benefit any Confidential Information without prior written approval by the disclosing party.")); Shepard & Associates, Inc. v. Lokring Technology, LLC, 20-Civ-02488, 2022 WL 312711, at *23 (N.D. Ohio Feb. 2, 2022) ("[W]here an express agreement bars disclosure of trade secrets, the defendant acquires trade secrets through a confidential relationship." (citing MEMC Electronic Materials v. Balakrishnan, 2:12-CV-344, 2012 WL 3962905 at *7 (S.D. Ohio Sept. 11, 2012))). It further alleges that GOJO misappropriated the alleged trade secrets through its unauthorized use of the

formulations and its filing of the Acid Wipe Patent Application without UrthTech's knowledge or consent.  (ECF 38 ¶¶ 60-61, 69-70.)  These allegations plausibly allege misappropriation by GOJO.  However, because UrthTech has failed to plausibly allege the existence of a trade secret, Counts III and IV must be dismissed.


V.     Leave to Move to Amend

        GOJO filed a renewed pre-motion letter directed to the First Amended Complaint, arguing that (1) UrthTech's request for injunctive relief ordering GOJO to add Dr. Awad as an inventor is improper, (2) UrthTech fails to allege that GOJO's acid wipe formulation is an Improvement or how the alleged breach of the License Agreement caused UrthTech any harm, (3) the breach of the NDA allegations are vague and conclusory and fail to give GOJO fair notice of what information it allegedly used or disclosed, (4) the trade secret claims fail to adequately identify the alleged trade secrets, adequately plead how the FA formulation derives independent economic value from not being generally known, and adequately plead misappropriation by GOJO, and (5) UrthTech's trade secret claims are time barred.  (ECF 39.)

        The pre-motion letter did not assert that the NDA allegations failed to plausibly allege damages or that the trade secret claims failed plausibly allege reasonable measures to protect the secrecy of the information.  Accordingly, UrthTech is granted leave to file a motion to amend its First Amended Complaint with respect to (1) damages suffered as a result of GOJO's alleged breach of the NDA, and (2) reasonable measures UrthTech took to protect the secrecy of its alleged trade secrets.  Such motion to amend shall be filed within 21 days and shall annex a proposed amended complaint, as well as a marked-to-show-changes copy.

CONCLUSION

        The Court concludes that UrthTech has failed to state claims for breach of the License Agreement and breach of the NDA because the First Amended Complaint does not plausibly allege damages.  UrthTech has also failed to state a claim for trade secret misappropriation under the DTSA or OUTSA because it has not plausibly alleged ownership of a trade secret.  GOJO's motion to dismiss is therefore GRANTED.

        UrthTech is granted leave to file a motion to amend its First Amended Complaint within 21 days.

        The Clerk is respectfully directed to terminate the motion.  (ECF 44.)

        SO ORDERED.

P. Kevin Castel<br>
United States District Judge

Dated: New York, New York<br>
      July 20, 2023