UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                              :
                                        Docket #22cv6727
 URTHTECH LLC, et al.,              :

                  Plaintiffs,       :

  - against -                       :

 GOJO INDUSTRIES, INC.,             : New York, New York
                                      August 14, 2024
                  Defendants.       :

------------------------------------ :
```

PROCEEDINGS BEFORE
THE HONORABLE KATHARINE H. PARKER,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

```
For Plaintiffs:          MARSHALL, GERSTEIN & BORUN LLP
                         BY:  DANIEL GONZALEZ, JR., ESQ.
                              MICHAEL WEINER, ESQ.
                              WHITNEY JENKINS, ESQ.
                         233 S. Wacker Drive, Suite 6300
                         Chicago, Illinois 60606

                         DAVIS & GILBERT LLP
                         BY:  MARC RACHMAN, ESQ.
                         1675 Broadway
                         New York, New York 10019

For Defendant:           KRITZER MCPHEE LLP
                         BY:  NOAM KRITZER, ESQ.
                         256 Columbia Turnpike, #204
                         Florham Park, New Jersey 07932




Transcription Service:   Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Email:  Transcription420@aol.com
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

<u>APPEARANCES CONTINUED</u>:

For Defendant:                    CALFEE, HALTER & GRISWOLD LLP
                                  BY:  ANDREW ALEXANDER, ESQ.
                                       JOHN CIPOLLA, ESQ.
                                  1405 East Sixth Street
                                  Cleveland, Ohio 44114

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

```
 1                      PROCEEDINGS                4
 2           THE CLERK:  -- 8727, UrthTech v. Gojo
 3  Industries, The Honorable Katharine H. Parker presiding.
 4  Beginning with counsel for the plaintiffs, please make
 5  your appearance for the record.
 6           MR. DANIEL GONZALEZ:  Good afternoon, this is
 7  Daniel Gonzalez with UrthTech.
 8           MR. MICHAEL WEINER:  Hello, Your Honor, this is
 9  Michael Weiner, also representing UrthTech.
10           MS. WHITNEY JENKINS:  Hi, Your Honor, this is
11  Whitney Jenkins, also representing UrthTech.
12           MR. MARK RACHMAN:  And, Your Honor, it's Mark
13  Rachman at Davis & Gilbert, also representing UrthTech.
14           THE CLERK:  And counsel for the defendant please
15  make your appearance for the record.
16           MR. NOAM KRITZER:  Good afternoon, Your Honor,
17  Noam Kritzer, the Office of Kritzer McPhee, on behalf of
18  defendant Gojo Industries.  With me are Andy Alexander
19  and John Cipolla, co-counsel from Calfee, Halter &
20  Griswold LLP.  Thank you, Your Honor.
21           THE COURT:  Did we get everybody?
22           THE CLERK:  I believe that's everyone, Judge.
23           THE COURT:  Okay, great.  Welcome, everyone.
24  Before we get started, just a few preliminaries.  Because
25  this is a phone conference, I ask that you keep your
```

```
 1                          PROCEEDINGS              5
 2   phones on mute unless you are speaking to eliminate
 3   background noise.  And I also I ask that you state your
 4   name before speaking for clarity of the record.  The
 5   Court's making a recording of this conference so that you
 6   can order a transcript if you would like.  Also, I want
 7   to remind everybody on the call that the Court's
 8   conference line is open to the press and public on a
 9   listen-only basis and that Court rules prohibit others
10   from recording and rebroadcasting court proceedings.
11   Violations of this rule may result in sanctions.
12          So I scheduled this conference because the
13   parties have some discovery letter motions that they
14   filed, and I wanted to talk about those.  Can we first
15   talk about the defendant's motion to compel the plaintiff
16   UrthTech to respond to interrogatories.  It seems from
17   another letter filed by UrthTech that maybe much of that
18   motion has been resolved.  Let me first hear from
19   defendant, and then I'll hear from UrthTech.
20          MR. ALEXANDER:  Andy Alexander on behalf of
21   Gojo.  When we filed the initial letter motion, we had
22   served interrogatories in March and had not gotten any
23   substantive response from UrthTech yet.  In response
24   (indiscernible) they said they were going to supplement
25   their interrogatories by a date certain, and since they
```

```
 1                      PROCEEDINGS                  6
 2  have.  There is still deficiencies from Gojo's
 3  perspective to these responses, and we're trying to work
 4  those out without having to come to the Court at this
 5  point.  We have a meet and confer scheduled tomorrow.
 6  But the interrogatory responses, from Gojo's perspective,
 7  they still don't explain, for example, which trade
 8  secrets are allegedly disclosed in the portions of the
 9  Gojo patent publications that UrthTech has identified.
10  They still haven't confirmed which trade secrets are
11  disclosed in the documents they claim contain the trade
12  secrets.  And they still haven't described adequately the
13  specific ingredients and amounts contained in the alleged
14  trade secret formulation.
15           So we're still trying to get responses on those
16  interrogatories which are subject to that letter motion,
17  and we're hoping to resolve that, but that issue is still
18  outstanding.
19           THE COURT:  All right, and just with respect to
20  - I guess let me hear next from UrthTech, and at least
21  one of the documents submitted under seal seemed to have
22  a specific ingredient formula.  The patent, there is like
23  a provisional patent application filed February 21 of
24  '19, and that seemed to have very specific formulations.
25  I don't know if that's what UrthTech is talking about.
```

```
 1                        PROCEEDINGS                    7
 2  But let me hear next from UrthTech on this issue.
 3           MR. WEINER:  Okay, thank you, Your Honor, this
 4  is Michael Weiner.  I agree with Mr. Alexander's summary.
 5  We disagree on the merits.  We do think UrthTech's
 6  responses were appropriate.  We supplemented our
 7  responses to provide some additional detail on a number
 8  of the interrogatories, and we are trying to work with
 9  counsel for Gojo to resolve any disputes.
10           The provisional application you referred to,
11  that is an application that was filed by Gojo that we
12  allege included UrthTech's trade secret information.  So
13  they're asking for something a little bit different.
14  They're asking for UrthTech to identify the descriptions
15  of the trade secrets.  We did identify several trade
16  secrets, you know, numbered 1 through 6, with specific
17  information about the formulations.  And we also
18  responded to interrogatories asking for, identifying
19  where in those filed patent applications trade secret
20  information was used and revealed when the applications
21  were published.
22           So we think our answers, responses to
23  interrogatories are appropriate, but we are attempting to
24  resolve any remaining disagreements about that with
25  counsel for Gojo, and we are intending to meet and confer
```

```
 1                        PROCEEDINGS                    8

 2   with them on that tomorrow.

 3            THE COURT:  Okay.  Yeah, because at this point

 4   in discovery, this needs to be resolved sooner rather

 5   than later.  So what I'm going to do is I'm going to ask

 6   for a status report in seven days from today since your

 7   meet and confer is tomorrow on this, and I'd like you to

 8   report on whether this issue is resolved or whether you

 9   need the Court to rule on something.  Okay?

10            MR. WEINER:  Okay, and, Your Honor, this is

11   Michael Weiner.  Just for clarification, that status

12   report you're ordering, is that directed specifically to

13   that issue --

14            THE COURT:  Yes.

15            MR. WEINER:  -- UrthTech's interrogatories?  So

16   not addressing other potential discovery disputes.

17            THE COURT:  That is correct.  That is correct.

18   Because that's the motion, that's one motion that we're

19   dealing with, and it sounds like you're still working

20   through trying to resolve it.  But at this point in the

21   case, enough discovery has gone on such that I think

22   you're at a stage where you can ask something more than a

23   more specific type of contention interrogatory, at least

24   to get clarity on what the trade secret, a list of the

25   trade secrets.  In other cases parties have provided a
```

```
 1                            PROCEEDINGS                    9
 2   list or a spreadsheet or something to be clear about what
 3   the trade secrets are.
 4          So that, so the letter should address whether
 5   you need something resolved and how the issue has been
 6   narrowed.  And I'll probably need to see the list.  I'll
 7   need to see the information that's been provided by
 8   UrthTech, and I'll need to understand what precisely is
 9   not specific enough about it from Gojo's standpoint.
10   Okay?
11          MR. ALEXANDER:  That's works for us, for Gojo,
12   Your Honor.
13          MR. WEINER:  Likewise, Michael Weiner,
14   understood for UrthTech, and we'll proceed as you direct
15   us.
16          THE COURT:  Okay, so then let's go to the next
17   motion which is that the plaintiff UrthTech is seeking
18   documents exchange with a law firm, Calfee Halter &
19   Griswold that were used in an inventorship application
20   and sent to, related to a specific email.  I think you're
21   alleging that there's been a broad subject matter waiver.
22   Have the parties - is this issue still outstanding?
23          MR. WEINER:  Yes, Your Honor, this is Michael
24   Weiner for UrthTech.  The issue is still outstanding, and
25   I also wanted to clarify there is the letter brief that
```

2   we filed to compel Gojo to provide information relating

3   to this memorandum on inventorship.  And we also served a

4   subpoena on the law firm, the Calfee firm, and we filed

5   an action to compel the Calfee firm to respond to the

6   subpoena, and that was filed in the Northern District of

7   Ohio where the law firm is located.  And then that matter

8   was transferred back to this court.  It was assigned a

9   different case number, but I understand that's been

10  assigned to you and the same district court judge.

11         THE COURT:  Oh, do you have, is it a

12  miscellaneous number?  Do you have that number?

13         MR. WEINER:  Yes, it is, it's 24mc0311.

14         THE COURT:  Okay, so I have a couple of

15  questions about your request which is, in the briefing it

16  appears that the document or the memo was never intended

17  to be a privilege memo.  It was intended to be a follow-

18  up on a conversation and setting out Gojo's legal

19  position.  So help me to understand why that would create

20  a waiver of privilege.

21         MR. WEINER:  This is Mr. Weiner.  Your Honor, we

22  disagree with that characterization that Gojo made.  The

23  document at issue is a memorandum from outside counsel at

24  the Calfee firm to inside counsel, Ms. Pinter at Gojo,

25  and it addressed an analysis of a legal issue,

```
 1                        PROCEEDINGS                    11
 2   inventorship on a particular patent application which is
 3   highly pertinent to this case.  Now, a copy of that
 4   memorandum was forwarded by an employee of Gojo to one of
 5   the principals at UrthTech attaching the memorandum, but
 6   the memorandum itself is an analysis of a legal issue
 7   from outside counsel to inside counsel, and we believe
 8   that privilege was waived with respect to this document,
 9   and we don't think it really makes any material
10   difference whether it was intended to be privileged for
11   some period of time or not.  The fact is this is the
12   lawyer's analysis that was sent to in-house counsel at
13   Gojo and that was not maintained in confidence.  It was
14   sent outside to UrthTech.  So we don't believe there's
15   any proper privilege claim available for that document,
16   and as a result, we think we should be entitled to get
17   belated communications concerning the subject matter of
18   the document, or the memorandum, and we should be able to
19   get the underlying documents that were considered by the
20   author of the memorandum in reaching the conclusions
21   described in the memorandum.
22            THE COURT:  Okay, and what does Gojo say?
23            MR. ALEXANDER:  Your Honor, this is Andy
24   Alexander on behalf of Gojo.  I think you got it right in
25   your characterization in what this memorandum was.  We
```

2   submitted with our responsive letter brief, we submitted

3   the email correspondence that followed up a call between

4   the respective attorneys for both sides where they were

5   discussing their view of positions on a case.  This is

6   pretty standard protocol for when two parties have a

7   dispute, their attorneys get on the phone, they say what

8   their position's right, why the other side's wrong.  And

9   in the course of this conversation, Gojo's counsel agreed

10  to send over a document in writing setting out those

11  positions on a conversation.  And that's shown by the

12  email that we submitted attached to our responsive

13  letter.  That's when the discovery document was sent

14  shortly thereafter, after that phone call.

15          The document was always intended to be a

16  communication from Gojo to UrthTech to set out their

17  legal contentions.  It's very similar to what you see in

18  a brief.  It's what you'd see in an interrogatory

19  contention response.  You know, this is seen in cases, in

20  all the disputes I've been involved in, attorneys

21  communicate legal positions back and forth routinely

22  without having to worry about waiving all of their

23  internal notes and communications.  I mean that would be

24  I think an egregious overreach of any kind of subject

25  matter waiver.  The document itself was never intended to

```
 1                         PROCEEDINGS                    13
 2   be an attorney-client privileged document.  So I don't
 3   think waiver applies here.
 4            And even if it would, the subject matter waiver
 5   doctrine, that's meant to protect scenarios where the
 6   communication itself per se is an issue in the case, and
 7   I think a good example of that is a patent infringement
 8   case where one party's alleging the other party willfully
 9   infringed, and in defense the defendant says, no, we
10   didn't willfully infringe.  We had an opinion we relied
11   on from counsel, so we weren't willfully infringing.  And
12   they used that communication to support, you know, as
13   factual evidence to support that defense.  And in that
14   case, you know, you can't use your communications as a
15   sword and a shield.  So you have to disclose the other
16   communications you may have had here.  Here, Gojo is not
17   asserting any defense that would make this communication,
18   the fact that, you know, Gojo communicated with outside
19   counsel, relevant to any issue in this case.  So subject
20   matter waiver wouldn't apply.
21            In all the cases that UrthTech cited, it really,
22   it backs that point up.  Those are cases involving fraud,
23   allegations of fraud where, you know, intent or mens rea
24   are relevant, and it's just not the case here.  This is
25   simply a communication from Gojo to UrthTech setting out
```

                              PROCEEDINGS                    14

 1
 2   their legal positions.  This happens all the time in
 3   litigation and disputes preceding litigation.
 4          THE COURT:  Just so I'm clear, is the actual
 5   memo the one that's exhibit C?  Because I have the email
 6   at exhibit A.
 7          MR. WEINER:  Yes, Your Honor, this is Michael
 8   Weiner.  That's correct.  The email is an exhibit, and
 9   then we also had the memorandum as a separate exhibit
10   because the email is an attachment, I'm sorry, the
11   memorandum is an attachment to an email, but it's also a
12   separate document.  It's not a communication from one
13   party to the other.  It's a communication from Gojo's
14   outside counsel to Gojo's inside counsel.  And the our
15   position is Gojo waived privilege associated with that by
16   sending that privileged communication a few days later
17   from an in-house person at Gojo to UrthTech.
18          THE COURT:  Hold on a second.  I'm not sure that
19   I'm – there's a document at C that attaches inventorship
20   comments.  Is that the memo that we're talking about?  Or
21   are we talking about --
22          MR. WEINER:  No --
23          (interposing)
24          MR. WEINER:  I'm sorry, it's on the Calfee
25   letterhead dated February 28, 2022 from Shneor Levine to

```
 1                          PROCEEDINGS              15
 2  Kimberly Pinter.
 3          THE COURT:  Hang on.
 4          (pause in proceeding)
 5          THE COURT:  Because I have an exhibit B,
 6  something that is legal summary.  Is that what you're
 7  talking about?
 8          MR. WEINER:  No, Your Honor, I have to
 9  doublecheck the exhibit designation on that, but it
10  wasn't a legal summary.  It's a memorandum.
11          THE COURT:  Okay.
12          MR. WEINER:  Let me just take a look at that.
13  Exhibit A, oh, I'm sorry.
14          (pause in proceeding)
15          THE COURT:  I'm not sure I'm looking at the
16  right document then.
17          (pause in proceeding)
18          THE COURT:  Did you submit it?
19          MR. WEINER:  I did.  Let me just, just trying to
20  confirm the exhibit on that.
21          (pause in proceeding)
22          MR. GONZALEZ:  Your Honor, this is Daniel
23  Gonzalez from UrthTech.  So I'm looking at exhibit B of
24  what was entered for docket entry 74.
25          THE COURT:  Oh, okay.
```

```
 1                            PROCEEDINGS                16

 2             (interposing)

 3             MR. GONZALEZ:  -- that Calfee letterhead.

 4             THE COURT:  Okay.

 5             MR. GONZALEZ:  And it was listed dated February

 6   24, 2022 to Shneor Levine who is in-house counsel at Gojo

 7   from Kimberly - yes, ma'am, that is what - yes, Your

 8   Honor that is what we're looking at.

 9             THE COURT:  Thank you, I've got that now.

10   Sorry, sorry.  Okay.

11             MR. WEINER:  That's correct, and then the next

12   exhibit, C, is the email communication that attached the

13   memorandum as an attachment.

14             THE COURT:  Right, okay.  All right.  And in

15   the, since I haven't looked at the miscellaneous action

16   now, I was not I guess aware of that.  Is there, are

17   there any different documents in that - I assume it's the

18   same document that's attached as an exhibit in that --

19             MR. WEINER:  Yes, Your Honor.  This is Mr.

20   Weiner.  It's exactly the same document that we rely on

21   for a waiver of privilege, and we were just, we served a

22   subpoena on the law firm to get their documents relating

23   to that memorandum.

24             THE COURT:  And the same argument?

25             MR. WEINER:  Yes, that's correct.  The arguments
```

```
 1                         PROCEEDINGS                17
 2   are essentially the same.  (indiscernible) cites some
 3   different authority, but it's essentially the same issue.
 4   If there's a waiver of privilege, then we should be
 5   entitled to get documents from both the law firm and from
 6   Gojo.
 7             THE COURT:  Well, what documents --
 8             MR. WEINER:  And there may be some --
 9             THE COURT:  What type of documents are you
10   anticipating that there would be?
11             MR. WEINER:  There could be further
12   communications relating to the basis for the opinion, for
13   the example.  The opinion letter states that, you know,
14   the reasons why they didn't believe that Dr. Awad should
15   be named an inventor, and there's some discussion there
16   about communications from Dr. Awad not being sent to the
17   inventors who were named, and we believe there must be
18   some communications relating to the basis for the
19   attorney's opinion as to why that was the case.
20             THE COURT:  Well, wouldn't you already have the
21   factual information underlying the opinion?
22             MR. WEINER:  We have some information.  We don't
23   know if we have all the internal communications because
24   it appears to us there may be internal communications
25   relating to it that are being protected as privileged.
```

```
 1                      PROCEEDINGS                18
 2  One of the other concerns we have, we have no privilege
 3  log from Gojo, not just relating to this issue but we've
 4  been asking for this but we didn't get any privilege log
 5  at all.  So at this point, we're a little unsure of the
 6  extent of the number of documents in dispute that may
 7  relate to this opinion memorandum, but we believe there
 8  are likely to be a substantial number of documents,
 9  (indiscernible) only a few documents, they could be
10  highly pertinent to the issues in the case.  So we think
11  we're entitled to --
12          THE COURT:  Okay.
13          MR. WEINER:  I just to say we're entitled to
14  what the lawyer relied on and other further
15  communications relating to the lawyer's analysis.
16          THE COURT:  Why hasn't Gojo prepared a privilege
17  log?
18          MR. ALEXANDER:  Your Honor, this is Andy
19  Alexander on behalf of Gojo.  We have just finished,
20  we've made the bulk of our production as of last Friday,
21  and now that we've produced the majority of our
22  documents, we're in the process of preparing the
23  privilege log and sending that over very shortly.
24          THE COURT:  Well, do you know how many documents
25  would fall within this particular request?
```

1

2        MR. ALEXANDER:  Well, Your Honor, my

3   understanding is they are seeking all attorney work

4   product and internal attorney communications on this

5   whole subject matter.  I mean --

6        THE COURT:  Well, you're not, that – I intend to

7   deny the request for attorney internal, internal attorney

8   work product and drafts.  There's, this argument that

9   there's a waiver that would require a production of that

10  is not persuasive. But to the extent that there is

11  underlying fact information that the principals, you

12  know, related to principal communications, you know,

13  between UrthTech and Gojo or the inventors or not, I

14  would think that those underlying factual --

15       MR. ALEXANDER:  Yes, Your Honor --

16       (interposing)

17       MR. ALEXANDER:  Yes, Your Honor, that's right.

18  Gojo's producing all factual non-privileged documents

19  that it possesses that relate to any of these issues

20  related to inventorship.

21       MR. CIPOLLA:  This is John Cipolla, Your Honor.

22  We believe that most of those documents have already been

23  produced.  There may be a few (indiscernible) produced.

24       THE COURT:  Right.  Well, the request,

25  UrthTech's request can be construed to, could be

```
 1                        PROCEEDINGS                20

 2   narrowed, documents relied on by the attorney in reaching

 3   conclusions.  I don't know whether you're entitled to all

 4   of those, but certainly if there's factual information

 5   that's otherwise requested –

 6            MR. CIPOLLA:  Yes, Your Honor  --

 7            THE COURT:  -- that would be produced.  And if

 8   there were communications of the kind UrthTech was

 9   talking about that Gojo was saying are privileged, those

10   should be on a privilege log, communications specifically

11   relevant to this inventorship issue.  And I wouldn't

12   think there are very many --

13            MR. CIPOLLA:  Yes, Your Honor.

14            THE COURT:  -- because it sounds like Gojo's

15   taking the position that there were no such

16   communications.

17            MR. ALEXANDER:  Yes, Your Honor, to the extent

18   there's any communications that Gojo's withholding that's

19   relevant to the inventorship issue on the basis of

20   privilege, those will be on the privilege log.

21            THE COURT:  Right, okay.  So I'd like you to get

22   the privilege log pleaded within the next two weeks, and

23   --

24            MR. ALEXANDER:  We can do that, Your Honor.

25            THE COURT:  -- send that – send that over to
```

```
 1                        PROCEEDINGS               21
 2   UrthTech.  Does UrthTech, has it produced its privilege
 3   log?
 4             MR. WEINER:  Your Honor --
 5             (interposing)
 6             ATTORNEY FOR URTTECH:  Yes, we have, Your Honor.
 7             THE COURT:  Okay.
 8             MR. WEINER:  Yes, we've produced two versions of
 9   our privilege log pursuant to the local rule.  So as we
10   make our productions, we followed up with a privilege log
11   within a reasonable time.
12             THE COURT:  Okay.  So Gojo's got two weeks to
13   produce its privilege log.  And by September 14, I think
14   that's a weekday, let me just doublecheck.
15             (pause in proceeding)
16             THE COURT:  September 13, Friday the 13th.  I
17   want to know if the parties are, if there's going to be
18   any additional privilege disputes.
19             MR. WEINER:  I'm sorry, Your Honor, could you
20   repeat those dates.  I wanted to make sure I got that
21   correctly.
22             THE COURT:  September 13, I'd like to know from
23   the parties in a status letter whether they're
24   anticipating any other privilege disputes based on each
25   other's privilege log.  Okay?
```

```
 1                          PROCEEDINGS                22

 2              MR. ALEXANDER:  That works for us, Your Honor,

 3    on behalf of Gojo.

 4              THE COURT:  And I'm not going to permit or order

 5    the production of attorney work product, internal

 6    attorney draft.  I'm a little bit handicapped with

 7    respect to other information related to this because I

 8    don't even have the privilege log related to, you know, I

 9    don't even know the universe of document that this

10    relates to.  But what I'm going to do is I'm going to,

11    I'm not making a full ruling on this motion right now,

12    and I'm going to take it under advisement, and I will

13    issue a ruling on it.  But I do want the parties to flesh

14    out whether there's any other privilege issues by

15    September 13 because you need to get those resolved

16    sooner rather than later.

17              MR. GONZALEZ:  Your Honor, Daniel Gonzalez with

18    UrthTech.  Very quick follow-up to that.  We have a

19    couple of additional, there's an additional production

20    that Gojo promised to make us.  Parties have been in

21    communication about this point.  But we expect that that

22    additional production is going to require a follow-up

23    privilege log as well that would be separate from

24    whatever is being generated in the next two weeks by

25    Gojo.  How should we – we don't know what we don't know
```

```
 1                        PROCEEDINGS              23
 2  yet.  So to the extent that there's any privilege issues
 3  that could be a result of additional productions that
 4  Gojo has represented that they would be making to
 5  UrthTech, how would you like parties to handle that given
 6  the current timeline, Your Honor?
 7          THE COURT:  So when is that production going to
 8  be made?
 9          (interposing)
10          MR. GONZALEZ:  -- when.
11          MR. ALEXANDER:  Your Honor, this is Andy
12  Alexander from Gojo.  This relates to an additional
13  custodian that UrthTech requested us to search files for,
14  and that came I believe last week that request.  So we
15  responded, you know, while we dispute that, we should've
16  initially (indiscernible) because we had no reason to
17  think this person was a relevant custodian.  And now, you
18  know, in crafting the trade secret description, they came
19  up with a trade secret that wasn't disclosed at all in
20  the complaint and identified communication between
21  UrthTech and this individual.
22          In any event, we agreed that we'll search that
23  person's custodial files and make production.  I believe
24  we just received those documents today, and so we have to
25  conduct a search across those documents for responsive
```

```
 1                        PROCEEDINGS                24
 2   information, and I need to get a handle on the amount of
 3   information that's in that, those files to give a date
 4   certain when that production will be made.  But when we
 5   make that production, we'll follow up shortly thereafter
 6   with an updated privilege log.
 7             THE COURT:  Okay, so the September 13 letter is
 8   just going to be whether or not you need briefing on any
 9   other privilege issues and proposing a briefing schedule
10   on that.  And if there's - that's only going to concern
11   the production up to now and the privilege logs produced
12   through the end of August.  And if there's a subsequent
13   production, as you say, the privilege log, the updated
14   privilege log with respect to that supplemental
15   production should be produced a week after that
16   supplemental production, and if there's an issue there,
17   you can raise it in due course after that.  Okay?
18             (interposing)
19             MR. WEINER:  -- Mr. Weiner.  I just had a
20   clarification I wanted on behalf of UrthTech.  I
21   understand you're saying that you're not going to order
22   Gojo to produce internal work produce from the law firm
23   relating to the memorandum --
24             THE COURT:  Correct.
25             MR. WEINER:  -- but our understanding, we expect
```

```
 1                         PROCEEDINGS                    25
 2   and we think there must be communications between Gojo
 3   and outside counsel that were relied and relate to the
 4   subject matter of the memorandum.  For example, the
 5   memorandum states there's no evidence that Dr. Awad
 6   collaborated with the named inventors.  That must've been
 7   information that counsel relied on from Gojo that was
 8   provided to outside counsel.  We think we should be
 9   entitled to get those communications relating to the
10   memorandum and relied on by the attorney and formulated
11   the memorandum.  I'm not sure what we need as far as
12   further briefing on that.  If there's anything logged
13   that falls within that subject matter, then we think that
14   there's no privilege associated within that should be
15   produced.
16            THE COURT:  There's no production needed --
17            (interposing)
18            THE COURT:  There's no further briefing needed.
19   I'm taking that matter under advisement.
20            (interposing)
21            MR. WEINER:  Okay, so you want us --
22            THE COURT:  -- ruling on that now.  What I'm --
23            (interposing)
24            MR. WEINER:  Okay, but you --
25            THE COURT:  -- saying is is that after the
```

```
 1                          PROCEEDINGS                 26
 2  production of Gojo's privilege log at the end of August,
 3  both sides need to look at each other's privilege log,
 4  and if there are new issues, if there are any new issues
 5  regarding where you're, either side is saying that
 6  someone is improperly withholding something on the
 7  other's log, you have to write me a letter by September
 8  13 and propose a briefing schedule on a motion to compel.
 9          I hope there's nothing.  I hope there's no other
10  motion.  But --
11          MR. WEINER:  Okay.
12          THE COURT:  -- you can tell me that on September
13  13, but I'm giving you until September 13 to work out any
14  other issues you have with each other's privilege logs
15  produced through August 31.  Is that clear?
16          MR. WEINER:  Understood, Your Honor.  Yes, thank
17  you.
18          THE COURT:  Okay.  All right.  So are there
19  other – what else is left with discovery?  Because Judge
20  Castel set a fact discovery deadline of September 26, and
21  counsel for Gojo I believe said that there's still some
22  other issues.  What's left with discovery?  Are you going
23  to meet this September 26 deadline?
24          MR. WEINER:  Well --
25          (interposing)
```

```
 1                        PROCEEDINGS                    27
 2              THE COURT:  Let me hear from --
 3              (interposing)
 4              MR. ALEXANDER:  Thank you, Your Honor, this is
 5   Andy from Gojo.  We do have some outstanding other
 6   discovery disputes.  In those set of March
 7   interrogatories that we served, there were several
 8   interrogatories that UrthTech did not respond to and they
 9   still have not responded to.  They've, you know,
10   arbitrarily selected a deadline of I believe August 23 or
11   so to respond to those.  But we haven't seen any
12   substantive respond to these interrogatories.  These are
13   very important interrogatories that get to the heart of
14   the factual disputes in this case.
15              For example, what security measures did UrthTech
16   take to protect these trade secret?  What's the
17   commercial value of these trade secrets?  What claim
18   elements of these patent applications deserve that claim
19   that's (indiscernible) of?  What documents support they
20   communicated these trade secrets over to an inventor?
21   Why they think the trade secrets are trade secrets --
22              THE COURT:  Why are you serving interrogatories
23   of this nature?  Why wouldn't this be posed in a
24   deposition?
25              MR. ALEXANDER:  Because we believe that these
```

```
1                         PROCEEDINGS              28
```

2  are more efficient to just get these in an interrogatory

3  response than have to ask questions during a deposition.

4  These should be things that --

5              THE COURT:  When did you serve --

6              MR. ALEXANDER:  -- potentially have written

7  protocols --

8              THE COURT:  When did you serve these?

9              MR. ALEXANDER:  In March.

10             THE COURT:  Well, then they're not consistent

11 with the local rule to the extent they were served then.

12             MR. ALEXANDER:  Well, we --

13             (interposing)

14             THE COURT:  These are in the nature of

15 contention interrogatories which are not allowed in this

16 district until a very late stage in the case.

17             MR. ALEXANDER:  Well, Your Honor, we certainly

18 think that this stage in the case they should be

19 responded to, and we think discovery's been ongoing for a

20 while now, and these would help prepare defenses for Gojo

21 and help prepare for depositions and allow Gojo to

22 defense itself.  And a lot of these things, like security

23 measures that a party takes to protect their trade

24 secrets, I mean this seems to be a thing that should be,

25 you know, written down likely or written protocols.  We

```
 1                          PROCEEDINGS                  29

 2   think --

 3              THE COURT:  Well, then it can be --

 4              (interposing)

 5              THE COURT:  -- then it can be a document.  Then

 6   it can be a document that's provided.  And commercial

 7   value of the trade secrets, isn't that going to be, isn't

 8   that going to be developed through expert discovery?

 9              MR. ALEXANDER:  It potentially could, but there

10   should be factual, underlying factual, factual things

11   that would support that claim for commercial value, for

12   example --

13              THE COURT:  All right, well, I'm going to direct

14   the parties to meet and confer on those interrogatories,

15   and I'm hoping that you can resolve those.  But I'm going

16   to remind both sides that interrogatories and responses,

17   well, the interrogatories have to be proportional to the

18   needs of the case and the most efficient way to get the

19   information consistent with Rule 1.  How many depositions

20   is Gojo seeking?

21              MR. ALEXANDER:  At this point, we envision two

22   facts witnesses and a 30(b)(6), although we're still

23   reviewing documents and interrogatory responses --

24              (interposing)

25              MR. ALEXANDER:  No more than five.
```

```
 1                        PROCEEDINGS                    30
 2              THE COURT:  All right, and have – what about
 3    UrthTech, how many depositions are you thinking?
 4              MR. GONZALEZ:  Your Honor, this is Danny
 5    Gonzalez --
 6              (interposing)
 7              MR. GONZALEZ:  -- for UrthTech.  This is Danny
 8    Gonzalez with UrthTech.  As of now we're unsure as to how
 9    many 30(b)(6) witnesses we're going to need.  Gojo's
10    production has not been complete to date.  We're still
11    relying on a production that they promised to give us,
12    and we still need to get our heads around what the
13    universe of documents is and who are the most relevant
14    witnesses.
15              THE COURT:  What do you mean – isn't there only
16    going to be one 30(b)(6)?
17              MR. GONZALEZ:  That's correct, there's going to
18    be one 30(b)(6), one 30(b)(6) set of topics, but with
19    respect to what individual topics we're going to need to
20    ask about, there's multiple inventors on the Gojo patents
21    and figuring out who knew what when is at the heart of
22    this case, Your Honor.
23              THE COURT:  Well, there's the three inventors,
24    right?
25              MR. WEINER:  No, Your Honor, this is Michael
```

```
 1                         PROCEEDINGS              31
 2   Weiner.  There are some additional inventors.  There are
 3   two patents at issue and there are more than three
 4   inventors.  So we need to make a determination including
 5   the witness whose production we haven't received yet is a
 6   named inventor on one of the patent applications.  So we
 7   need to review the recent document production we just
 8   received within the last week and the forthcoming
 9   production to make a decision about how many depositions
10   we'll need.
11              THE COURT:  Okay, but you're going to have a
12   30(b)(6) and you're going to have some of the inventors.
13              MR. WEINER:  That's correct.
14              THE COURT:  Okay, so it's going to be less than
15   ten.
16              MR. WEINER:  Yes, that's correct --
17              MR. GONZALEZ:  That sounds about right, Your
18   Honor.
19              MR. WEINER:  -- less than ten.
20              THE COURT:  And so neither side has prepared
21   30(b)(6) notices, is that correct?
22              (interposing)
23              MR. WEINER:  -- for UrthTech we have not served
24   any notices at this point, that's correct.
25              MR. ALEXANDER:  We have not either, Your Honor,
```

```
 1                          PROCEEDINGS                    32

 2   from Gojo.

 3             THE COURT:  Well, when do you think you were

 4   going to get this in before September 26?

 5             MR. WEINER:  Your Honor, this is Mr. Weiner.

 6   That was another issue we wanted to raise with you today

 7   that we think, due to the delays in written discovery, we

 8   think it's going to be very difficult to meet that

 9   deadline of September 26, and we think we'll likely need

10   an extension of that deadline.  We haven't conferred with

11   counsel for Gojo on how much time they think we need, but

12   we think we'd need an extension of that deadline for fact

13   discovery.

14             THE COURT:  Well, I'm going to ask the parties

15   to meet and confer about a revised schedule, and if you

16   are going to propose a revised schedule, I want to know

17   dates when you plan to exchange notices, and I want dates

18   to exchange preliminary lists of deposition, deponents

19   because you're going to need to put aside calendar days

20   to do that, and you got to do that sooner rather than

21   later because there's a lot of holidays in the fall, and

22   people's schedules get real busy.  So you need to get a

23   deposition schedule in place in short order even if the

24   depositions are taken in October or November.  Okay?

25             MR. WEINER:  Understood, Your Honor, thank you.
```

```
 1                    PROCEEDINGS                 33
 2         THE COURT:  So meet and confer, and then you can
 3   submit a revised discovery schedule to me.  You should do
 4   that by the end of August.  Okay, are there other issues
 5   that UrthTech wanted to raise regarding discovery?
 6         MR. WEINER:  We don't have anything that we need
 7   to raise at this time.  We've raised some issues with
 8   counsel for Gojo, and we're attempting to work that out,
 9   and we'll see what that supplemental production and
10   privilege log look like, and we'll follow up, try to
11   resolve any issues, but we don't have anything to raise
12   with the Court at this time.
13         THE COURT:  And what about Gojo, any other
14   discovery issues that you would like to raise at this
15   time?
16         MR. ALEXANDER:  No, Your Honor, we have nothing
17   further that we haven't raised already.
18         THE COURT:  Okay, so since this is my first time
19   talking to you all, I wanted to just make sure that you
20   look at my rules.  I prefer that you write to request a
21   conference, except to, you know, I'll put everything in
22   an order that we discussed today, but if there's other
23   discovery disputes that you can't resolve, follow my
24   rules and ask for a conference, and I'll schedule a
25   conference.  I'm going to try to resolve things without
```

```
 1                        PROCEEDINGS                    34

 2  briefing, and I ask that – without extensive briefing,

 3  and I usually, if I do have briefing, I usually have a

 4  moving brief and an opposition with no reply so that I

 5  can get on it quickly.  Okay?

 6           MR. ALEXANDER:  Understood, Your Honor.

 7           THE COURT:  Okay, well, thank you.  I guess if

 8  there's nothing else, we're adjourned.  Have a good

 9  afternoon.

10           MR. WEINER:  Thank you, Your Honor.

11           MR. ALEXANDER:  Thank you, Your Honor.

12           ATTORNEYS:  Thank you, Your Honor.

13           THE COURT:  Okay.

14           ATTORNEY:  Thank you, Your Honor.

15           (Whereupon the matter is adjourned.)

16

17

18

19

20

21

22

23

24

25
```

35

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing
transcript of proceedings in the case of URTHTECH, et al.
v. GOJO INDUSTRIES, Docket #22cv6727, was prepared using
digital transcription software and is a true and accurate
record of the proceedings.




Signature_____
                    Carole Ludwig
Date:  August 15, 2024