```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____          │
│ DATE FILED:  8/22/2024          │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

URTHTECH LLC,

                              Plaintiff,

            -against-

GOJO INDUSTRIES, INC.,

                              Defendant.

<u>OPINION & ORDER ON MOTIONS TO
COMPEL</u>

**1:22-CV-6727 (PKC)(KHP)**

**1:24-mc-00311(PKC)(KHP)**


**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff UrthTech LLC ("UrthTech") brings this action against Defendant GOJO

Industries, Inc. ("GOJO") for breach of contract stemming from GOJO's alleged breach of a

License Agreement and Nondisclosure Agreement, which occurred when GOJO filed two patent

applications that allegedly improperly omitted one of UrthTech's founders, Dr. Aziz Awad, from

the list of inventors, but incorporated Dr. Awad's contributions, and claimed inventions that

were conceived in part by Dr. Awad.  UrthTech also asserts claims for trade secret

misappropriation stemming from GOJO's allegedly improper use and disclosure of confidential

information provided by UrthTech to GOJO, subject to the Nondisclosure Agreement and

correction of inventorship of an issued patent.

Presently before the Court is UrthTech's motion to compel production of documents

responsive its Document Request 36, which GOJO has objected to on grounds that the

responsive documents are privileged.  (Dkt. No. 74.)  Separately, UrthTech subpoenaed GOJO's

lawyers at Calfee, Halter & Griswold LLP ("CHG") seeking the same information.  CHG similarly

objected to that subpoena.  UrthTech filed a motion in the Northern District of Ohio, where

1

CHG is located, to compel a response to the subpoena, but the Court transferred the motion to this District. (Dkt. No. 5 in Case No. 1:24-mc-00311.) Because both motions address the same subject, this Opinion and Order addresses them together.

For the reasons set forth below, UrthTech's motions to compel are denied.

## BACKGROUND

UrthTech develops antimicrobial and antifungal formulations for use in commercial cleaning products and hand/skin sanitizers. GOJO sells Purell hand sanitizer and related cleaning products. Dr. Awad developed two specific formulas for which he was awarded patents – the '604, '766 and '309 patents. In January 2009, the parties entered into a Nondisclosure Agreement ("NDA") to engage in discussions about antimicrobial and antifungal formulations pursuant to which UrthTech revealed certain proprietary formulas, efficacy findings and testing. Dr. Awad also served as a consultant to GOJO regarding development of products that might include aspects of the '766 and '309 patents. In March 2015, the parties entered into a License Agreement and a Technical Assistance Agreement pursuant to which UrthTech granted GOJO an exclusive license to the patents referenced above and permitted GOJO to develop a prize-winning multi-surface disinfectant spray marketed under the Purell brand. The License Agreement contemplated that the parties might jointly or separately develop improvements to the licensed technology and set forth rules regarding notice and inventorship in connection with future patents.

In May 2015, Dr. Awad provided a confidential memorandum to GOJO describing an improvement to antimicrobial formulation and later had discussions with GOJO about furthering the development of GOJO's product lines.

In September 2017, GOJO filed patent applications (the '221 and '684 Provisional Applications) directed to certain antimicrobial compositions.  UrthTech alleges that the subject matter disclosed and claimed in these applications was based on information provided by Dr. Awad and incorporated into the proposed patents.  In June 2023, GOJO was granted a patent for an Acid Wipe Formulation – the '662 patent – that also concerned an antimicrobial composition.  UrthTech claims that the specifications and claims in the '662 patent reflect UrthTech's trade secrets.  Thus, UrthTech contends that Dr. Awad should be listed as an inventor of the '662 patent and that UrthTech has a co-ownership right in the patent.  UrthTech contends that GOJO violated the License Agreement by failing to list Dr. Awad as an inventor.[1]

In February 2019, GOJO applied for a provisional patent titled "Alkaline Disinfecting Compositions" (the '484 Provisional Application) that formed the basis for a February 2020 application (the '990 Application) relating to another antimicrobial composition. UrthTech contends that these applications included improvements disclosed and claimed in UrthTech patents and, as a result, Dr. Awad should have been listed as an inventor.[2]

In March 2020, GOJO provided notice to UrthTech pursuant to the License Agreement regarding a formula that might be considered improvement but did not acknowledge that Dr. Awad was a joint inventor or creator of the improvement and later provided the specific formula to UrthTech, which UrthTech says is an embodiment of inventions recited in the claims

---

[1] UrthTech also contends that GOJO's Purell® Foodservice Sanitizing Wipes embody the invention in claim 1 of the '662 patent.
[2] In or about 2020, GOJO began marketing a multi-surface spray that embodied claim 13 of the '484 Provisional Application.

of the '484 Provisional Application. UrthTech says this violated the License Agreement because the notice was more than 30 days after the creation or development of the improvement.

In April 2020 and again in August 2021, GOJO filed an amendment to claims pending in the '990 Application without notifying or consulting UrthTech in violation of its obligations under the License Agreement.

UrthTech notified GOJO it believed that GOJO was in violation of the parties' agreements and the parties discussed a potential resolution of the dispute before this action was filed. The parties were not able to resolve the dispute, leading to UrthTech filing this action in August 2022.

**DISCOVERY AT ISSUE**

On March 2, 2022, while the parties were discussing resolution of their dispute pre-litigation, GOJO's Chief Marketing and Commercial Operations Officer, Jessica McCoy, sent UrthTech President/CEO Robert George Jr. a memorandum dated February 28, 2020 (the "February 28 Memo") setting forth GOJO's legal position on the issue of inventorship relating to the '990 Application, which was published on August 27, 2020 as U.S. Patent Pub. 2020/0267973 (the '973 Publication).[3] The memo was written by GOJO's outside counsel at CHG and sent to GOJO's in-house counsel Shneor Levine. The memo addresses whether there is a basis for Dr. Awad to be listed as a joint inventor of the patent at issue in the '990 Application, as reflected in the '973 Publication. CHG states that based on its analysis it does not believe there is a factual basis to support UrthTech's claim that Dr. Awad should be listed as

---

[3] This is referred to as the '793 Publication in the complaint but referred to as the '973 Publication in the instant motions.

a joint inventor because there is no evidence that he contributed to the conception of the invention or collaborated with the named inventors.  It also points out that the prior art identified by UrthTech cannot be used as evidence of joint inventorship and that there is no basis for listing Dr. Awad as a joint inventor in the '484 Provisional Application.  The memo then sets forth the law on joint inventorship – law which GOJO relied on in settlement discussions and is relying on in this litigation.

According to GOJO, the memo was never intended to be privileged and was provided as a follow-up to ongoing discussions between the parties as to how to resolve the dispute before it turned into litigation.  The February 28 Memo expressly references positions taken by Steve Parks (counsel for UrthTech) in the settlement discussions and is a rebuttal to those positions that was written, according to GOJO, to memorialize points made by Kim Pinter (counsel for GOJO) to Parks.  The memo is not labeled as privileged or confidential.  Further, it was expressly referenced in response to an email by UrthTech's CEO to GOJO's Chief Marketing and Commercial Operations Officer asking if she had a follow up to the conversation between Parks and Pinter, stating "Yes . . . you must have read my mind.  Shneor emailed me on Friday that Kim is almost done with a summary document as a follow-up to the call.  We will work on getting that over to you this week."  (Dkt. No. 78-1, Exh. A.)  And, the next week, GOJO's Chief Marketing and Commercial Operations Officer attached the document stating that it "represents [GOJO's] legal position based on the information at-hand."  (Dkt. No. 74-1.)  Thus, according to GOJO, the February 28 Memo is simply a summary of GOJO's legal positions and factual contentions regarding inventorship that it communicated pre-litigation and is consistent with its position in this litigation.

UrthTech's Document Request 36 seeks:

"All Documents and Communications provided to, received from, or relied on by Calfee, Halter & Griswold LLP, including notes and attorney work product that were considered, reviewed, or relied upon to form the basis of the opinion disclosed in [the February 28 Memo].

GOJO has represented that it has disclosed or will disclose all underlying factual information that forms the basis for the factual statements in the memo.[4]  However, it objects to the production of its attorneys' work product and internal notes, as well as the production of other communications between it and in-house or outside counsel, and between its in-house and outside counsel on the broad subject of whether Dr. Awad has a valid claim of inventorship to the patent at issue in the '990 Application.  It argues there is no waiver because the document was never intended to be privileged, was disclosed prelitigation for settlement purposes, and the fairness doctrine does not support a broad waiver because GOJO is not relying on the memo at all in the litigation or asserting an advice of counsel defense.

UrthTech contends that GOJO waived privilege as to the document and to all documents related to the same subject matter as the February 28 Memo.

## LEGAL STANDARD

The federal law of privileges applies in cases where there are federal question claims and the evidence at issue is relevant to the federal claim.[5]  *von Bulow by Auersperg v. von*

---

[4] The Court assumes this includes the May 2015 communication from Dr. Awad to GOJO and the communications between GOJO and UrthTech dated March 11, 2016 and March 19, 2016 referred to above, as well as any factual information showing the inventors of the patent at issue in the '973 Publication did not have knowledge of Dr. Awad's May 2015 communication or contact with Dr. Awad (such as emails between the inventors and Dr. Awad, if any, and emails between and among the inventors regarding the patent at issue to the extent they mention Dr. Awad), the '484 Provisional Application and materials provided to the patent office in connection therewith, and the '990 Patent Application and the materials provided to the patent officer in connection therewith.

[5] GOJO incorrectly states that Ohio law applies.  UrthTech does not state what law applies and cites to various federal and state laws.

*Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).  In this case, Plaintiff invokes federal question

jurisdiction for its claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and its claim for

correction of inventorship under 35 U.S.C. § 256, as well as diversity jurisdiction for its state law

claims.  Because the memo and documents at issue are relevant to Plaintiff's federal claims,

federal law of privilege applies.[6]

### 1. Attorney-Client Privilege

The party withholding a document on the basis of attorney-client privilege or the work

product doctrine bears the burden of establishing facts to demonstrate applicability of the

protective rule. *In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 224–25 (2d Cir.

1984).

The attorney-client privilege protects communications between client and counsel made

for the purpose of obtaining or providing legal advice that were intended to be and in fact kept

confidential. Fed. R. Evid. 501; *In re County of Erie*, 473 F.3d 413, 418-419 (2d Cir. 2007); *United

States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). The privilege is narrowly

construed, because it renders relevant information undiscoverable. *Fisher v. United States*, 425

U.S. 391, 403 (1976); *In re County of Erie*, 473 F.3d at 418. The privilege applies to a company's

communications with its external and in-house lawyers.  *Pearlstein v. BlackBerry Limited*,  2019

WL 1259382, *4 (S.D.N.Y. Mar. 19, 2019)  It is not just communications that are subject to the

privilege. Internal investigation notes and documents also may be privileged. Because the "first

---

[6] Because New York law on attorney-client privilege is generally similar to federal law, the Court may sometimes cite to cases applying New York law. *Bank of Am., N.A. v. Terra Nova Ins. Co. Ltd.*, 211 F. Supp. 2d 493, 495 (S.D.N.Y. 2002); accord *Argos Holdings Inc. v. Wilmington Tr. Natl.* Ass'n., 2019 WL 1397150, at *2 (S.D.N.Y. Mar. 28, 2019) ("New York law of attorney-client privilege is, with certain exceptions, substantially similar to the federal doctrine.") (internal quotation marks and citation omitted).

step in the resolution of any legal problem is ascertaining the factual background and sifting

through the facts with an eye to the legally relevant," factual investigations conducted or

directed by an attorney fall within the attorney-client rubric. *Upjohn Co. v. United State*s, 449

U.S. 383, 390-91 (1981) (employee factual responses to questionnaires from counsel in

connection with internal investigation to provide legal advice protected by attorney-client

privilege); *Gucci Am., Inc. v. Guess?, Inc.,* 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (citations omitted)

(collecting cases).

### 2. *Work Product Doctrine*

Rule 26(b)(3) of the Federal Rules of Civil Procedure provides that documents and

tangible things prepared by a party or its representative in anticipation of litigation are

protected under the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A); *Welland v. Trainer,*

No. 00-cv-0738 (JSM), 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001)(if document "was

prepared 'because of existing or expected litigation'" it is eligible for work product protection)

(quoting *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998)); *see also Hickman v.*

*Taylor,* 329 U.S. 495 (1947)(establishing and articulating application of the work product

doctrine). The key factor in determining applicability of this doctrine is whether the documents

or things were prepared "with an eye toward" or "in anticipation of" or "because of the

prospect of litigation." *Hickman*, 329 U.S. at 510-511; *Schaeffler v. United States*, 806 F.3d 34,

43 (2d Cir. 2015); *Adlman*, 134 F.3d at 1202. "[T]he doctrine is not satisfied merely by a showing

that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather

the materials must result from the conduct of 'investigative or analytical tasks to aid counsel in

preparing for litigation.' " *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-cv-3923 (DRH) (AKT), 2017

8

WL 1233842 (E.D.N.Y. Mar. 31, 2017) (quoting *Wultz v. Bank of China Ltd.,* 304 F.R.D. 384, 393-

94 (S.D.N.Y. 2015)). Thus, a court must determine if the materials would have been prepared in

essentially similar form irrespective of the litigation. *Id.* at *8 (citing *Adlman*, 134 F.3d at 1202);

*Clarke v. J.P. Morgan Chase & Co.*, 2009 WL 970940, at *7 (S.D.N.Y. Apr. 10, 2009).

Work product comes in two forms, opinion and fact work product. Opinion work

product consists of the mental impressions, conclusions, opinions and legal theories of an

attorney or other representative of a party and is given heightened protection and generally

not discoverable.  In contrast, fact work product consists of factual material, including the

results of a factual investigation, and can be subject to disclosure upon a showing of substantial

need and an inability to obtain the equivalent without undue hardship. *Upjohn Co.,* 449 U.S. at

400; *Hickman*, 329 U.S. at 511; *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183-

84 (2d Cir. 2007); *Adlman*, 134 F.3d at 1204.  "A substantial need exists 'where the information

sought is "essential" to the party's defense, is "crucial" to the determination of whether the

defendant could be held liable for the acts alleged, or carries great probative value on

contested issues.' " *Gucci Am.*, 271 F.R.D. at 74–75 (quoting *Nat'l Cong. for Puerto Rican Rights

v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)). The documents must "have a unique

value apart from those already in the movant's possession." *FTC v. Boehringer Ingelheim

Pharm., Inc.*, 778 F.3d 142, 155–56 (D.C. Cir. 2015). Disclosure is warranted only when the

moving party makes a strong showing of the relevance and importance of the fact work product

and that "it is likely to be significantly more difficult, time-consuming or expensive to obtain the

information from another source." *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (SRU), 2017

WL 5885664 (D. Conn. Nov. 29, 2017) (internal citations omitted).

### 3. Waiver

A party may waive privilege or work product protection by voluntarily disclosing otherwise protected information to a third party or injecting protected material into a litigation. The party asserting privilege has the burden of establishing that there has been no waiver. *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 427 (S.D.N.Y. 2013).

Slightly different rules govern waiver of attorney-client privilege and work product protection.   In the case of the attorney-client privilege, "if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication over which the privilege is claimed," the privilege is waived. *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 102 (S.D.N.Y. 2000) (quoting *United States v. Int'l Bhd. of Teamsters,* 961 F. Supp. 665, 673 (S.D.N.Y. 1997) ); *see also Gruss v. Zwirn*, No. 09-cv-6441 (PGG) (MHD), 2013 WL 3481350, at *11 (S.D.N.Y. July 10, 2013) (citing *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ); *In re Visa Check/MasterMoney Antitrust Litig.,* 190 F.R.D. 309, 314 (E.D.N.Y. 2000).  In contract, work product protection is waived only when work product is disclosed to a third party in a manner that is inconsistent with the purpose of the protection. *See In re Steinhardt Partners, L.P.*, 9 F.3d at 235; *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *9 (disclosure that substantially increases the opportunities for potential adversaries to obtain the information results in a waiver of work product protection); *In re Visa Check/MasterMoney Antitrust Litig.,* 190 F.R.D. at 314 (purpose of work product doctrine is "to keep counsel's work from his opponent in the litigation so that it will not be used against him").

When a waiver of attorney-client privilege or work product protection has occurred, the court then must address the scope of the waiver under the "fairness doctrine" (also called

subject matter waiver).  *In re von Bulow,* 828 F.2d 94, 101 (2d Cir. 1987).  The scope of waiver, if any, often hinges on how and when the disclosure occurred, including whether the disclosure was made for strategic purposes in a litigation or, alternatively, whether it was made extrajudicially, and whether there is prejudice to the party seeking the disclosure.  The fairness doctrine is designed "to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." *Id; see United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword. A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.")(citations omitted). When there has been a selective disclosure of attorney-client communications *in the litigation*, courts typically find the party has waived privilege as to all documents pertaining to the subject disclosed. *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *16-18 (ordering disclosure of nine memoranda on confidential witnesses' statements because five other memoranda were disclosed for withholding party's strategic benefit) (citations omitted); *Tribune Co. v. Purcigliotti*, No. 93-cv-7222 (LAP) (THK), 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997), *modified*, 1998 WL 175933 (S.D.N.Y. Apr. 14, 1998) ("[W]here there is partial disclosure in the context of the litigation for the benefit of the privilege holder, there may be a complete subject matter waiver as to all communications on the subject."); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470-71 (S.D.N.Y. 1996) (finding waiver, as "[t]his disclosure to the [Securities and Exchange] Commission was not 'extrajudicial' in the sense meant by the Second Circuit in *von Bulow*"). Nevertheless, courts may order more limited disclosures when evaluating the scope of waiver

under the fairness doctrine, and must make such determinations on a case-by-case basis. *Exp.-Imp. Bank of the United States v. Asia Pulp & Paper Co., Ltd.,* 232 F.R.D. 103, 114 (S.D.N.Y. 2005) (internal punctuation and citations omitted).

In contrast, when a privileged communication is disclosed *outside of a litigation or extrajudicially*, the scope of the waiver typically is limited to those matters actually revealed. *In re Grand Jury Proceedings*, 219 F.3d at 186-187; *In re von Bulow,* 828 F.2d at 103. Thus, in the *von Bulow* case, where privileged communications were revealed to the public in a book and not in a litigation, the court found waiver only with respect to the particular communications or portions of communications disclosed. 828 F.2d at 101-03.

In this case, the February 28 Memo was prepared by counsel for the purpose of setting forth GOJO's legal and factual position regarding inventorship to UrthTech. It could have just as easily been sent in a letter from GOJO's counsel to UrthTech, as the assertions are of the type typically exchanged pre-litigation and in litigation and in settlement. GOJO never asserted the document was privileged. Moreover, even assuming a privilege could have been asserted over it, it was disclosed outside the context of this litigation. Therefore, it falls into the category of an extrajudicial communication that results only in a waiver of the particular communication – the memo itself. Notably, GOJO is not relying on the memo in this litigation or using the memo as a shield or sword. In similar circumstances, courts have declined to find a broad subject matter waiver. *Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-Ferrous Metals Trading Co*., 1996 WL 345915, *2 (S.D.N.Y. 1996)(upholding Magistrate Judge's decision that disclosure in settlement discussions of outside law firm's opinion on a legal matter relevant to the subsequent litigation did not result in subject matter waiver; disclosure in settlement

12

discussion was an "extrajudicial" disclosure within the meaning of *von Bulow*; party seeking discovery would not be prejudiced because withholding party did not seek to make use of the opinion in the litigation); *see also North River Ins. v. Columbia Casualty Co.,* 1995 WL 562176 (S.D.N.Y. Sept. 21, 1995) (disclosure of privileged memoranda written in connection with alternate dispute resolution proceeding and settlement negotiations did not result in subject matter waiver because disclosure did not occur during course of litigation); *Johnson Matthey, Inc. v. Research Corp.,* 2002 WL 1728566 (S.D.N.Y. July 24, 2002) (partial disclosure of counsel's opinion/legal memorandum in pre-litigation meeting did not result in waiver because the withholding party did not intend to use the memorandum at trial); *Berkley Custom Ins. Mngrs. v. York Risk Servs. Grp., Inc.,* 2020 WL 5439636, *3 (S.D.N.Y. Sept. 10, 2020)(finding no broad subject matter waiver when attorney opinions disclosed outside the context of litigation); *Lloyds Bank PLC v. Republic of Ecuador,* 1997 WL 96591, * (S.D.N.Y. Mar. 5, 1997) (recognizing that "where the disclosure is extrajudicial or nonprejudicial to an adversary, there may be no waiver or only a narrow one.").

## CONCLUSION

For the reasons set forth above, UrthTech's motion to compel is denied. Although Rule 37 generally requires the Court to award attorneys' fees and costs to the losing party on a motion to compel, the Court finds that the imposition of fees and costs is not warranted here as neither side has requested fees. Fed. R. Civ. P. 37(a)(5).

This resolves the motions at Dkt No. 74 and at Dkt. No. 1 in the related Miscellaneous Matter, 1:24-mc-00311. Additionally, GOJO has requested that certain exhibits it filed in response to the motion be sealed, as they reflect non-public settlement discussions. Having

reviewed the exhibits, the Court finds that Exhibits B and C to GOJO's opposition (filed at Dkt. No. 78) can remain under seal, consistent with the principles in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  However, Exhibit A does not reveal the substance of any settlement discussions or any confidential/proprietary information and thus may not be maintained under seal.  Accordingly, the motion at Dkt. No. 77 is granted in part and denied in part, and the Clerk of Court is asked to unseal Exhibit A at Dkt. No. 79-1.  **The Clerk of Court is respectfully requested to terminate the motions at Dkt. Nos. 74 and 77 in case number 1:22-CV-6727, and Dkt. No. 1 in 1:24-mc-00311.**

**SO ORDERED.**

Dated:    August 22, 2024
          New York, New York

_____

KATHARINE H. PARKER, U.S. Magistrate Judge

14