UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/2/2026
```

| | |
|---|---|
| URTHTECH LLC, | |
| Plaintiff, | **22-CV-6727 (PKC) (KHP)** |
| -against- | **OPINION AND ORDER ON**<br>**RULE 37 MOTION** |
| GOJO INDUSTRIES, INC., | |
| Defendant. | |

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Presently before the court is Defendant GOJO Industries, Inc.'s ("Defendant" or "GOJO")

motion for sanctions for spoliation of evidence against Plaintiff UrthTech LLC ("Plaintiff" or

"UrthTech").  For the reasons set forth below, Defendant's motion for sanctions is DENIED.

**BACKGROUND**

The Court presumes familiarity with the facts in this matter and includes the following

only insofar as it relevant to resolving the instant motion.  Both UrthTech and GOJO own

patents relating to various chemical formulations used for cleaning and sanitizing surfaces and

hands.  UrthTech and GOJO were parties to a contract pursuant to which GOJO licensed the use

of one of UrthTech's antimicrobial chemical formulas for use in its surface spray cleaning

products.  The contract permitted GOJO to independently develop improvements, and, if it did

so, no royalties would be paid to UrthTech in connection with the improvements.  The contract

also contained provisions regarding joint improvements, for which GOJO would own certain

royalties to UrthTech.   GOJO and UrthTech were also parties to a 2009 nondisclosure

1

agreement ("NDA") that permitted the parties to engage in discussions and activities with each other about formulations and materials.

The case concerns UrthTech's allegations that GOJO breached the NDA and license agreement and misappropriated UrthTech's trade secrets by making and selling certain spray cleaning and cleaning wipe products.  GOJO denies the allegations and contends that it independently improved the chemical formulations used in its products, which was expressly allowed under the agreement with UrthTech, and that no royalties or inventorship credit are due to UrthTech as a result.

At issue in the instant motion is GOJOs contention that UrthTech failed to preserve Dr. Awad's lab notebooks, which it says would have reflected Dr. Awad's time researching the specific chemical formulas at issue and reflected in GOJOs patent applications.  (ECF 190-1 ("Gojo Mem."), at 1)  There is no dispute that the lab notebooks existed and were destroyed when this action was pending.  Accordingly to GOJO, these notebooks would have demonstrated that Dr. Awad never conceived of any novel aspect of GOJO's patent publications or new cleaning formulations.  (*Id.*)

Discovery has revealed that from December 2015 into early 2016, before this action was commenced but during the term of the parties' agreement, Dr. Awad ceased working for UrthTech and returned his lab notebooks to attorney Gerry Davis of the Cummings, McClorey, Davis & Acho, P.L.C. law firm ("CMDA"), which at that time represented Dr. Awad and co-owners of UrthTech, George Enterprises.  (ECF No. 202-1, at 172:16-173:16)  UrthTech was aware that its counsel had the lab notebooks.  (Gojo Mem., at 2)  The notebooks reflected experiments that Dr. Awad conducted to create formulas that could be used in cleaning

products.  In April 2020, the instant dispute arose, with UrthTech taking the position that

GOJO's improved spray cleaning product infringed on UrthTech's licensed patents and that

GOJO breached the terms of a license agreement entered into on March 5, 2015.  (*Id.*, at 2; ECF

Nos. 1, 38)  In 2021, UrthTech retained Marshall, Gerstein & Borun LLP ("MGB") to advise it

concerning potential patent claims against GOJO relating to the formulas at issue in this case.

(*Id.*)  In June 2022, MGB sent a litigation hold memorandum to UrthTech specifically stating that

lab notebooks should be preserved.  (*Id.*)  In August 2022, UrthTech filed the complaint in this

action.  (ECF No. 1)  In October 2022, the lab notebooks, which were still in the possession of

the CMDA law firm, were destroyed.  (ECF No. 202 ("UrthTech. Mem."), at 2)  The reason for

this was that attorney Davis passed away and CMDA shredded the files he had maintained. (ECF

202-2, at 19:16-20:18; ECF No. 202-3, at 26:25-27:3)

In October 2024, counsel for UrthTech first alerted GOJO that the lab notebooks were

either misplaced or destroyed.  (Gojo Mem., at 2)  In July 2025, UrthTech's counsel confirmed

that the lab notebooks had been destroyed.  (*Id.*, at 7)

GOJO requests that UrthTech's claims be dismissed or, alternatively,  that the court

impose an adverse inference sanction that the destroyed files would have been unfavorable to

UrthTech, including that they would demonstrate that any alleged undocumented trade secrets

or conception of any claimed contribution to GOJO's patent applications do not exist, that Dr.

Awad/UrthTech did not invest time, effort, or resources in developing the secret formula

components at issue in this case, and that the asserted trade secrets did not have value to

UrthTech or Dr. Awad.  GOJO also requests that UrthTech witnesses be barred from testifying

that Dr. Awad performed any testing on any asserted trade secret that is not otherwise

memorialized in documents produced in this case.  It also seeks its fees and costs in connection with making the motion.

UrthTech contends that sanctions are unwarranted because there is no evidence that it intended to destroy the laboratory notebooks or that it acted with gross negligence in failing to prevent the CMDA firm from destroying the notebooks pursuant to its routine case-file retention and destruction procedures after its representation of Dr. Awad and George Enterprises had concluded.  It also contends that CMDA was not aware of this case and that UrthTech was not aware that CMDA planned to destroy documents.  Although UrthTech acknowledges that it did not contact CMDA to request that the notebooks be preserved, it maintains that the documents were destroyed only two months after this action was commenced and one month before UrthTech asserted its trade secret claims.  Fundamentally, UrthTech argues that there is no evidence that the laboratory notebooks contained information favorable to GOJO.

**DISCUSSION**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); see also *ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 144 F.4th 360, 374 (2d Cir. 2025) (affirming sanction for spoliation of documents that were shredded).

A party seeking sanctions based on spoliation must establish by a preponderance of evidence: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind;

4

and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018); *see also ELLG Utica Alloys, Inc.*, 144 F.4th at 779 (same); *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107–12 (2d Cir. 2001) (same).

### A. Duty to Preserve

The duty to preserve evidence generally arises when a party "has notice that evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. V. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citing *Kronisch v. United States*, 150 F.3rd 112, 126 (2d Cir. 1998)).  Thus, anyone who "anticipates being a party to a lawsuit … must not destroy unique relevant evidence that might be useful to an adversary."  *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 144 (S.D.N.Y. 2007) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)); *Taylor v. City of New York*, 293 F.R.D. 601, 609–10 (S.D.N.Y. 2013) ("The duty requires that anyone who is a party to a lawsuit not destroy unique evidence that it knows, or reasonably should know, is relevant in the action.") (cleaned up).

Here, GOJO has demonstrated that UrthTech was under a "duty to preserve" at the time the lab notebooks were shredded because there is no dispute that they were relevant and because they were shredded after UrthTech reasonably anticipated litigation and, indeed, after this action had commenced and a litigation hold notice had been issued.[1]  (Gojo Mem., at 2; UrthTech Mem., at 2)

---

[1] "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake*, 220 F.R.D. at 218.

**B. Culpable State of Mind**

To establish a culpable state of mind, the movant must show "that the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently." *ELG Utica Alloys, Inc.*, 144 F.4th at 375 (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)) (alteration in original)); *Taylor*, 293 F.R.D. at 612 (citing *Reilly v. Natwest Mkts. Grp. Inc.,* 181 F.3d 253, 267 (2d Cir. 1999) (acknowledging that the failure to preserve evidence can fall "along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality")).

Here, GOJO has not established an affirmative intent to breach the duty to preserve. Specifically, there is no evidence that UrthTech was aware that its former attorneys' law firm was going to shred the lab notebooks. To be sure, UrthTech received a litigation hold notice in 2022 and should have immediately notified CMDA to preserve records it had and reviewed, particularly the lab notebooks, prior to bringing suit, but the delay in notifying CMDA has not been shown to be intentional.

The Court finds, however, that the evidence supports a finding of gross negligence because UrthTech was on notice that litigation loomed as early as April 2020, when it first took the position that GOJO had infringed on its licensed patent. The lab notebooks reflected experiments that Dr. Awad conducted to create formulas that could be used in cleaning products and would support UrthTech's claim to its patent in the event the patent was later challenged but also would have reflected any improvements to formulas that Dr. Awad may have been working on that could have been implicated by the license agreement, as well as trade secrets. Nearly a year before the documents were shredded, UrthTech retained MGB in

6

contemplation of litigation – another inflection point that should have caused UrthTech to

obtain the lab books from CMDA and provide them to MGB.  While MGB served a litigation hold

memorandum prior to this action being filed, the court would have expected UrthTech to have

secured the lab notebooks – something central to many patent-related actions – in advance of

filing suit, not after filing suit.  And, given that its former counsel at CMDA had died, it would

have been reasonable to at least inquire of CMDA what was going to happen to its files to

ensure they were available for this lawsuit.  It was grossly negligent not to have taken prompter

steps to secure the lab notebooks and preserve them.

### C. Relevance of Destroyed Evidence

Nonetheless, while UrthTech was grossly negligent, to obtain sanctions GOJO still "must

'adduce sufficient evidence from which a reasonable trier of fact could infer [that] the

destroyed or unavailable evidence would have been of the nature alleged by the party affected

by its destruction.'" *Taylor*, 293 F.R.D. at 613.  "In the context of a motion for spoliation

sanctions, 'relevance' means that 'the destroyed evidence would have been favorable to the

movant.'"  *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017)

(quoting *In re Methyl Tertiary Butyl Ether Prods. Liability Litig*., 643 F.Supp.2d 482, 495 (S.D.N.Y.

2009)); *Taylor*, 293 F.R.D. at 613 ("[T]he moving party must demonstrate not only that the

spoliator destroyed 'relevant' evidence as that term is ordinarily understood, but also that the

evidence it destroyed would have been of some 'assistive relevance' and favorable to the

moving party's claims or defenses.").  "When evidence is destroyed intentionally, such

destruction is sufficient evidence from which to conclude that the missing evidence was

unfavorable to that party."  *Sekisui Am. Corp. v. Hart*, 945 F.Supp.2d 494, 508 (S.D.N.Y. 2013)

(internal citation omitted). "However, 'where the culpable party was *negligent*, there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party.'" *Great N. Ins. Co. v. Power Cooling, Inc.*, No. 06 Civ. 874 (ERK) (KAM), 2007 WL 2687666, at *11 (E.D.N.Y. Sept. 10, 2007) (emphasis added); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 439 (S.D.N.Y. 2010) ("In the absence of bad faith or other sufficiently egregious conduct, it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him.") (internal quotation marks omitted).

Since the lab notebooks were identified by Dr. Awad as containing "critical trade secret materials" it is evident that their contents would be germane to the issue of patent infringement and misappropriation of trade secrets. (ECF No. 190-4, at 46:13-24; 47:10-17; and 44:5-10) To buttress its position, GOJO points to additional statements made by Dr. Awad, not related to the contents of the lab notebooks, contending that they would provide his assertions that he came up with aspects of the formulations and improvements thereto. (Gojo Mem., at 14) This is sufficient extrinsic evidence from which a factfinder could infer that the lab books were relevant but not enough to show they would be unhelpful to UrthTech. "Typically, the evidence used to establish relevance of missing documents is deposition testimony." *De Espana v. American Bureau of Shipping*, No. 03 Civ. 3573 (LTS) (RLE), 2007 WL 1686327, at *8 (S.D.N.Y. June 6, 2007) (holding that because no deposition testimony supported an inference that the plaintiff's missing emails were adverse to the plaintiff, sanctions in favor of the defendant were not warranted). GOJO has not adduced evidence in the form of deposition testimony, or otherwise, allowing for an inference that the contents of the notebooks would be

8

harmful to UrthTech's claim.  Though GOJO points to statements made by Dr. Awad and others

that, while adverse to UrthTech's overall position, do not provide any insight as to the contents

of the notebooks.  (*Id.*, at 14-15)  For example GOJO attributes the statement "GOJO developed

the acid wipe technology 'completely independent of the UrthTech technology'" to Dr. Awad,

but fails to proffer evidence that such a statement would likely be found within his notebooks.

(*Id.*, at 15)  At bottom, the fact that the notebooks likely contained information relevant to the

trade secret issue, without more, does not necessarily mean that the information within would

be *unhelpful* to UrthTech.  And while GOJO points to extrinsic evidence that may support its

ultimate position, the testimony is divorced from the contents of the lab notebooks.  Thus

GOJO has not sufficiently demonstrated that the contents of the lab notebooks would be

unfavorable to UrthTech.

   "[A] finding of gross negligence merely permits, rather than requires, a district court to

give an adverse inference instruction" for spoliation.  *Chin v. Port Auth. of New York & New

Jersey*, 685 F.3d 135, 162 (2d Cir. 2012).  "The determination of an appropriate sanction for

spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-

by-case basis." *Fujitsu Ltd.*, 247 F.3d at 436 (internal citations omitted).  Further, an "adverse

inference instruction is an extreme sanction and should not be given lightly," *Zubulake*, 220

F.R.D. at 220.

   Based on the foregoing considerations regarding GOJO's inability to demonstrate that

inspection of Dr. Awad's lab notebook would be adverse to UrthTech's claims or support

GOJO's defenses, an adverse inference instruction is not appropriate here.  However, Dr. Awad

will not be able to testify about the contents of the lab notebooks and GOJO may cross-examine

Dr. Awad at trial about the lack of lab notebooks and their destruction.

## CONCLUSION

Accordingly, the Court DENIES GOJO's request to impose the sanction of dismissal as

GOJO has not met its burden of establishing that UrthTech acted with the degree of willfulness

or bad faith required to justify such an extreme sanction.  *See West*, 167 F.3d at 779.  Nor is an

adverse inference warranted, as GOJO has failed to adduce sufficient evidence that inspection

of the destroyed notebooks would likely have yielded evidence supporting its case.  *See*

*Residential Funding*, 306 F.2d at 109.  Nevertheless, the Court finds that GOJO has been

prejudiced by its inability to inspect the notebooks at issue.  Accordingly, the Court precludes

UrthTech from introducing any evidence concerning the destroyed notebooks at trial or for any

other purpose.  *See De Espana*, 2007 WL 1686327, at *5.  Under these circumstances, exclusion

of evidence relating to the destroyed or missing materials is an appropriate sanction,

authorized both by the Court's inherent authority to address discovery abuse and by Rule 37 of

the Federal Rules of Civil Procedure.

> **SO ORDERED.**

DATED:    New York, New York
          February 2, 2026

_____
KATHARINE H. PARKER
United States Magistrate Judge