USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/8/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

URTHTECH LLC,

Plaintiff,

-against-

GOJO INDUSTRIES, INC.,

Defendant.

22-CV-6727 (PKC) (KHP)

**OPINION & ORDER ON MOTION TO STRIKE**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Per the Court's April 30, 2026, Post-Conference Order, on May 14, 2026, Defendant GOJO Industries, Inc. ("Defendant" or "GOJO") filed a motion to strike Plaintiff UrthTech LLC's ("Plaintiff" or "UrthTech") Third Supplemental Answers and Objections to GOJO's First Set of Interrogatories and to preclude UrthTech from asserting Alleged Trade Secret 7 pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure ("Rule"). (ECF Nos. 249, 251) UrthTech filed an opposition on May 29, 2026. (ECF Nos. 254, 257) GOJO replied on June 5, 2026. (ECF No. 259) For the reasons that follow, GOJO's motion is GRANTED.

**BACKGROUND**

Beginning in the early 2000s, Dr. Aziz Awad co-founded UrthTech and developed various acidic and alkaline, antimicrobial formulations. UrthTech obtained patents covering certain of its basic formulations, while maintaining certain acidic formulations as trade secrets. (ECF No. 59) Dr. Awad continued to develop and refine the basic formulations after the patent applications were filed, and that work ultimately resulted in the formulation for a product known as "UrthPRO" or "Urth 30."

In 2015, UrthTech and GOJO entered into a license agreement concerning certain patented UrthTech technology that consisted primarily of antimicrobial formulas to use in cleaning products. The agreement contemplated that GOJO could develop improvements to the licensed technology and provided that GOJO would own certain improvements to the technology that it developed independently. UrthTech alleges that GOJO subsequently developed an improved surface-spray product and a separate wipe product using UrthTech's confidential information. Consequently, it brought this action asserting, among other claims, breach of the license agreement and trade-secret misappropriation. (ECF Nos. 1, 38, 59)

The present dispute concerns UrthTech's identification of a new trade secret – "UrthPRO" (a basic antimicrobial formulation) – after the close of fact discovery and after expert reports were served. (ECF No. 249-1) For context, on March 8, 2024, GOJO served Interrogatory No. 1, which required UrthTech to identify the trade secrets it contends GOJO misappropriated. (ECF No. 214-15) UrthTech identified six trade secrets in response in July 2024. (ECF No. 257-3) Trade Secrets 1 and 2 concern acidic antimicrobial formulations; Trade Secret 3 concerns processes for preparing both acidic and basic antimicrobial formulations from stock solutions; and Trade Secrets 4 through 6 concern modifications to Dr. Awad's acidic and basic antimicrobial formulations through the substitution or use of various nonionic surfactants in place of, or together with, lauric acid. (ECF No. 249-1 at 4-5) None of the previously asserted trade secrets identify the UrthPRO formulation by name.

The parties thereafter conducted fact discovery, including sixteen depositions based on the six trade secrets that were timely identified. After several extensions to the discovery schedule, fact discovery in this matter closed on July 14, 2025. During discovery, the subject of

the UrthPRO formulation and UrthTech's basic antimicrobial formulations were subjects of testimony. For example, at UrthTech's Rule 30(b)(6) deposition, UrthTech's representative, Robert George, Jr., testified that UrthTech viewed Dr. Awad's work as a broader technological "platform," portions of which were reflected in the six identified trade secrets, but also that the platform included research relating to UrthPRO. (ECF No. 257-2 at 51:18–53:3) He testified that the "know-how" conveyed under the license agreement extended beyond patented formulations that GOJO licensed. (*Id.* at 90:19–92:23)

During expert discovery, GOJO's technical expert, Dr. Alexander Klibanov, analyzed Trade Secrets 4 through 6 and, among other things, opined that aspects of the use of nonionic surfactants in UrthTech's alkaline antimicrobial formulations had been disclosed in UrthTech's patents. (ECF No. 257-5 ¶ 108) UrthTech's expert, Carleton J. Parker III,[1] responded that the patents did not disclose later developments in UrthTech's alkaline formulations, including those leading to UrthPRO or the UrthPRO formula itself. (ECF No. 257-6 ¶¶ 78-83)

UrthTech did not separately identify the UrthPRO formula as a distinct trade secret in its interrogatory responses – even though UrthPRO was "in its final form by April of 2014" and GOJO's original hard-surface spray disinfectant, introduced in late 2016, "used the UrthPRO formula" – because UrthTech understood the formula's trade-secret status to be undisputed, at least as of the parties' entry into the license agreement. (ECF No. 242-1; ECF No. 254 at 4) However, it claims Dr. Klibanov's analysis prompted it to clarify that the "basic formulations" referenced in Trade Secrets 4 through 6 included UrthPRO. (ECF No. 254 at 4) Accordingly, in

---

[1] For the avoidance of doubt, the Court notes that UrthTech's expert, Carleton J. Parker III, bears no connection with the undersigned.

its most recent supplemental response to GOJO's first set of interrogatories, UrthTech formally identified the UrthPRO formulation, together with associated testing, EPA-registration information, and development know-how, as "Trade Secret 7." (ECF No. 257-3 at 2)

**LEGAL STANDARD**

The mandatory disclosure obligations imposed by Rule 26 are designed to prevent parties from "sandbagging" their adversaries. *Ebewo v. Martinez*, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004); *see also New World Sols., Inc. v. NameMedia Inc.,* 150 F. Supp. 3d 287, 304 (S.D.N.Y. 2015). Among other things, Rule 26 requires each party to update its initial disclosures "in a timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties." Fed. R. Civ .P. 26(e)(1)(A).

To ensure parties' compliance with the mandatory disclosure requirements of Rule 26, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.,* 726 F.Supp. 2d 339, 348 (S.D.N.Y. 2010); *Spotnana, Inc. v. Am. Talent Agency, Inc.,* No. 09 Civ. 3698 (LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010). Rule 37 further provides:

> In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

In determining whether preclusion of certain evidence is warranted pursuant to Rule 37(c), a court considers "'(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the [information]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance.'" *Patterson v. Balasamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc*., 118 F.3d 955, 961 (2d Cir. 1997)); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

"A plaintiff is required to identify the alleged trade secrets with 'reasonable particularity,' and bears the burden of demonstrating the sufficiency of its trade secret identification." *Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc*., 764 F. Supp. 3d 115, 118 (S.D.N.Y. 2025). "In assessing 'the strength of the showing sufficient to identify trade secrets with sufficient particularity, a court must consider the 'stage of the case.'" *Lonza Greenwood LLC v. Natals, Inc*., No. 25 Civ. 6319, 2026 WL 39607 at *2 (S.D.N.Y. Feb. 12, 2026) (citation omitted). Specifically, "a very general showing may suffice prior to discovery, [when a] plaintiff may not know which part of its trade secrets have been misappropriated or cannot determine the full scope of its claims until it gains a better understanding of how a defendant operates." *Id.* (internal quotation marks and citation omitted). However, "following extensive discovery" a more stringent standard applies for "reasonable particularity." *Id*. at **5; see generally Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co*., 1 F. Supp. 3d 224 (S.D.N.Y. 2014)

(addressing particularity requirement after significant discovery had been undertaken by the parties).

Where a plaintiff fails to identify trade secrets with specificity during discovery and then attempts to sharpen or add new trade secrets at or after the close of discovery, courts in this District have regularly found such conduct to be in contravention of Rule 26(e) and subject to preclusion under Rule 37. *See, e.g., TNS Media Rsch., LLC v. TRA Glob*., Inc., 977 F. Supp. 2d 281, 313 (S.D.N.Y. 2013) (dismissing trade secret claim upon finding that the plaintiff had "ample opportunity to identify its alleged trade secrets with specificity prior to the close of discovery."); *Sit-Up Ltd. v. IAC/InterActiveCorp*., No. 05 Civ. 9292 (DLC), 2008 WL 463884, at *9-11 (S.D.N.Y. Feb. 20, 2008) (dismissing trade secret after finding plaintiff had not provided adequate notice to the defendants of what specific information comprised its alleged trade secrets and had not disclosed the manner in which defendants allegedly used them); *Big Vision Priv. Ltd.,* 1 F.Supp. 3d at 257 (citing *Heyman v. AR. Winarick, Inc*., 325 F.2d 584, 588-90 (2d Cir. 1963) for the proposition that a plaintiff must describe its trade secret with sufficient particularity "at the time of disclosure and throughout the litigation."); *JDS Therapeutics, LLC v. Pfizer Inc.,* No. 12 Civ. 9002 at Dkt. No. 46 (S.D.N.Y. Aug. 26, 2013) (granting motion to strike supplemental identification of trade secrets after the close of fact discovery finding no reason to disturb the case management plan ordered in the case).

**DISCUSSION**

UrthTech maintains that its earlier disclosures and deposition testimony placed GOJO on notice that UrthPRO formed part of the technology implicated by Trade Secrets 4 through 6 and that the supplemental response clarified, rather than introduced, the relevant trade-secret

theory. Moreover, it argues that GOJO was already familiar with the UrthPRO formula and had ample opportunity to question UrthTech's witnesses regarding it, and further notes that the Third Supplemental Response was served before Parker's deposition.

GOJO takes a different view. It contends that UrthPRO was never identified as an independent trade secret during fact discovery and that reference to "basic formulations" in Trade Secrets 4 through 6 did not itself place GOJO on notice that UrthTech would claim the underlying UrthPRO formulation as a separate trade secret. GOJO further argues that the late identification deprived it of the opportunity to conduct written discovery and depositions directed specifically to whether UrthPRO qualified as a trade secret, including discovery concerning the scope of the claimed secret, the measures taken to preserve its confidentiality, the extent of any public disclosure, and the relationship between UrthPRO and the parties' license agreement.

**A. UrthTech's Explanation for its Delay**

The first *Patterson* factor weighs in favor of preclusion. GOJO served Interrogatory No. 1 on March 8, 2024, requesting identification of the trade secrets UrthTech contended had been misappropriated. UrthTech responded on July 2, 2024 by identifying six trade secrets. UrthTech did not supplement its response to identify UrthPRO itself as a separate trade secret until March 16, 2026 – approximately eight months after fact discovery had closed and after the parties had exchanged expert reports.

UrthTech's explanation for its delay is unavailing. For one, UrthTech does not contend that Trade Secret 7 (*i.e.*, UrthPRO) is based on information first discovered after the close of fact discovery. *See Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778 (S.D.N.Y. 2008)

(recognizing that some circumstances warrant deferring full identification until after a party has had a chance to obtain information from the opposing party). Indeed, it is undisputed that UrthPRO had existed for years before this litigation, and the parties had long been familiar with the formulation and its relationship to GOJO's original surface-spray product. Indeed, UrthTech's Third Supplemental Response states that UrthPRO was substantially in its final form by April 2014 and that GOJO's original hard-surface spray, sold beginning in late 2016, used that formula. At an April 30, 2026 conference, UrthTech likewise acknowledged that the supplemental designation was not based on newly discovered evidence. UrthTech instead contends that the need to identify Trade Secret 7 separately did not become apparent until expert discovery. This contention does not assist it in defeating the motion to strike because it is clear that UrthTech knew from the outset of this case that UrthPRO was being used in a spray sold by GOJO.

Next it argues that, because UrthPRO was a component of previously identified trade secrets, its later designation as a distinct trade secret should relate back to those earlier disclosures and that GOJO therefore had sufficient notice of the claim. This explanation does not substantially justify the delay in disclosure. UrthTech was able to, but did not, identify UrthPRO's formulation as a trade secret all along. It cannot rely on other more general descriptions of its supposed trade secret and then simply contend it is making a "clarifying" disclosure when it was able to provide more specificity about the UrthPRO formulation at the outset of the case. *See L–3 Comms. Corp. v. Jaxon Eng'g & Maint., Inc.,* No. 10 Civ. 2868, 2011 WL 10858409, at *2 (D.Colo. Oct. 12, 2011) ("[W]hat is clear is that general allegations and generic references to products or information are insufficient to satisfy the reasonable

particularity standard.") A party may supplement a discovery response when later developments reveal that an earlier response was incomplete. *See Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, No. 22 Civ. 5138 (ER), 2025 WL 219063, at *8 (S.D.N.Y. Jan. 16, 2025) (acknowledging that trade secret identification is an iterative process during discovery, but clarifying that a plaintiff's trade secret descriptions "will anchor any future discovery."). However, Rule 26(e) does not permit a plaintiff to postpone identification of an independently asserted trade secret until after learning how the defendant intends to challenge the trade secrets already disclosed. *See Big Vision Priv. Ltd.,* 1 F.Supp. 3d at 264 (documenting the plaintiff's eleventh-hour redefinition of key terms after fact discovery closed, condemning its "Dance of the Seven Veils" and "whack-a-mole" approach to shifting trade-secret claims, and rejecting its attempt to reserve the right to rely on additional documents or testimony concerning each trade secret).

UrthTech knew the contents of the UrthPRO formulation, knew the information it had provided GOJO concerning that formulation, and knew the role UrthPRO allegedly played in the parties' relationship long before fact discovery closed. Nothing prevented UrthTech from identifying UrthPRO as a separate asserted trade secret when GOJO expressly requested identification of *all* trade secrets at issue. Moreover, Dr. Awad testified that UrthPRO "is not a trade secret" and instead constitutes "public information because this is patented." His testimony, coupled with UrthTech's failure to correct or otherwise qualify that testimony at an earlier stage of this case, supports GOJO's position that it lacked adequate notice that UrthPRO would be a distinct trade secret at issue in this litigation. (ECF No. 257-1 at 92:11-16); *see also* (ECF No. 251-3 ¶ 18). UrthTech fails to cite to – nor is the Court aware of – any cases in this

District where a party was allowed to identify an additional trade secret after the close of fact discovery under these circumstances. While Rule 26 certainly permits parties to refine or expand their identification of asserted trade secrets as discovery progresses, the cases UrthTech cites in support of its position arose during or prior to the close of fact discovery. *See, e.g., Lonza Greenwood LLC,* 2026 WL 39607 at *2 (addressing pre-discovery allegations of trade secrets). None directly address whether a party may assert an entirely new trade secret, as here, after fact discovery has concluded.

Additionally, the Court is not persuaded that Trade Secret 7 is merely a clarification of Trade Secrets 4 through 6. Trade secrets 4 through 6 concern modifications of Dr. Awad's acidic and basic antimicrobial formulations through the substitution or use of specified nonionic surfactants. Trade Secret 7, by contrast, identifies the underlying UrthPRO formulation itself as independently protectable information. UrthTech emphasizes that Trade Secrets 4 through 6 referred generally to Dr. Awad's "basic formulations" and that its Rule 30(b)(6) witness testified during discovery that UrthTech regarded UrthPRO as part of a broader technological "platform." However, a "platform" is distinct from a specific formula that was known and could have been identified with specificity at the start of this case. UrthTech's reliance on a case recognizing that a trade secret may consist of a combination of otherwise publicly known elements does not support its position that late identification of UrthPRO as a trade secret should be allowed. *See Integrated Servs. Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) ("[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.").

While *Integrated Servs. Inc* establishes that a unique combination of non-secret components may qualify for trade-secret protection, it does not suggest that the opposite is true. That is, each component or subcombination does not automatically constitute a separate trade secret unless it is separately articulated with particularity. *See Big Vision Priv. Ltd.,* 1 F.Supp. 3d at 260 ("Absent an affirmative disclosure or description from [the plaintiff], [the defendant] had no way of knowing which structure or structures embodied [the plaintiff's] trade secret."). In short, disclosure that a formulation is relevant to the case is not equivalent to identifying that formulation as an independently asserted trade secret.

Returning to first principles, the purpose of requiring trade secrets to be identified with reasonable particularity is, among other things, to permit an opposing party to understand what information it must defend against as allegedly secret. *See Sit-Up Ltd.*, 2008 WL 463884, at *11 (explaining there is "no reason to believe that [the Second Circuit] would permit a party to advance a trade secret claim in vague and ambiguous terms," and that an alleged trade secret must be described "with adequate specificity to inform the defendants what it is alleged to have misappropriated.") Here, references to a broader technological platform did not fairly inform GOJO that UrthPRO itself – as distinguished from alleged modifications to UrthPRO – would later be asserted as an additional trade secret.

**B. The Importance of Asserted Trade Secret 7**

The second *Patterson* factor also counsels in favor of striking Trade Secret 7. UrthTech argues that Trade Secret 7 is important to its case because UrthPRO formed part of the "know-how" conveyed to GOJO and because the formulation is a "critical component of Trade Secrets 4 through 6." (ECF No. 254 at 9) UrthTech's expert likewise characterizes Trade Secret 7 as a

subset of those earlier-designated trade secrets and opines that it has independent technical value. (ECF No. 254-2 at 90:19–92:19; ECF No. 254-5; ECF No. 254-6) Finally, UrthTech's opposition states that Trade Secret 7 serves, at least in part, as an alternative theory of liability should GOJO prevail on its challenges to Trade Secrets 4 through 6. (ECF No. 254 at 10)

The asserted importance of Trade Secret 7 cuts both ways. That is, if UrthPRO itself constitutes an important and independently protectable trade secret central to UrthTech's case, UrthTech had greater reason to identify it with specificity during fact discovery when GOJO requested identification of all the asserted trade secrets. Its significance, if any, therefore, does not excuse its omission from earlier disclosures on which the parties conducted discovery. *See Ferdman v. CBS Interactive Inc.,* 342 F. Supp. 3d 515, 529 (S.D.N.Y. 2018) (recognizing "the mere fact that the evidence may be important is not sufficient to avoid preclusion where no explanation has been given for the delay," and that to hold otherwise "would give parties the perverse incentive to spring especially large and surprising disclosures on their adversaries on the eve of trial.").

Insofar as UrthTech argues "the details of the UrthPro formula are important for fully understanding Trade Secrest [sic] 4-5," it does not provide an adequate explanation for why it must be asserted as an independent trade secret to be referenced in this case. (ECF No. 254 at 10) The formulation can be included for context within the broader case in explaining Trade Secrets 4 through 6.

Finally, the parties' license agreement complicates UrthTech's theory of misappropriation. The Defend Trade Secrets Act defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret

was acquired by improper means," or the "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. *See* 18 U.S.C. § 1839(5). The license agreement here expressly contemplated that GOJO could independently develop improvements to the licensed technology and provided that GOJO would own "all right, title and interest in and to such Improvements," including related patent applications. (ECF No. 59-1) Against that contractual backdrop, UrthTech's effort to recast UrthPRO itself as a separately misappropriated trade secret raises substantial questions as to whether GOJO's alleged acquisition or use of that information was unauthorized in the first instance. Moreover, because "much of Trade Secret 7 would have been disclosed to the public," it follows that it may not necessarily be an articulable trade secret. (ECF No. 251-3 ¶ 18)

**C. Prejudice**

The prejudice to GOJO of allowing late identification of UrthPRO as a trade secret is significant. Fact discovery was conducted on the premise that UrthTech was asserting six clearly articulated trade secrets. GOJO therefore had no reason to structure written discovery, deposition questioning, or its expert analysis around the proposition that UrthPRO itself constituted an independent trade secret. At this point, fact discovery has been closed for approximately eight months and the parties have already exchanged expert reports. Asserting UrthPRO as a distinct trade secret at this juncture effectively forecloses GOJO from bringing any challenge against it in discovery or in GOJO's expert reports.

UrthTech argues that GOJO cannot claim surprise because GOJO had long known about UrthPRO and questioned witnesses about it during discovery. But that argument conflates knowledge of the technology with notice that UrthTech would assert the UrthPRO formulation

itself as a separate misappropriated trade secret. That distinction matters. Had UrthTech timely identified Trade Secret 7, GOJO could have tailored its discovery to test the claim. It could (and likely would) have examined the precise scope of the alleged secret, which aspects of UrthPRO were publicly known, what steps UrthTech took to preserve its secrecy, to whom UrthTech disclosed the formulation, what confidentiality obligations governed those disclosures, and how the parties' license agreement affected GOJO's right to use or modify the formulation. Those issues go directly to whether UrthPRO qualifies for trade-secret protection and whether GOJO misappropriated it. The same is true of expert discovery. GOJO's experts addressed the six trade secrets UrthTech had identified. By adding Trade Secret 7 only after the parties exchanged expert reports, UrthTech deprived GOJO of a full opportunity to test and respond to that new theory. Rule 37(c)(1) guards against precisely that prejudice. The very limited opportunity to question Parker about UrthPRO does not cure the prejudice created by the loss of full fact discovery about UrthPRO. The third *Patterson* factor, therefore, weighs strongly in favor of preclusion.

**D. Appropriateness of a Continuance**

The fourth and final *Patterson* factor also favors GOJO. To cure the prejudice resulting from the late disclosure, the Court would have to reopen fact discovery, permit additional written requests and depositions concerning UrthPRO, and likely permit supplemental expert reports and further expert depositions. Though a continuance can, in certain circumstances, mitigate prejudice from a late disclosure, it is not an automatic remedy. Reopening discovery here, after this case has been pending for almost 4 years and summary judgment is imminent,

would effectively shift the consequences of UrthTech's untimely identification onto GOJO . Having considered all of UrthTech's arguments to the contrary, the Court finds them unavailing.

**CONCLUSION**

For the above stated reasons, GOJO's motion is GRANTED. UrthTech's Third Supplemental Response to Interrogatory No. 1 is stricken to the extent it identifies UrthPRO as Trade Secret 7. UrthTech is precluded from asserting Trade Secret 7 as an independent basis for its trade-secret misappropriation claims. However, this ruling does not preclude UrthTech from relying on otherwise admissible evidence concerning UrthPRO to the extent that evidence is relevant to the six trade secrets timely identified during discovery.

**The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 249 and 251.**

**SO ORDERED.**

Dated: September 8, 2026
New York, New York

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge